## Report Selection Criteria

**Case ID:**            04CV-17-2190
**Citation No:**
**Docket Start Date:**
**Docket Ending Date:**

## Case Description

**Case ID:**      04CV-17-2190 - FOCHTMAN V CAAIR INC -*JURY TRIAL*
**Filing Date:** Monday , October 23rd, 2017
**Court:**       04 - BENTON
**Location:**    CI - CIRCUIT
**Type:**        OM - CIVIL - OTHER
**Status:**      OPEN - CASE OPEN
**Images:**

## Case Event Schedule

*No case events were found.*

## Case Parties

| Seq # | Assoc | End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 6 | | | PLAINTIFF/PETITIONER ATTORNEY | 1004894 | **HOLLEMAN IV, JOHN TERRELL** |
| | | | | Aliases: | IV, JOHN T. HOLLEMAN<br>IV, JOHN T HOLLEMAN<br>IV, JOHN TERRELL HOLLEMA |
| 1 | | | JUDGE | 7965460 | **19TH WEST CIRCUIT DIVISION 4** |
| | | | | Aliases: | SCOTT, JOHN R<br>SCOTT, JOHN R.<br>SCOTT, JOHN |

EXHIBIT 1

| 4 | | | PLAINTIFF/PETITIONER ATTORNEY | 8220031 | STEADMAN, TIMOTHY A |
|---|---|---|---|---|---|
| | | | Aliases: | | *none* |
| | | | | | |
| 5 | | | PLAINTIFF/PETITIONER ATTORNEY | 12713047 | GARNER, JERRY D |
| | | | Aliases: | | *none* |
| | | | | | |
| 2 | | | PLAINTIFF | 14937679 | FOCHTMAN, MARK |
| | | | Aliases: | | *none* |
| | | | | | |
| 11 | | | DEFENDANT | 14937685 | DOES 1 - 30, JOHN |
| | | | Aliases: | | *none* |
| | | | | | |
| 7 | | | DEFENDANT | 14937681 | CAAIR INC |
| | | | Aliases: | | *none* |
| | | | | | |
| 8 | | | DEFENDANT | 14937682 | SIMMONS FOODS INC. |
| | | | Aliases: | | *none* |
| | | | | | |
| 9 | | | DEFENDANT | 14937683 | DARP INC |
| | | | Aliases: | | *none* |
| | | | | | |
| 10 | | | DEFENDANT | 14937684 | HENDREN PLASTICS INC |
| | | | Aliases: | | *none* |
| | | | | | |
| 3 | | | PLAINTIFF | 14937680 | O'NEAL, SHANE |
| | | | Aliases: | | *none* |

## Violations

## Sentence

No Sentence Info Found.

## Milestone Tracks

*No Milestone Tracks found.*

## Docket Entries

| Filing Date | Description | Name | Monetary |
|---|---|---|---|
| 10/23/2017 10:51 AM | AOC COVERSHEET CIVIL | HOLLEMAN IV, JOHN TERRELL | |
| **Entry:** | *none.* | | |
| **Images** | No Images | | |
| | | | |
| 10/23/2017 10:51 AM | COMPLAINT/PETITION FILED $ | HOLLEMAN IV, JOHN TERRELL | |
| **Entry:** | *none.* | | |
| **Images** | WEB | | |
| | | | |
| 10/23/2017 10:51 AM | EXHIBITS | HOLLEMAN IV, JOHN TERRELL | |
| **Entry:** | A | | |
| **Images** | WEB | | |
| | | | |
| 10/23/2017 10:51 AM | EXHIBITS | HOLLEMAN IV, JOHN TERRELL | |

- Not an Official Document

| Entry: | B | |
|---|---|---|
| Images | WEB | |

| 10/23/2017 10:51 AM | EXHIBITS | HOLLEMAN IV, JOHN TERRELL | |
|---|---|---|---|
| Entry: | C | | |
| Images | WEB | | |

| 10/23/2017 10:51 AM | EXHIBITS | HOLLEMAN IV, JOHN TERRELL | |
|---|---|---|---|
| Entry: | D | | |
| Images | WEB | | |

| 10/23/2017 10:51 AM | EXHIBITS | HOLLEMAN IV, JOHN TERRELL | |
|---|---|---|---|
| Entry: | E | | |
| Images | WEB | | |

| 10/23/2017 10:51 AM | EXHIBITS | HOLLEMAN IV, JOHN TERRELL | |
|---|---|---|---|
| Entry: | F | | |
| Images | WEB | | |

| 10/23/2017 10:51 AM | EXHIBITS | HOLLEMAN IV, JOHN TERRELL | |
|---|---|---|---|
| Entry: | G | | |
| Images | WEB | | |

| 10/23/2017 10:51 AM | EXHIBITS | HOLLEMAN IV, JOHN TERRELL | |
|---|---|---|---|
| Entry: | H | | |
| Images | WEB | | |

- Not an Official Document                                                                                Page 5 of 10

| 10/23/2017 10:51 AM | SUMMONS ISSUED | HOLLEMAN IV, JOHN TERRELL | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | WEB | | |

| 10/23/2017 10:51 AM | SUMMONS SUBPOENA FEE 21-6-402 | HOLLEMAN IV, JOHN TERRELL | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | No Images | | |

| 10/23/2017 10:51 AM | SUMMONS ISSUED | HOLLEMAN IV, JOHN TERRELL | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | WEB | | |

| 10/23/2017 10:51 AM | SUMMONS SUBPOENA FEE 21-6-402 | HOLLEMAN IV, JOHN TERRELL | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | No Images | | |

| 10/23/2017 10:51 AM | SUMMONS ISSUED | HOLLEMAN IV, JOHN TERRELL | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | WEB | | |

| 10/23/2017 10:51 AM | SUMMONS SUBPOENA FEE 21-6-402 | HOLLEMAN IV, JOHN TERRELL | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | No Images | | |

| 10/23/2017 10:51 AM | SUMMONS ISSUED | HOLLEMAN IV, JOHN TERRELL | |
|---|---|---|---|

| Entry: | *none.* | | |
|--------|---------|---|---|
| Images | WEB | | |

| | | | |
|--------|---------|---|---|
| 10/23/2017 10:51 AM | SUMMONS SUBPOENA FEE 21-6-402 | HOLLEMAN IV, JOHN TERRELL | |
| Entry: | *none.* | | |
| Images | No Images | | |

| | | | |
|--------|---------|---|---|
| 10/23/2017 10:51 AM | MOF ORIGINAL | HOLLEMAN IV, JOHN TERRELL | |
| Entry: | *none.* | | |
| Images | No Images | | |

| | | | |
|--------|---------|---|---|
| 10/23/2017 11:21 AM | PAYMENT RECEIVED | | |
| Entry: | A Payment of $175.00 was made on receipt 04CI34992. | | |
| Images | No Images | | |

| | | | |
|--------|---------|---|---|
| 10/24/2017 10:15 AM | REQUEST FOR ADMISSIONS | STEADMAN, TIMOTHY A | |
| Entry: | PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT SIMMONS FOODS, INC | | |
| Images | WEB | | |

| | | | |
|--------|---------|---|---|
| 10/24/2017 10:15 AM | REQUEST FOR ADMISSIONS | STEADMAN, TIMOTHY A | |
| Entry: | PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT HENDREN PLASTICS, INC. | | |
| Images | WEB | | |

| | | | |
|--------|---------|---|---|
| 10/24/2017 10:15 AM | REQUEST FOR ADMISSIONS | STEADMAN, TIMOTHY A | |
| Entry: | PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT DARP, INC. | | |

| **Images** | WEB | | |
|---|---|---|---|

| 10/24/2017 10:15 AM | REQUEST FOR ADMISSIONS | STEADMAN, TIMOTHY A | |
|---|---|---|---|
| **Entry:** | PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT CAAIR, INC | | |
| **Images** | WEB | | |

| 10/25/2017 12:38 PM | MOTION OTHER | STEADMAN, TIMOTHY A | |
|---|---|---|---|
| **Entry:** | PLAINTIFFS' MOTION FOR CLASS CERTIFICATION | | |
| **Images** | WEB | | |

| 10/25/2017 12:38 PM | EXHIBITS | STEADMAN, TIMOTHY A | |
|---|---|---|---|
| **Entry:** | A | | |
| **Images** | WEB | | |

| 10/25/2017 12:38 PM | EXHIBITS | STEADMAN, TIMOTHY A | |
|---|---|---|---|
| **Entry:** | B | | |
| **Images** | WEB | | |

| 10/25/2017 12:38 PM | EXHIBITS | STEADMAN, TIMOTHY A | |
|---|---|---|---|
| **Entry:** | C | | |
| **Images** | WEB | | |

| 10/25/2017 12:38 PM | EXHIBITS | STEADMAN, TIMOTHY A | |
|---|---|---|---|
| **Entry:** | D | | |
| **Images** | WEB | | |

- Not an Official Document

| 10/25/2017 12:38 PM | EXHIBITS | STEADMAN, TIMOTHY A | |
|---|---|---|---|
| **Entry:** | E | | |
| **Images** | WEB | | |

| 10/25/2017 12:38 PM | EXHIBITS | STEADMAN, TIMOTHY A | |
|---|---|---|---|
| **Entry:** | F | | |
| **Images** | WEB | | |

| 10/25/2017 12:38 PM | EXHIBITS | STEADMAN, TIMOTHY A | |
|---|---|---|---|
| **Entry:** | G | | |
| **Images** | WEB | | |

| 10/25/2017 12:38 PM | EXHIBITS | STEADMAN, TIMOTHY A | |
|---|---|---|---|
| **Entry:** | H | | |
| **Images** | WEB | | |

| 10/25/2017 12:38 PM | EXHIBITS | STEADMAN, TIMOTHY A | |
|---|---|---|---|
| **Entry:** | I | | |
| **Images** | WEB | | |

| 10/25/2017 12:38 PM | EXHIBITS | STEADMAN, TIMOTHY A | |
|---|---|---|---|
| **Entry:** | J | | |
| **Images** | WEB | | |

| | EXHIBITS | STEADMAN, TIMOTHY A | |
|---|---|---|---|

| 10/25/2017 12:38 PM | | | |
|---|---|---|---|
| **Entry:** | K | | |
| **Images** | WEB | | |

| 10/25/2017 12:38 PM | BRIEF IN SUPPORT | STEADMAN, TIMOTHY A | |
|---|---|---|---|
| **Entry:** | BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION | | |
| **Images** | WEB | | |

| 10/25/2017 03:17 PM | SUMMONS ISSUED | STEADMAN, TIMOTHY A | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | WEB | | |

| 10/25/2017 03:32 PM | SUMMONS SUBPOENA FEE 21-6-402 | STEADMAN, TIMOTHY A | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | No Images | | |

| 10/25/2017 03:34 PM | PAYMENT RECEIVED | | |
|---|---|---|---|
| **Entry:** | A Payment of $2.50 was made on receipt 04CI35102. | | |
| **Images** | No Images | | |

| 11/02/2017 03:33 PM | AFFIDAVIT OF SERVICE | STEADMAN, TIMOTHY A | |
|---|---|---|---|
| **Entry:** | SIMMONS FOODS, INC- 10/30/17 | | |
| **Images** | WEB | | |

| 11/02/2017 03:33 PM | AFFIDAVIT OF SERVICE | STEADMAN, TIMOTHY A | |
|---|---|---|---|

- Not an Official Document

| Entry: | HENDREN PLASTICS, INC.- 10/30/17 |
|---|---|
| Images | WEB |
| | |
| | |

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-23 10:51:03
04CV-17-2190
C19WD04 : 26 Pages

## IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS

**MARK FOCHTMAN and SHANE O'NEAL,**
**individually and on behalf of all others**
**similarly situated**

                                                                      **PLAINTIFFS**

**v.**                          **CASE NO. _____**

**CAAIR, INC., SIMMONS FOODS, INC.,**
**DARP, INC., HENDREN PLASTICS, INC.,**
**and JOHN DOES 1-30**

                                                                      **DEFENDANTS**

## CLASS ACTION COMPLAINT

### I. INTRODUCTION

1.     This is a class action for violations of the Arkansas Constitution's prohibition on slavery, as well as for unpaid minimum wage and overtime under the Arkansas Minimum Wage Act. Defendants CAAIR, Inc. ("CAAIR") and DARP, Inc. ("DARP") claim to operate counseling and rehabilitation services. Plaintiffs agreed to enter CAAIR and DARP for court-ordered rehabilitation services. Instead of receiving counseling and treatment, however, Plaintiffs were forced to work for various businesses in Arkansas performing demanding, dangerous manual labor for no pay. Those who are injured on the job are threatened with jail to coerce them into continuing to toil; those who are unable to work are actually jailed.

2.     CAAIR and DARP force their charges to work at manufacturing, food-processing, and other similar facilities in Arkansas, including Simmons Foods, Inc. ("Simmons") and Hendren Plastics, Inc. ("Hendren"). At all times, the businesses permit

CAAIR's and DARP's charges to work in their facilities, directing their work and profiting from their labors. Those individuals, however, are not paid anything for their labor. Moreover, CAAIR's and DARP's charges have severely circumscribed access to phone calls and the internet, making it virtually impossible for them to contact anyone — even their attorneys — outside the presence of CAAIR and DARP staff.

3.     Defendants' scheme violates Arkansas law. The Arkansas Constitution expressly forbids forced labor without compensation. The Arkansas Minimum Wage Act mandates that individuals are paid a minimum wage for their labors, which includes overtime compensation for those who work more than 40 hours in a workweek. Plaintiffs bring their claims individually and on behalf of the other individuals who were required to work for free. Plaintiffs seek to enjoin CAAIR and DARP from selling their labor, and to recover unpaid wages (including minimum wage and overtime compensation), other compensatory damages, liquidated damages, punitive damages, attorneys' fees, costs, and expenses, and any other relief the Court deems just and proper.

## II. PARTIES, JURISDICTION, AND VENUE

4.     Plaintiff Mark Fochtman is a citizen of Washington County, Arkansas. In 2015 or 2016, Fochtman agreed to enter the CAAIR program as a condition of probation. Fochtman spent approximately six months attending CAAIR's "treatment" facility near Jay, Oklahoma. When Fochtman first arrived to CAAIR, he was assigned to work for one of Simmons' poultry processing facilities. Because of a wrist injury, however, he could not pass the required physical. Because of this, CAAIR assigned him to work for a Simmons' chicken farm that did not require a physical, where he disposed of dead birds,

fed chickens, maintained machinery, and performed other manual labor. In 2016 or 2017, Fochtman left CAAIR and entered the DARP "treatment" facility. During this time, DARP put Fochtman to work at Hendren Plastics filling large containers with plastic beads to be cooked to make floatation platforms. Fochtman was not paid anything for working at Simmons or Hendren Plastics.

5.    Plaintiff Shane O'Neal is a citizen of Benton County, Arkansas. In 2014, O'Neal agreed to enter the CAAIR program as a condition of probation. From approximately December 2014 until December 2015, O'Neal attended CAAIR's "treatment" facility near Jay, Oklahoma. During this time, O'Neal worked for Simmons at its pet food processing plant in Decatur, Arkansas. For the first six months, O'Neal worked as a Stacker stacking bags of dry pet food on pallets. After that, O'Neal worked as a Line Operator. O'Neal was not paid anything for working at Simmons during the time he was assigned to CAAIR.

6.    Defendant CAAIR, Inc. is a foreign, not-for-profit corporation based in Jay, Oklahoma. CAAIR is an employer of Plaintiffs and other putative class members within the meaning of the Arkansas Minimum Wage Act. CAAIR can be served via its registered agent, Donald Wilkerson, at 40152 S. 700 Road, Jay, Oklahoma, 74346.

7.    Defendant Simmons Foods, Inc. is a domestic, private, for profit corporation with headquarters in Siloam Springs, Arkansas. Simmons Foods, Inc. is an employer of Plaintiffs and putative class members within the meaning of the Arkansas Minimum Wage Act. Simmons can be served via its registered agent, Mark Simmons, at 601 N. Hico, Siloam Springs, Arkansas 72761.

8.    Defendant DARP, Inc. is a foreign, for profit corporation which operates in Decatur, Arkansas. DARP is an employer of Plaintiffs and other putative class members within the meaning of the Arkansas Minimum Wage Act. DARP can be served via its registered agent, Raymond Jones, at 1409 Beecher Street, Ft. Gibson, Oklahoma, 74434.

9.    Defendant Hendren Plastics, Inc. ("Hendren") is a domestic, private, for profit corporation with headquarters in Gravette, Arkansas. Hendren is an employer of Plaintiffs and putative class members within the meaning of the Arkansas Minimum Wage Act. Hendren Plastics can be served via its registered agent, James Hendren, at 15316 Highway 59 N., Sulphur Springs, Arkansas 72768.

10.    Defendants John Does 1-30 are currently unknown, but believed to be, other individuals or entities who utilized the labor of individuals assigned to CAAIR and DARP within the state of Arkansas, without paying the individual for their labor. Plaintiffs have attached hereto as Exhibit A the affidavit of Plaintiffs' attorney attesting that the identifies of John Does 1-30 are unknown pursuant to Ark. Code Ann. § 16-56-125.

11.    This Court has jurisdiction over the Plaintiffs' claims and subject matter of this action. Ark. Code Ann. § 16-13-201.

12.    Venue lies within this county because a substantial part of the events or omissions giving rise to the claim occurred in this county. Ark. Code Ann. § 16-60-101(a)(1). Venue is also appropriate within this county because it is the county in which Defendants DARP, Simmons, and Hendren had their principal offices in Arkansas at the time of the events giving rise to Plaintiffs' cause of action. Ark. Code Ann. § 16-60-

101(a)(2)(B) Further, venue is also appropriate here because it was the county in which Plaintiff Fochtman resided while a resident of DARP, and was Plaintiff O'Neal's residence at the time he agreed to enter the CAAIR program. Ark. Code Ann. § 16-60-101(a)(3)(a).

13.    At all relevant times, Plaintiffs and the putative class members have been entitled to the rights, protections, and benefits provided by the Arkansas Constitution and Arkansas Minimum Wage Act.

14.    At all relevant times, Plaintiffs and the putative class members have been "employees" of Defendants as defined by Ark. Code Ann. § 11-4-203(3).

15.    At all relevant times, Defendants were the "employers" of Plaintiffs and the putative class members as defined by Ark. Code Ann. § 203(4).

### III. FACTS

16.    Plaintiffs incorporate the preceding paragraphs as if there set forth herein.

### *CAAIR*

17.    Defendant CAAIR is based near Jay, Oklahoma and houses and employs hundreds of male residents, including Plaintiffs and putative class members, in on-site dormitories. "CAAIR" is an acronym for "Christian Alcoholics & Addicts in Recovery."

18.    CAAIR purports to be a "faith based, long term drug and alcohol recovery program." (*CAAIR About Us Webpage* [Ex. B]). Despite this claim, according to a review of the Oklahoma State Board of Licensed Alcohol and Drug Counselors membership roster, CAAIR does not employ any licensed drug and alcohol counselors to help the

hundreds of residents it employs. The program is uncertified and is not regulated by any
state agency.

19.     Typically, CAAIR's residents agree to enter the CAAIR program as a
condition of probation and in lieu of serving prison time. If a resident leaves CAAIR,
either voluntarily or involuntarily, they are typically sent to prison.

20.     CAAIR assigns its residents to work for various entities in the surrounding
location, including northwest Arkansas. For example, each day, residents are transported
to Simmons' pet food processing plant, poultry processing facility, and chicken farms in
Decatur, Arkansas. Simmons Foods, Inc., is a company with annual revenue of $1.4
billion. There, the residents perform dirty and physically demanding manual labor for
Simmons' business. Upon information and belief, CAAIR's residents are also assigned to
work at other businesses in Arkansas. The residents routinely work over 40 hours in a
workweek.

21.     At CAAIR, everyone must work: if an employee is sick, injured, or
otherwise unable to work, they are kicked out of the program and sent to jail. As a result,
the ever-present fear of incarceration ensures CAAIR's residents report to work despite
physical injuries and sicknesses that would otherwise prevent them from working.

22.     Upon information and belief, Simmons and the other entities contracted
with CAAIR pay a discounted rate for the labor performed by Plaintiffs and the putative
class members.

23.     Despite performing demanding, dangerous, and dirty work, the residents
do not receive any wages. Instead, CAAIR keeps all of the wages earned by the residents.

CAAIR generates over one million dollars a year in revenue, largely based on the slave labor provided by residents. CAAIR's officers, however, do not work for free, and they pay themselves hundreds of thousands of dollars annually in compensation.

24.     CAAIR is not a treatment facility despite its fraudulent claims to the contrary. CAAIR is not certified, and it does not even employ licensed counsellors or social workers to provide drug and alcohol recovery services.

25.     Instead of receiving counseling and treatment, the residents are forced to toil long hours performing dangerous jobs without compensation.

26.     At CAAIR, an employee's violation of a work rule is a "major rule violation" on par with "bringing or using drugs or alcohol on the premises," "engaging in acts of violence or threats of violence," "theft," "having money or credit cards on the premises of CAAIR or at work," and "refusal to submit to a drug test or alcohol test." (*CAAIR's Major Rule Violations* [Ex. C]). Likewise, "failure to maintain your position at your assigned work provider" is also a "major rule violation." (*CAAIR's Major Rule Violations* [Ex. C]).

27.     At CAAIR, residents have severally circumscribed access to phone calls and the internet. CAAIRS's work rules expressly forbid its residents from having cellphones or other electronic devices on the premises or at work. (*CAAIR's Major Rule Violations* [Ex. C]). Any phone calls made by residents, including calls to family or legal counsel, must be done in the presence of a CAAIR staff member. As a result, CAAIR residents do not have a legitimate avenue to complain about the conditions at CAAIR.

28.    As described herein, CAAIR and the businesses with which it provides labor had an interrelation of operations between the entities, and a common business purpose — providing cheap labor for various enterprises in Arkansas, including poultry processing facilities, pet food production, and chicken farm operations. CAAIR and the other businesses with which it provides labor also directly or indirectly controlled the terms of employment of Plaintiffs and the putative class members.

29.    CAAIR and the other businesses with which it provides labor either directly, or indirectly, controlled the hours worked by Plaintiffs and the putative class members.

30.    CAAIR and the other businesses with which it provides labor directed the work of Plaintiffs and the putative class members.

31.    CAAIR and the other businesses with which it provides labor directly or indirectly maintained communications with Plaintiffs and the putative class members and received updates as to the status of their work.

32.    CAAIR and the other businesses with which it provides labor provided guidance on how each assigned task was to be performed by Plaintiffs and putative class members.

33.    CAAIR and the other businesses with which it provides labor are joint employers in that they direct and control Plaintiffs' and the putative class members' work. Thus, CAAIR and the other businesses with which it provides labor are each directly liable for the violations of Arkansas law in this case.

34.     CAAIR, Simmons Foods, Inc., Hendren Plastics, Inc., and John Does 1-30 are "employers" of Plaintiffs and putative class members under the Arkansas Minimum Wage Act, and, as a result, they are jointly and severally liable for unpaid minimum wages (including overtime compensation), liquidated damages, and attorneys' fees, costs, and expenses.

### *DARP*

35.     Defendant DARP, Inc. operates in Decatur, Arkansas. DARP has two sixty-bed men's facilities in Decatur, Arkansas that houses hundreds of male residents. *See* (*DARP Letter* [Ex. D]). "DARP" is an acronym for "Drug and Alcohol Recovery Program."

36.     DARP purports to be a "faith based alcohol and drug recovery program." (*DARP Mission Statement* [Ex. E]). Like CAAIR, DARP is an unregulated "recovery program" and is not a certified drug treatment program.

37.     DARP's primary source of referrals is through court-ordered programs, and DARP's residents agree to enter the DARP program as a condition of probation and in lieu of serving prison time. If a resident leaves DARP, either voluntarily or involuntarily, they are typically sent to prison.

38.     DARP assigns its residents to work for various entities in Arkansas. Each day, residents are transported to poultry processing facilities and other manufacturing jobs in and around Decatur, Arkansas. For example, DARP sends its residents to work for Simmons and Hendren in Decatur, Arkansas. Simmons is a company with annual revenue of $1.4 billion. There, the residents perform dirty and physically demanding manual labor for Simmons' and Hendren's business. Upon information and belief, DARP

residents are also assigned to work for other businesses in Arkansas. The residents
routinely work over 40 hours in a workweek.

39.    At DARP, everyone must work: if an employee is sick, injured, or otherwise
unable to work, they are kicked out of the program and sent to jail. As a result, the ever-
present fear of incarceration ensures DARP's residents report to work despite physical
injuries and sicknesses that would prevent them from working. In fact, DARP does not
even allow the admittance of residents who have a medical condition that prohibits
working. *See* (*DARP: Criteria for Admittance* [Ex. F]).

40.    Upon information and belief, Simmons, Hendren Plastics, and the other
entities contracted with DARP pay a discounted rate for the labor performed by Plaintiffs
and the putative class members.

41.    Despite performing demanding, dangerous, and dirty work, the residents
do not receive any wages. (*DARP: Fees and Costs* [Ex. G]). It is DARP's policy that all
participants are to work full-time jobs for which they will not be paid. (*DARP: Fees and
Costs* [Ex. G]). Instead, the residents' wages go to pay DARP's operating expenses of day-
to-day operations and the salaries of its staff and executive officers. *See* (*DARP: Fees and
Costs* [Ex. G]). DARP's revenue is "generated solely through the various employment
contracts the D.A.R.P. has entered into to provide employment for [its] participants."
(*DARP: Introduction* [Ex. H]).

42.    DARP is not a treatment facility, as it fraudulently claims. DARP is not
certified, and it does not even employ licensed counselors or social workers. Thus, DARP
does not provide the counseling and rehabilitation services that it purports to provide.

43.     Instead of receiving promised counseling and treatment, the residents are forced to toil in dirty and dangerous jobs without pay. (*DARP: Fees and Costs* [Ex. G]).

44.     At DARP, residents have severally circumscribed access to phone calls and the internet. Upon information and belief, any phone calls made by residents, including calls to family or legal counsel, must be done in the presence of a DARP staff member. As a result, DARP residents do not have a legitimate avenue to complain about the conditions at DARP.

45.     As described herein, DARP and the businesses with which it provides labor had an interrelation of operations between the entities, and a common business purpose — providing cheap labor for various enterprises in Arkansas, including poultry processing facilities, chicken farm operations, and other manufacturing enterprises. DARP and the other businesses with which it provides labor also directly or indirectly controlled the terms of employment of Plaintiffs and the putative class members.

46.     DARP and the other businesses with which it provides labor either directly, or indirectly, controlled the hours worked by Plaintiffs and the putative class members.

47.     DARP and the other businesses with which it provides labor directed the work of Plaintiffs and the putative class members.

48.     DARP and the other businesses with which it provides labor directly or indirectly maintained communications with Plaintiffs and the putative class members and received updates as to the status of their work.

49.     DARP and the other businesses with which it provides labor provided guidance on how each assigned task was to be performed by Plaintiffs and putative class members.

50.     DARP and the other businesses with which it provides labor are joint employers, in that they direct and control Plaintiffs' and the putative class members' work. Thus, DARP and the other businesses with which it provides labor are each directly liable for the violations of Arkansas law in this case.

51.     DARP, Simmons Foods, Inc., Hendren Plastics, Inc., and John Does 1-30 are "employers" of Plaintiffs and putative class members under the Arkansas Minimum Wage Act, and, as a result, they are jointly and severally liable for unpaid minimum wages (including overtime compensation), liquidated damages, and attorneys' fees, costs, and expenses.

### *Simmons, Hendren, and John Doe Defendants*

52.     Simmons, Hendren, and the John Doe Defendants are for-profit businesses operating in Arkansas that, in conjunction with CAAIR and DARP, employed Plaintiffs and putative class members in unskilled labor positions but did not pay them for their work.

53.     Simmons, Hendren, and the John Doe Defendants, in conjunction with CAAIR and DARP, employed Plaintiffs and the putative class members as employees in the Defendants' profit-making enterprises. Plaintiffs and the putative class members were not employed to provide valuable community service like picking up trash on the side of the road or painting and repairing public works.

54.    Rather, Plaintiffs and the putative class members worked alongside, and oftentimes in the place of, typical employees hired to produce the products of Simmons, Hendren, and the John Doe Defendants' businesses.

55.    Likewise, Plaintiffs and the putative class members were not trained in a trade, but instead performed unskilled labor in demanding, dangerous, and dirty environments.

56.    CAAIR and DARP provided their charges to be exploited by Simmons, Hendren, and the John Doe Defendants. CAAIR and DARP reaped the benefits of Plaintiffs and the putative class members' labor by collecting all of the wages earned by those employees, collectively generating millions of dollars in revenue and paying their officers hundreds of thousands of dollars in annual salary.

57.    Simmons, Hendren, and the John Doe Defendants profited from that relationship by paying lower wage rates and using threats of incarceration to coerce Plaintiffs and putative class members into performing the type of work many employees would not perform.

58.    CAAIR and DARP, acting in concert with Simmons, Hendren, and the John Doe Defendants, married Plaintiffs' and the putative class members' job performance with their successful "treatment." For example, at CAAIR, an employee's violation of a work rule is a "major rule violation" on par with "bringing or using drugs or alcohol on the premises," "engaging in acts of violence or threats of violence," "theft," "having money or credit cards on the premises of CAAIR or at work," and "refusal to submit to a drug test or alcohol test." (*CAAIR's Major Rule Violations* [Ex. C]). Likewise, "failure to

maintain your position at your assigned work provider" is also a "major rule violation." (*CAAIR's Major Rule Violations* [Ex. C]).

59.    As a result, CAAIR, DARP, Simmons, Hendren, and the John Doe Defendants together orchestrated a pervasive scheme of slavery in which each entity and their officers profited from CAAIR and DARP's large, coerced labor force.

60.    Simmons, Hendren, and the John Doe Defendants, in conjunction with CAAIR and DARP, controlled the working conditions of Plaintiffs and the putative class members.

61.    Simmons, Hendren, and the John Doe Defendants, in conjunction with CAAIR and DARP, supervised the work of Plaintiffs and the putative class members.

62.    Simmons, Hendren, and the John Doe Defendants, in conjunction with CAAIR and DARP, directed the work of Plaintiffs and the putative class members.

63.    Simmons, Hendren, and the John Doe Defendants, in conjunction with CAAIR and DARP, set the work schedules of Plaintiffs and the putative class members.

64.    Simmons, Hendren, and the John Doe Defendants, in conjunction with CAAIR and DARP, enforced compliance of Simmons, Hendren, and the John Doe Defendants' work rules and policies.

65.    Simmons, Hendren, and the John Doe Defendants, in conjunction with CAAIR and DARP, controlled the rates and methods of pay for Plaintiffs and the putative class members, although that pay was kept by CAAIR and DARP, not Plaintiffs and the putative class members.

66.    Simmons, Hendren, and the John Doe Defendants, in conjunction with CAAIR and DARP, maintained employee records pertaining to Plaintiffs and the putative class members.

### IV. CLASS ACTION ALLEGATIONS

67.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

68.    Plaintiffs brings this action for violation of the AMWA as a class action under Rule 23 of the *Arkansas Rules of Civil Procedure*. The first class is comprised of individuals who were, are, or will be CAAIR participants from October 20, 2014 until the present who worked in the State of Arkansas during their time at CAAIR. The second class is comprised of individuals who were, are, or will be DARP participants from October 20, 2014 until the present who worked in the State of Arkansas during their time at DARP.

69.    Members of the putative classes are so numerous that joinder of all such members is impracticable. The exact size of the putative classes is unknown, but may be determined from records maintained by Defendants. CAAIR and DARP each employed hundreds of individuals who worked for employers located in Arkansas. Former employees are also included as putative class members.

70.    There are common questions of law and fact applicable to the putative classes with respect to liability, relief, and anticipated affirmative defenses. Common questions of law and fact include, but are not limited to, whether Defendants failed to pay Plaintiffs and putative class members minimum wage for all hours worked; whether

Defendants' compensation policies and practices are illegal; whether injunctive relief is available to force Defendants into compliance, whether Defendants have acted willfully or in good faith; whether Defendants subjected Plaintiffs and the putative class to involuntary servitude; whether Plaintiffs and members of the putative class are entitled to liquidated damages, penalties, and attorneys' fees and costs; and whether Defendants have complied with the AMWA's record-keeping obligations.

71.     Plaintiffs are typical of the putative class. Like all other putative class members, Plaintiffs were subject to Defendants' common policy and practice of not paying them for all compensable work to which they were entitled under Arkansas law.

72.     Plaintiffs will fairly and adequately protect the interest of the putative classes. They have no conflicts with putative class members and have suffered the same injury as members of the putative class. Plaintiffs' counsel possess the requisite resources and experience in class action litigation to adequately represent Plaintiffs in prosecuting the claims here.

73.     Defendants have acted or refused to act on grounds generally applicable to the putative classes, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the putative class as a whole. Plaintiffs and members of the putative classes are entitled to injunctive relief to end Defendants' common and uniform practice of failing to properly compensate them for all hours worked.

74.     The questions of law and fact common to Plaintiffs and members of the putative classes predominate over any question affecting only individual class members,

and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### V. COUNT I:
### AMWA: FAILURE TO PAY MINIMUM WAGE

75.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

76.    At all relevant times, Plaintiffs and members of the putative classes were entitled to the rights, protections, and benefits provided under the AMWA.

77.    At all relevant times, Plaintiffs and members of the putative class were "employees" of Defendants, as defined by Ark. Code Ann. § 11-4-203(3).

78.    At all relevant times, Defendants were the "employers" of Plaintiffs and members of the putative classes, as defined by Ark. Code Ann. § 11-4-203(4).

79.    Ark. Code Ann. § 11-4-210(a) provides that "beginning October 1, 2006, every employer shall pay each of his or her employees wages at the rate of not less than six dollars and twenty-five cents ($6.25) per hour except as otherwise provided in this subchapter. Beginning January 1, 2015, every employer shall pay his or her employees wages at the rate of not less than seven dollars and fifty cents ($7.50) per hour, beginning January 1, 2016, the rate of not less than eight dollars ($8.00) per hour, and beginning January 1, 2017, the rate of not less than eight dollars and fifty cents ($8.50) per hour, except as otherwise provided in this subchapter." Ark. Code Ann. § 11-4-210(a)(1)-(2).

80.    At all relevant times, Defendants, pursuant to their policies and practices, failed and refused to compensate Plaintiffs for work performed at the rate required by Ark. Code Ann. § 11-4-210.

81.    Plaintiffs and members of the putative classes are entitled to compensation for all hours worked up to 40 per work week at the minimum wage set by Arkansas law. From October 1, 2006 until December 31, 2014, that minimum rate was $6.25 per hour. From January 1, 2015 until December 31, 2015, that minimum rate was $7.50 per hour. From January 1, 2016 until December 31, 2016, that minimum rate was $8.00 per hour. Since January 1, 2017, that minimum rate is $8.50 per hour.

82.    Defendants have willfully violated and continue to violate the AMWA by failing to pay putative class members for all hours worked up to 40 per work week at least the minimum rate prescribed therein.

83.    Defendants have failed and continue to fail to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of Ark. Code Ann. § 11-4-217.

84.    Defendants have willfully violated and continue to violate the above provisions by failing to pay putative class members for all hours worked up to 40 per work week at least the minimum rate prescribed therein.

85.    Plaintiffs and members of the putative classes have sustained damages as a result of Defendants' violation of the AMWA.

86.     Defendants' violations entitle Plaintiffs and members of the putative class to liquidated damages pursuant to Ark. Code Ann. § 11-4-218(a)(2) in an amount equal to Plaintiffs' and the putative class' compensatory damages.

87.     Plaintiffs and members of the putative classes are entitled to an award of attorneys' fees and costs pursuant to Ark. Code Ann. § 11-4-218(a)(1)(B)(ii).

88.     Defendants, as joint employers, are jointly and severally liable to Plaintiffs and the putative class members for unpaid wages, liquidated damages, interest, expenses, attorneys' fees, and costs.

## VI. COUNT II:
### AMWA: FAILURE TO PAY OVERTIME

89.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

90.     At all relevant times, Plaintiffs and members of the putative classes were entitled to the rights, protections, and benefits provided under the AMWA.

91.     At all relevant times, Plaintiffs and members of the putative class were "employees" of Defendants, as defined by Ark. Code Ann. § 11-4-203(3).

92.     At all relevant times, Defendants were the "employers" of Plaintiffs and members of the putative classes, as defined by Ark. Code Ann. § 11-4-203(4).

93.     Ark. Code Ann. § 11-4-211(a) provides that "no employer shall employ any of his or her employees for a work week longer than forty (40) hours unless the employee receives compensation for his or her employment in excess of the hours above specified

at a rate not less than one and one-half (1 ½) times the regular rate of pay at which he or she is employed."

94.    At all relevant times, Defendants, pursuant to their policies and practices, failed and refused to compensate Plaintiffs for work performed at the rate required by Ark. Code Ann. § 11-4-211.

95.    Plaintiffs and members of the putative classes are entitled to compensation for all hours worked in excess of 40 per work week at a rate not less than one-and-a-half times their regular rate of pay.

96.    Defendants have willfully violated and continue to violate the AMWA by failing to pay putative class members for all hours actually worked at the rate prescribed therein.

97.    Defendants have failed and continue to fail to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of Ark. Code Ann. § 11-4-217.

98.    Defendants have willfully violated and continue to violate the above provisions by failing to pay one-and-a-half times the regular rate of pay for compensable work in excess of 40 hours in a work week.

99.    Plaintiffs and members of the putative classes have sustained damages as a result of Defendants' violation of the AMWA.

100.    Defendants' violations entitle Plaintiffs and members of the putative class to liquidated damages pursuant to Ark. Code Ann. § 11-4-218(a)(2) in an amount equal to Plaintiffs' and the putative class' compensatory damages.

101.    Plaintiffs and members of the putative classes are entitled to an award of attorneys' fees and costs pursuant to Ark. Code Ann. § 11-4-218(a)(1)(B)(ii).

102.    Defendants, as joint employers, are jointly and severally liable to Plaintiffs and the putative class members for unpaid wages, liquidated damages, interest, expenses, attorneys' fees, and costs.

### VII. COUNT III:
### INVOLUNTARY SERVITUDE IN VIOLATION OF ARK. CONST. ART. 2, § 27

103.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

104.    At all relevant times, Plaintiffs and members of the putative classes were entitled to the rights, protections, and benefits provided under the Arkansas Constitution, including Article 2, § 27's prohibition on slavery and involuntary servitude.

105.    As explained above, Defendants held Plaintiffs and putative class members in involuntary servitude by falsely holding themselves out as a "drug and alcohol recovery program," forcing them to work long hours under harsh conditions, without pay, and under the constant threat of being sent to jail.

106.    CAAIR and DARP provided their charges to be exploited by Simmons, Hendren, and the John Doe Defendants. CAAIR and DARP reaped the benefits of Plaintiffs and the putative class members' labor by collecting all of the wages earned by

those employees, collectively generating millions of dollars in revenue and paying their officers hundreds of thousands of dollars in annual salary.

107.    Simmons, Hendren, and the John Doe Defendants profited from that relationship by paying lower wage rates and using threats of incarceration to coerce Plaintiffs and putative class members into performing the type of work many employees would not perform.

108.    As a result, CAAIR, DARP, Simmons, Hendren, and the John Doe Defendants together orchestrated a pervasive scheme of slavery in which each entity and their officers profited from CAAIR and DARP's large, coerced labor force, and are therefore jointly and severally liable for the violations complained of herein.

109.    As such, Defendants directed, assisted, conspired, and acted in concert with each other and perpetuated a system of involuntary servitude prohibited by the Arkansas Constitution.

110.    As a direct and proximate result of these actions, Plaintiffs and putative class members have suffered economic losses.

111.    As a direct and proximate result of these actions, Plaintiffs have suffered pain and suffering.

112.    As a direct and proximate result of Defendants' conduct, Plaintiffs suffered lost income and lost employment opportunities.

113.    Plaintiffs and putative class members are entitled to recover damages in an amount to be proven at trial, including attorneys' fees and costs, and punitive damages.

## VIII. COUNT IV:
### VIOLATION OF ARK. CODE ANN. § 16-123-105
### ARKANSAS CIVIL RIGHTS ACT

114.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

115.    Under the Arkansas Civil Rights Act, any person who under color of any statute, ordinance, regulation, custom, or usage of any political subdivision deprives an individual of any rights, privileges, and immunities secured by the Arkansas Constitution shall be liable for legal and equitable relief. Ark. Code Ann. § 16-123-105.

116.    At all relevant times, Plaintiffs and members of the putative classes were entitled to the rights, protections, and benefits provided under the Arkansas Constitution, including Article 2, § 27's prohibition on slavery and involuntary servitude.

117.    As explained above, Defendants held Plaintiffs and putative class members in involuntary servitude by falsely holding themselves out as a "drug and alcohol recovery program," forcing them to work long hours under harsh conditions, without pay, and under the constant threat of being sent to jail.

118.    CAAIR and DARP provided their charges to be exploited by Simmons, Hendren, and the John Doe Defendants. CAAIR and DARP reaped the benefits of Plaintiffs and the putative class members' labor by collecting all of the wages earned by those employees, collectively generating millions of dollars in revenue and paying their officers hundreds of thousands of dollars in annual salary.

119.    Simmons, Hendren, and the John Doe Defendants profited from that relationship by paying lower wage rates and using threats of incarceration to coerce

Plaintiffs and putative class members into performing the type of work many employees would not perform.

120.    As a result, CAAIR, DARP, Simmons, Hendren, and the John Doe Defendants together orchestrated a pervasive scheme of slavery in which each entity and their officers profited from CAAIR and DARP's large, coerced labor force, and are therefore jointly and severally liable for the violations complained of herein.

121.    As such, Defendants directed, assisted, conspired, and acted in concert with each other and perpetuated a system of involuntary servitude prohibited by the Arkansas Constitution.

122.    As a direct and proximate result of these actions, Plaintiffs and putative class members have suffered economic losses.

123.    As a direct and proximate result of these actions, Plaintiffs have suffered pain and suffering.

124.    As a direct and proximate result of Defendants' conduct, Plaintiffs suffered lost income and lost employment opportunities.

125.    Plaintiffs and putative class members are entitled to recover damages in an amount to be proven at trial, including attorneys' fees and costs, and punitive damages.

### IX. PRAYER FOR RELIEF

126.    WHEREFORE, Plaintiffs, on behalf of themselves and all members of the putative class, respectfully request this Court:

a.    Certify this action as a class action on behalf of the proposed class pursuant to Ark. R. Civ. P. 23, with one class defined as:

All individuals who were, are, or will be CAAIR participants from October 20, 2014 until the present, and worked in the State of Arkansas for employers located in Arkansas during their time at CAAIR.

b.     Certify this action as a class action on behalf of the proposed class

pursuant to Ark. R. Civ. P. 23, with another class defined as:

All individuals who were, are, or will be DARP participants from October 20, 2014 until the present, and worked in the State of Arkansas for employers located in Arkansas during their time at DARP.

c.     Designate Plaintiffs as Representative of the Classes;

d.     Appoint Holleman & Associates, P.A. as class counsel;

e.     Enter a declaratory judgment that the practices complained of herein

are unlawful under Arkansas law;

f.     Enter a permanent injunction, restraining and preventing

Defendants from withholding the compensation that is due to Plaintiffs, from

retaliating against any Plaintiff for taking part in this action, and from further

violation of their rights under the law;

g.     Enter an order for a complete and accurate accounting of all the

compensation to which Plaintiffs and the putative class members are entitled;

h.     Enter judgment against Defendants for an amount equal to the

unpaid back wages of Plaintiffs and others similarly situated at the applicable

minimum wage and overtime rates. The damages continue for a period from three

(3) years prior to the filing of this Complaint to the date of trial;

      i.       Enter judgment against Defendants for liquidated damages equal to the amount of compensatory damages;

      j.       Find that Defendants' violations of the AMWA were willful;

      k.       Grant Plaintiffs all recoverable costs, expenses, and attorneys' fees incurred in prosecuting these claims, together with all applicable interest and punitive damages; and

      l.       Grant Plaintiffs all such further relief as the Court deems just and appropriate.

## X. JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

HOLLEMAN & ASSOCIATES, P.A.
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

Respectfully Submitted,

John Holleman, ABN 91056
jholleman@johnholleman.net
Timothy A. Steadman, ABN 2009113
tim@johnholleman.net
Jerry Garner, ABN 2014134
jerry@johnholleman.net

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-23 10:51:03
04CV-17-2190
C19WD04 : 1 Page

# AFFIDAVIT

1.     My name is Timothy A. Steadman, and I am over 18 years old and solemnly swear that the following facts and information and true and correct to the best of my knowledge and belief:

2.     I am an attorney for the Plaintiffs in the attached pleading.

3.     Neither my clients nor I know the identities of the John Doe designations set forth in the pleading. I believe these Defendants to be other business entities in Arkansas that employed residents of CAAIR and DARP within the three years preceding the filing of the Complaint.

4.     Upon determining the identity of the unknown parties discussed above, I will timely amend the Complaint to specifically designate the names of the unknown parties.

5.     This Affidavit is filed in accordance with Ark. Code Ann. § 16-56-125.

Dated this 20ᵗʰ day of October, 2017.

Timothy A. Steadman

STATE OF ARKANSAS     )
                      )
COUNTY OF PULASKI     )

SUBSCRIBED AND SWORN TO before me, a Notary Public, on this 20ᵗʰ day of October, 2017.

Notary Public

JEANETTE YATES
COMM. EXP.
7-10-2024
No. 12399873
PULASKI COUNTY
NOTARY PUBLIC - ARKANSAS

Page 1 of 1

EXHIBIT
A

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-23  10:51:03
04CV-17-2190
C19WD04 : 1 Page



ABOUT US | HOME | CONTACT US | COMMISSARY | OUR STAFF | ADMISSIONS
12 STEP MEETINGS | BASIC RULES | COST | COUNSELING | DONATIONS

 12-STEP MEETINGS    COUNSELING    COST

MORE    MORE    MORE

## ABOUT US

CAAIR, (Christian Alcoholics and Addicts in Recovery) is a faith based, long term drug and alcohol recovery program. The CAAIR program has a vision and growth strategy for men who want a second chance in life to become free from drugs and alcohol. The CAAIR program is based on the philosophy of change to achieve a clean and sober life for the clients. We request a minimum of (1) one year stay in our program. After the client successfully completes the requirements of the program, a certificate of completion and a monetary gift will be awarded.

A MESSAGE FROM JANET
C.E.O. CAAIR INC.



*CAAIR began as a simple concept; to give men with addiction issues a second chance in life. Who hasn't made some bad decisions in their lives? We believe that everyone deserves a second chance. CAAIR provides the environment for men to learn to make good decisions, to be a good family man, a good employee, and a good community member. The organization provides everything the men need, but they must bring the "want to", or in other words, the desire to change.*
*I tell people ALL the time that God has a plan for their lives. He has shown me over and over that if I will just get out of His way, He will take care of everything in His time – not Janet's time! We should never be amazed at what God will do for us when we simply believe and trust.*
*When the men bring a desire to change and then learn to trust that God will help them, then the miracle begins to happen! If you are sick and tired of being sick and tired, contact CAAIR for an interview, come ready to change, and then let the miracle begin!!!*

CAAIR ©

WebsiteBuilder

EXHIBIT
B

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-23  10:51:03
04CV-17-2190
C19WD04 : 1 Page



| ABOUT US | HOME | CONTACT US | COMMISSARY | OUR STAFF | ADMISSIONS |
| 12 STEP MEETINGS | | BASIC RULES | COST | COUNSELING | DONATIONS |

## Major & Minor Rule Violations

Clients of CAAIR are expected to follow the rules of the Management Team. Disciplinary procedures, up to and including

dismissal from the program, will be given to clients who chose to not follow the rules.

Listed below is a list of minor and major rule violations. This is not a comprehensive list. Other infractions of rules set forth by the

Management Team may also result in disciplinary procedures.

Copyright © CAAIR. All rights reserved.

## Major Rule Violations

1. Bringing or using drugs or alcohol on the premises.

2. Engaging in acts of violence or threats of violence.

3. Theft.

4. Willful destruction of property.

5. Insubordination.

6. Vulgar and/or sexually explicit language, homosexual jokes, and/or comments of any kind.

7. Horseplay or wrestling at any time.

8. Having money or credit cards on the premises of CAAIR or at work.

9. Smoking (including e-cigs) or dipping tobacco in the vans or dorm rooms.

10. Having cell phones, knives, or electronics devices on the premises or at work.

11. Refusal to submit to a drug or alcohol test.

12. Leaving CAAIR or assigned work provider premises without prior permissions or with an unauthorized person.

13. Failure to maintain your position at your assigned work provider.

14. Failure to follow the rules and regulations of your assigned work provider.

## Minor Rule Violations

1. Failure or being late to attend daily meetings; prayer meetings, dorm meetings, 12-step meetings, and Goose meetings.

2. Failure to get along with others ( not being a team player)

3. Failure to maintain a positive attitude.

4. Failure to do assigned chores.

5. Not removing work boots before entering the building.

6. Wearing of any jewelry except a plain wedding band.

7. Fraternization with any females.

8. Use of any computer or telephone anywhere, except the weekly assigned time for phone use at CAAIR.

9. Having food or drink in the vans or dorm rooms.

10. Wearing any kind of headgear in the dorm or office.

11. Failure to keep dorm room clean.

12. Not being fully (properly) dressed for meals.

Note: Three (3) minor infractions will equal to one major rule violation.

**EXHIBIT**

**C**

tabbies

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-23 10:51:03
04CV-17-2190
C19WD04 : 1 Page

The D.A.R.P. Foundation
14100 N. 477 Road
Tahlequah, OK 74464
(918) 456-9100

Custer County Drug Court
ATTN: Mr. Ken Theissen
603 B. Street Fl 2
Arapaho, OK 73620

RE:    Introduction to The DARP Foundation

Mr. Theissen:

I want to begin by thanking you for taking the time to discuss our recovery program by telephone with me this morning. One thing that I always admired about Judge Markham was how dedicated he was to his constituents in Custer County and I am convinced after visiting with you today that you share that dedication.

Please find 9 pages of information forthcoming with this fax in reference to our drug and alcohol recovery program in Oklahoma and Arkansas.

As I mentioned during our telephone conversation this morning, we have a 50 bed men's facility in Tahlequah, Oklahoma, a 28 bed women's facility in Tahlequah, Oklahoma, and 2 new 60 bed men's facilities in Decatur, Arkansas.

We welcome a visit from the Custer County Drug Court Treatment Team and hope that your team will consider contacting Mr. Mack Bentley, Human Resource Director, by cell phone at (918) 770-3647 if you have any clients that you wish to consider placing in our recovery program.

Sincerely,

JIMMY W. JONES, SR.
Assistant Director
BS, Family Studies and Gerontology

EXHIBIT

D

08-30-2007 10:11   DECATUR DARP FOUNDATION 4797359535

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-23  10:51:03
04CV-17-2190
C19WD04 : 1 Page

# D.A.R.P. Foundation
(Drug and Alcohol Recovery Program)

## MISSION STATEMENT

D.A.R.P. Foundation is a not-for-profit faith based alcohol and drug recovery program. Since 2001 we have extended the hand of recovery to hundreds of men and women seeking recovery from the ravages of alcoholism, drug addiction, and alcohol and drug abuse. We offer a long-term program that balances the recovery principles of the 12 steps, faith/spiritual principles, and the ethic of hard work. We offer the opportunity to seek recovery and we pledge to treat each participant with dignity and respect.

**EXHIBIT**
**E**

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-23  10:51:03
04CV-17-2190
C19WD04 : 1 Page

Subject:  Criteria for Admittance

Policy:   Primary source of referrals is through the criminal justice system; however, individuals who express a sincere desire for help will be accepted and they will be subject to the same rules and requirements as those referred through the criminal justice system.

Procedures:  Participant's must meet the following criteria:

A.  Participant's offense does not involve a crime of violence against any person, unless the offense is related to domestic violence and substance abuse;

B.  Participant has no prior felony convictions for a violent offense;

C.  Participant offense does not involve a sexual offense and participant has no prior convictions for any sexual offense;

D.  Participant admits to having a substance abuse or addiction problem or the participant appears to have a substance abuse problem;

E.  Participant does not have medical condition prohibiting work, i.e. heart condition, lung condition, skeletal condition, or other medical condition requiring medication;

F.  Participant has not been diagnosed with mental health disorders requiring medications to treat; and,

G.   Participant does express a willingness to comply with program rules and requirements.

**EXHIBIT**

**F**

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-23 10:51:03
04CV-17-2190
C19WD04 : 1 Page

**Subject:** Fees and Costs

**Policy:** It is the D.A.R.P. Foundation's policy to never charge participant's any fees or costs; however, participants are expected to work at full-time jobs knowing that they will not receive any immediate financial compensation for their work. Participants will understand that the money is going to the D.A.R.P. Foundation to pay the operating expense of day-to-day operations. Participants are advised that if they remain in compliance with all program rules and requirements they will receive a monetary stipend based upon their length of stay.

**Procedure:**

A. Start Date begins with first clean urinalysis and breathalyzer scan;

B. Participants who successfully complete six (6) months in the program with no violations receive a monetary stipend of $500.00;

C. Participants who successfully complete One (1) year in the program with no violations receive a monetary stipend of $1,000.00;

D.. Participants will be provided healthy meals at no cost;

E. While in the program the D.A.R.P. Foundation will provide participant's with the basic necessities of hygiene supplies to include toothpaste, shampoo, toothbrushes, razors, etc. at no cost; and,

F. We hope that the most treasured item you leave with is **Sobriety!**

EXHIBIT
G

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-23  10:51:03
04CV-17-2190
C19WD04 : 1 Page

## D.A.R.P. Foundation

(Drug and Alcohol Recovery Program)

# INTRODUCTION TO THE D.A.R.P. FOUNDATION

The D.A.R.P. Foundation was founded in 2001 with the vision of helping the suffering alcoholic/addict who had a desire and willingness to try and turn their life around.

The D.A.R.P. Foundation has come a long way since it first opened its doors and many of those first participants have moved on to a normal, happy, clean and sober life. The D.A.R.P. Foundation has been fortunate to show continued growth and opportunities for a larger number of men and women.

The D.A.R.P. Foundation is a not-for profit, 501c(3), self-supporting organization. We do not receive any state or federal funding and our revenues are generated solely through the various employment contracts the D.A.R.P. has entered into to provide employment for our participants.

The primary source of referrals is through the criminal justice system; however, if an individual expresses a sincere desire for recovery the D.A.R.P. will accept voluntary admissions. The length of stay is a minimum of six (6) months; however, the stay can be lengthened at the discretion of the court or the individual participant. The hard work ethic of the program will exclude some with physical and/or mental disabilities. The referring authority will be advised of participant's admission and will be notified of participant's discharge. Upon successful completion of the program participants do receive a monetary stipend based upon the length of their stay at the D.A.R.P. If eligible, participants also receive assistance from the D.A.R.P. in obtaining full-time employment.

If you are interested in finding out more information about the D.A.R.P. Foundation, or if you would like to make a referral to the D.A.R.P. Foundation please feel free to contact us about the opportunities we provide.

Sincerely,

Raymond H. Jones
Executive Director
D.A.R.P. Foundation

EXHIBIT

H

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-25 12:38:22
04CV-17-2190
C19WD04 : 1 Page

Subject: Fees and Costs

Policy: It is the D.A.R.P. Foundation's policy to never charge participant's any fees or costs; however, participants are expected to work at full-time jobs knowing that they will not receive any immediate financial compensation for their work. Participants will understand that the money is going to the D.A.R.P. Foundation to pay the operating expense of day-to-day operations. Participants are advised that if they remain in compliance with all program rules and requirements they will receive a monetary stipend based upon their length of stay.

Procedure:

A.  Start Date begins with first clean urinalysis and breathalyzer scan;

B.  Participants who successfully complete six (6) months in the program with no violations receive a monetary stipend of $500.00;

C.  Participants who successfully complete One (1) year in the program with no violations receive a monetary stipend of $1,000.00;

D..  Participants will be provided healthy meals at no cost;

E.  While in the program the D.A.R.P. Foundation will provide participant's with the basic necessities of hygiene supplies to include toothpaste, shampoo, toothbrushes, razors, etc. at no cost; and,

F.  We hope that the most treasured item you leave with is **Sobriety!**

EXHIBIT

G

IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS
19TH WEST CIRCUIT DIVISION 4

FOCHTMAN V CAAIR INC

04CV-17-2190

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

CAAIR INC
Donald Wilkerson, Registered Agent
40152 S 700 Road
Jay, OK  74346

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

John T Holleman
1008 West 2nd Street
Little Rock, AR  72201

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

Address of Clerks Office

BRENDA DESHIELDS, CIRCUIT CLERK
CIRCUIT COURT OF BENTON COUNTY
102 NORTHEAST A STREET
BENTONVILLE, AR  72712

CLERK OF COURT

DEPUTY CLERK MARLA KAY SPIVA, DC

Date: 10/23/2017

No. 04CV-17-2190 This summons is for CAAIR INC (name of Defendant).

PROOF OF SERVICE

❑ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❑ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❑ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❑ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❑ Other [specify]:
_____

❑ I was unable to execute service because:
_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____        SHERIFF OF _____ COUNTY, ARKANSAS

                             By: _____
                             [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____    By: _____
                           [Signature of server]


                           _____
                           [Printed name]

Address: _____
         _____

Phone: _____

Subscribed and sworn to before me this date: _____


                           _____
                           Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____
_____

IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS
19TH WEST CIRCUIT DIVISION 4

FOCHTMAN V CAAIR INC

04CV-17-2190

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

SIMMONS FOODS INC.
Mark Simmons, Registered Agent
601 N Hico
Siloam Springs, AR  72761

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

John T Holleman
1008 West 2nd Street
Little Rock, AR  72201

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

Address of Clerks Office

BRENDA DESHIELDS, CIRCUIT CLERK
CIRCUIT COURT OF BENTON COUNTY
102 NORTHEAST A STREET
BENTONVILLE, AR  72712

CLERK OF COURT

DEPUTY CLERK MARLA KAY SPIVA, DC

Date: 10/23/2017

No. 04CV-17-2190 This summons is for SIMMONS FOODS INC. (name of Defendant).

PROOF OF SERVICE

❏ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❏ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❏ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❏ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❏ Other [specify]:
_____

❏ I was unable to execute service because:
_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____        SHERIFF OF _____ COUNTY, ARKANSAS

                             By: _____
                             [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____     By: _____
                          [Signature of server]


                          _____
                          [Printed name]

Address: _____
         _____

Phone: _____

Subscribed and sworn to before me this date: _____


                          _____
                          Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____
_____

## IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS
## 19TH WEST CIRCUIT DIVISION 4

FOCHTMAN V CAAIR INC

04CV-17-2190

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

DARP INC
Raymond Jones, Registered Agent
1409 Beecher Street
Fort Gibson, OK  74434

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

John T Holleman
1008 West 2nd Street
Little Rock, AR  72201

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:


CLERK OF COURT

Address of Clerks Office

BRENDA DESHIELDS, CIRCUIT CLERK
CIRCUIT COURT OF BENTON COUNTY
102 NORTHEAST A STREET
BENTONVILLE, AR  72712

*Marla K. Spiva*

DEPUTY CLERK MARLA KAY SPIVA, DC

Date: 10/23/2017

No. 04CV-17-2190 This summons is for DARP INC (name of Defendant).

PROOF OF SERVICE

❑ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❑ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❑ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❑ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❑ Other [specify]:
_____

❑ I was unable to execute service because:
_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____    SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____     By: _____
[Signature of server]


_____
[Printed name]

Address: _____
_____

Phone: _____

Subscribed and sworn to before me this date: _____


_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____
_____

IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS
19TH WEST CIRCUIT DIVISION 4

FOCHTMAN V CAAIR INC

04CV-17-2190

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

HENDREN PLASTICS INC
James Hendred, Registered Agent
15316 Highway 59 N
Sulphur Springs, AR  72768

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

John T Holleman
1008 West 2nd Street
Little Rock, AR  72201

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

Address of Clerks Office

BRENDA DESHIELDS, CIRCUIT CLERK
CIRCUIT COURT OF BENTON COUNTY
102 NORTHEAST A STREET
BENTONVILLE, AR  72712

CLERK OF COURT

*Marla K. Spiva*

DEPUTY CLERK MARLA KAY SPIVA, DC

Date: 10/23/2017

No. 04CV-17-2190 This summons is for HENDREN PLASTICS INC (name of Defendant).

PROOF OF SERVICE

❑ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❑ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❑ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❑ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❑ Other [specify]:
_____

❑ I was unable to execute service because:
_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____        SHERIFF OF _____ COUNTY, ARKANSAS

                             By: _____
                             [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____    By: _____
[Signature of server]


_____
[Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____


_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

**IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS**
**19TH WEST CIRCUIT DIVISION 4**

<u>FOCHTMAN V CAAIR INC</u>

04CV-17-2190

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

HENDREN PLASTICS INC
James Hendren, Registered Agent
15316 Highway 59 N
Sulphur Springs, AR  72768

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Timothy Steadman
1008 West Second Street
Little Rock, AR  72201

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

CLERK OF COURT

Address of Clerks Office

BRENDA DESHIELDS, CIRCUIT CLERK
CIRCUIT COURT OF BENTON COUNTY
102 NORTHEAST A STREET
BENTONVILLE, AR  72712

*Annalise Simer* 

DEPUTY CLERK ANNALISE MICHELLE SIMER, DC

Date: 10/25/2017

No. 04CV-17-2190 This summons is for   HENDREN PLASTICS INC (name of Defendant).


PROOF OF SERVICE

❏ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❏ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❏ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❏ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❏ Other [specify]:
_____

❏ I was unable to execute service because:
_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____     SHERIFF OF _____ COUNTY, ARKANSAS

                             By: _____
                             [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____       By: _____
[Signature of server]


_____
[Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____


_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-25 12:38:22
04CV-17-2190
C19WD04 : 6 Pages

## AFFIDAVIT

1.      My name is Mark Fochtman, and I am over 18 years old and solemnly swear

that the following facts and information and true and correct to the best of my knowledge

and belief:

2.      I am a citizen of Washington County, Arkansas.

3.      Around 2015 or 2016, I was ordered by the Washington County Drug Court

to enter a drug treatment facility in lieu of being incarcerated. The facility had to inform

the Drug Court if I left or was removed in from the facility involuntarily, and if so, I

would be sent to jail. At that time, I agreed to enter the CAAIR program because I thought

it was a drug treatment facility.

4.      While in the court-ordered program, I temporarily lived on the premises

near Jay, Oklahoma.

5.      I thought that, while at CAAIR, I would be able to work, save money,

receive treatment for addiction, and get my life back on track.

6.      I quickly learned that CAAIR was not a treatment facility, but was instead

a work camp. During my time there, CAAIR did not have any licensed drug and alcohol

counselors to help the hundreds of residents there.

7.      When I first arrived to CAAIR, I was assigned to work for one of Simmons'

poultry processing facilities. Because of an injury in my wrist, however, I did not pass the

physical exam and could not work there. Instead, CAAIR assigned me to work for

another Simmons' location that did not require passing a physical.

Page **1** of **6**

EXHIBIT

A

8.     CAAIR assigned me to work on a chicken farm for Simmons Foods near Decatur, Arkansas. CAAIR drove me to the farm 5 days a week where I would work around 9 hours per day.

9.     My typical schedule was Thursday through Monday. On my "days off" I was oftentimes required to go to Tulsa, Oklahoma to work at the Food Bank. Because CAAIR sent people to work at the Food Bank, it received a discount on food.

10.    My job at the chicken farm was a dirty, disgusting job. Each day I was responsible for collecting the birds from the chicken houses that had died during the previous day. On a typical day I collected over 100 dead birds. I disposed of the dead birds in an empty chicken house. That chicken house was full of thousands of decaying and rotting chickens covered in maggots.

11.    I was also responsible for feeding chickens, performing maintenance on machinery and equipment, and other tasks. The job was physically demanding but required no skill or training.

12.    Other employees from CAAIR also worked disgusting and dangerous jobs. For example, I remember seeing CAAIR employees who worked in Simmons' Live Hang Department returning to CAAIR with their faces covered in bird feces from when they hung live chickens on hooks above their heads as part of Simmons' poultry processing operation. The birds routinely defected in the mouths and on the faces of those employees.

13.     During my time at CAAIR, I never received a paycheck from Simmons or CAAIR, even though I worked approximately 45 hours per week.

14.    As far as I knew, the only way to receive any money from CAAIR is to complete the yearlong program. Even then, CAAIR only gives you $1,000.00.

15.    I had no choice but to work while at CAAIR. During my time at CAAIR, I learned that if a resident was too sick to work, or was injured and could not work, they would be kicked out of the program and sent to jail. At CAAIR, not working meant you were not participating in the program and you would be kicked out. Myself and other residents at CAAIR were frequently told that if we did not work in our assigned jobs we would be removed from the program and incarcerated. Because of these threats, myself and other residents worked through sickness and injury to avoid being sent to jail.

16.    Although I worked for CAAIR and Simmons for around six months, neither business paid the child support I owed. Because I wanted to pay for child support, my lawyer helped me transfer from CAAIR to DARP.

17.    I entered the DARP program for two months in around 2016 or 2017.

18.    While in DARP, I lived in the dormitories located in Decatur, Arkansas with dozens of other men. There were two dorms, and I believe each dorm housed around 60 people.

19.    DARP required me to work at Hendren Plastics near Decatur, Arkansas. At Hendren, I worked on a production line filling large containers with plastic beads that were then cooked to melt the plastic and make floatation platforms. These platforms are the types used to keep docks or boat slips afloat.

20.    At Hendren, I worked 12-hour shifts, 5 days of week. On average, I worked around 60 hours per week.

21.     The work at Hendren was hard work but did not require any special skill or training. The environment was very caustic working around melted plastics, and there was a high rate of injury among the employees. Because of the work environment, the turnover rate during my time was high.

22.     Like during my time at CAAIR, myself and other residents at DARP were frequently told that if we did not work in our assigned jobs we would be removed from the program and incarcerated. Because of these threats, myself and other residents worked through sickness and injury to avoid being sent to jail.

23.     Likewise, while at DARP, I never received a paycheck from Hendren or from DARP, even though I worked approximately 60 hours per week.

24.     At DARP, the only way you received money was if you completed periods of the program without rule infractions. For example, if you successfully completed six months without rule violations, you were supposed to receive $500. If you completed a year without rule violations, you were supposed to receive $1,000.

25.     I left DARP after approximately 2 months.

26.     At CAAIR and DARP, residents have very limited access to phone calls and the internet. CAAIR's and DARP's rules expressly prohibited us from having cellphones or other electronic devices on the premises or at work. Any phone calls we made, including calls to family or our lawyers, must be done in the presence of a CAAIR or DARP staff member. In fact, the be able to leave CAAIR and be transferred to DARP, I had to sneak a cellphone in to call my lawyer. Because of CAAIR and DARP's restrictions, I did not have a way to make complaints about the conditions while I was there.

27.    I filed this lawsuit on behalf of myself and other residents of CAAIR and DARP who were forced to work without pay.

28.    I believe I can fairly and adequately represent the interest of the other CAAIR and DARP residents who had to work without pay.

29.    I am very interested in the outcome of this case because I believe I am entitled to be paid for the time I spent working without pay while a resident of CAAIR and DARP.

30.    I am familiar with the policies being challenged in this case.

31.    I am willing to participate in the litigation of this case as recommended by my attorneys.

32.    I am able to assist my attorneys in making decisions about the conduct of this litigation.

33.    I am not aware of any conflicts that I have with other class members that would prevent me from adequately representing their interests, and I have not colluded with any other class members.

34.    I am happy to provide other information regarding my adequacy to represent the class that is requested by the Court.

Dated this 20 day of October, 2017.


Mark Fotchtman

STATE OF ARKANSAS    )
                     )
COUNTY OF PULASKI    )

    SUBSCRIBED AND SWORN TO before me, a Notary Public, on this 20th day of October, 2017.

**Notary Public**

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-25  12:38:22
04CV-17-2190
C19WD04 : 5 Pages

## AFFIDAVIT

1.      My name is Shane O'Neal, and I am over 18 years old and solemnly swear that the following facts and information and true and correct to the best of my knowledge and belief:

2.      I am a citizen of Benton County, Arkansas.

3.      Around December 2014, I was ordered by the Benton County Drug Court to enter a drug treatment facility in lieu of being incarcerated. I had heard from a friend about a treatment program called CAAIR. The facility had to inform the Drug Court if I left or was removed in from the facility involuntarily, and if so, I would be sent to jail. At that time, I agreed to enter the CAAIR program because I thought I would receive treatment and help for my drug problem.

4.      While in the court-ordered program, I lived on the premises near Jay, Oklahoma.

5.      I thought that, while at CAAIR, I would be able to work, save money, receive treatment for addiction, and get my life back on track.

6.      I quickly learned that CAAIR was not really a treatment facility. During my time there, CAAIR did not have any licensed drug and alcohol counselors to help the hundreds of individuals who were at the facility.

Page **1** of **5**

EXHIBIT

**B**

7.      CAAIR assigned me to work for Simmons Food at a pet food production facility near Decatur, Arkansas. CAAIR drove me to the farm 4 days a week. I normally worked 3 12-hour shifts, and 1 6-hour shift for a total of around 42 hours per week.

8.      I normally worked C shift. On my "days off" I was oftentimes required to go to Tulsa, Oklahoma to work at the Food Bank. Because CAAIR sent people to work at the Food Bank, it received a discount on food purchases.

9.      My jobs at the pet food plant was physically demanding but did not require any special skill or training. For the first 6 months, I worked stacking bags of dry pet food on pallets. Constantly lifting heavy bags of pet food for 12 hours each shift took a heavy toll on my body. For weeks I could not use my hands because they hurt too much. Instead, I had to lift the bags with my forearms to try and do the job.

10.     After 6 months as a Stacker, I began working as a line operator. As a line operator, I set up the bags that would be filled with dry pet food and worked the machinery that filled and sealed the bags of pet food. When at Simmons, I was part of the Packing Department. Nearly all of the employees in the Packing Department were residents of CAAIR.

11.     During my time at CAAIR, I never received a paycheck from Simmons or CAAIR, even though I worked approximately 42 hours per week.

12.     The only way you received money was if you completed periods of the program. For example, if you successfully completed six months, you were supposed to receive $500. If you completed 9 months, you were supposed to receive $900. If you

completed a year, you were supposed to receive $1,000. I graduated from CAAIR in around December 2015 and I received $1,000.

13.     I had no choice but to work while at CAAIR. During my time at CAAIR, I learned that if a resident was too sick to work, or was injured and could not work, they would be kicked out of the program and sent to jail. At CAAIR, not working meant you were not participating in the program and you would be kicked out. Myself and other residents at CAAIR were frequently told that if we did not work in our assigned jobs we would be removed from the program and incarcerated. Because of these threats, myself and other residents worked through sickness and injury to avoid being sent to jail.

14.     After graduating from CAAIR, I remained an employee of Simmons for several months. I was paid $16.40 per hour.

15.     At CAAIR, residents have very limited access to phone calls and the internet. CAAIR's rules expressly prohibited us from having cellphones or other electronic devices on the premises or at work. Any phone calls we made, including calls to family or our lawyers, must be done in the presence of a CAAIR staff member. Because of CAAIR's restrictions, I did not have a way to make complaints about the conditions while I was there.

16.     I filed this lawsuit on behalf of myself and other residents of CAAIR who were forced to work without pay.

17.     I believe I can fairly and adequately represent the interest of the other CAAIR residents who had to work without pay.

18.    I am very interested in the outcome of this case because I believe I am entitled to be paid for the time I spent working without pay while a resident of CAAIR.

19.    I am familiar with the policies being challenged in this case.

20.    I am willing to participate in the litigation of this case as recommended by my attorneys.

21.    I am able to assist my attorneys in making decisions about the conduct of this litigation.

22.    I am not aware of any conflicts that I have with other class members that would prevent me from adequately representing their interests, and I have not colluded with any other class members.

23.    I am happy to provide other information regarding my adequacy to represent the class that is requested by the Court.

Dated this 24 day of October, 2017.

_____
Shane O'Neal

STATE OF ARKANSAS    )
                     )
COUNTY OF PULASKI    )

    SUBSCRIBED AND SWORN TO before me, a Notary Public, on this 24th day of October, 2017.

_____
Notary Public

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-25 12:38:22
04CV-17-2190
C19WD04 : 1 Page







**12-STEP MEETINGS**        **COUNSELING**        **COST**

MORE                MORE                MORE

## ABOUT US

CAAIR, (Christian Alcoholics and Addicts in Recovery) is a faith based, long term drug and alcohol recovery program. The CAAIR program has a vision and growth strategy for men who want a second chance in life to become free from drugs and alcohol. The CAAIR program is based on the philosophy of change to achieve a clean and sober life for the clients. We request a minimum of (1) one year stay in our program. After the client successfully completes the requirements of the program, a certificate of completion and a monetary gift will be awarded.

---

**A MESSAGE FROM JANET**
**C.E.O. CAAIR INC.**



*CAAIR began as a simple concept; to give men with addiction issues a second chance in life. Who hasn't made some bad decisions in their lives? We believe that everyone deserves a second chance. CAAIR provides the environment for men to learn to make good decisions, to be a good family man, a good employee, and a good community member. The organization provides everything the men need, but they must bring the "want to", or in other words, the desire to change.*
*I tell people ALL the time that God has a plan for their lives. He has shown me over and over that if I will just get out of His way, He will take care of everything in His time – not Janet's time! We should never be amazed at what God will do for us when we simply believe and trust.*
*When the men bring a desire to change and then learn to trust that God will help them, then the miracle begins to happen! If you are sick and tired of being sick and tired, contact CAAIR for an interview, come ready to change, and then let the miracle begin!!!*

CAAIR ©

EXHIBIT

C

08-30-2007 10:17   DECATUR DARP FOUNDATION 4797553595

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-25 12:38:22
04CV-17-2190
C19WD04 : 1 Page

# D.A.R.P. Foundation
(Drug and Alcohol Recovery Program)

## MISSION STATEMENT

D.A.R.P. Foundation is a not-for-profit faith based alcohol and drug recovery program. Since 2001 we have extended the hand of recovery to hundreds of men and women seeking recovery from the ravages of alcoholism, drug addiction, and alcohol and drug abuse. We offer a long-term program that balances the recovery principles of the 12 steps, faith/spiritual principles, and the ethic of hard work. We offer the opportunity to seek recovery and we pledge to treat each participant with dignity and respect.



EXHIBIT

D

08-30-2007 1:53 PM Case 5:19-cv-05046-WD Document 59-35 Filed 10/12/11 Page 2 ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-25 12:38:22
04CV-17-2190
C19WD04 : 1 Page

The D.A.R.P. Foundation
14100 N. 477 Road
Tahlequah, OK 74464
(918) 456-9100

Custer County Drug Court
ATTN: Mr. Ken Theissen
603 B. Street Fl 2
Arapaho, OK 73620

     RE:   Introduction to The DARP Foundation

Mr. Theissen:

I want to begin by thanking you for taking the time to discuss our recovery program by telephone with me this morning. One thing that I always admired about Judge Markham was how dedicated he was to his constituents in Custer County and I am convinced after visiting with you today that you share that dedication.

Please find 9 pages of information forthcoming with this fax in reference to our drug and alcohol recovery program in Oklahoma and Arkansas.

As I mentioned during our telephone conversation this morning, we have a 50 bed men's facility in Tahlequah, Oklahoma, a 28 bed women's facility in Tahlequah, Oklahoma, and 2 new 60 bed men's facilities in Decatur, Arkansas.

We welcome a visit from the Custer County Drug Court Treatment Team and hope that your team will consider contacting Mr. Mack Bentley, Human Resource Director, by cell phone at (918) 770-3647 if you have any clients that you wish to consider placing in our recovery program.

Sincerely,

JIMMY W. JONES, SR.
Assistant Director
BS, Family Studies and Gerontology

EXHIBIT

E

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-25 12:38:22
04CV-17-2190
C19WD04 : 1 Page

# D.A.R.P. Foundation
(Drug and Alcohol Recovery Program)

## INTRODUCTION TO THE D.A.R.P. FOUNDATION

The D.A.R.P. Foundation was founded in 2001 with the vision of helping the suffering alcoholic/addict who had a desire and willingness to try and turn their life around.

The D.A.R.P. Foundation has come a long way since it first opened its doors and many of those first participants have moved on to a normal, happy, clean and sober life. The D.A.R.P. Foundation has been fortunate to show continued growth and opportunities for a larger number of men and women.

The D.A.R.P. Foundation is a not-for profit, 501c(3), self-supporting organization. We do not receive any state or federal funding and our revenues are generated solely through the various employment contracts the D.A.R.P. has entered into to provide employment for our participants.

The primary source of referrals is through the criminal justice system; however, if an individual expresses a sincere desire for recovery the D.A.R.P. will accept voluntary admissions. The length of stay is a minimum of six (6) months; however, the stay can be lengthened at the discretion of the court or the individual participant. The hard work ethic of the program will exclude some with physical and/or mental disabilities. The referring authority will be advised of participant's admission and will be notified of participant's discharge. Upon successful completion of the program participants do receive a monetary stipend based upon the length of their stay at the D.A.R.P. If eligible, participants also receive assistance from the D.A.R.P. in obtaining full-time employment.

If you are interested in finding out more information about the D.A.R.P. Foundation, or if you would like to make a referral to the D.A.R.P. Foundation please feel free to contact us about the opportunities we provide.

Sincerely,

Raymond H. Jones
Executive Director
D.A.R.P. Foundation



EXHIBIT
F

08-30-2007 10:17   DECATUR DARP FOUNDATION 4797563535   ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-25 12:38:22
04CV-17-2190
C19WD04 : 1 Page

Subject: Fees and Costs

Policy: It is the D.A.R.P. Foundation's policy to never charge participant's any fees or costs; however, participants are expected to work at full-time jobs knowing that they will not receive any immediate financial compensation for their work. Participants will understand that the money is going to the D.A.R.P. Foundation to pay the operating expense of day-to-day operations. Participants are advised that if they remain in compliance with all program rules and requirements they will receive a monetary stipend based upon their length of stay.

Procedure:

A.  Start Date begins with first clean urinalysis and breathalyzer scan;

B.  Participants who successfully complete six (6) months in the program with no violations receive a monetary stipend of $500.00;

C.  Participants who successfully complete One (1) year in the program with no violations receive a monetary stipend of $1,000.00;

D.. Participants will be provided healthy meals at no cost;

E.  While in the program the D.A.R.P. Foundation will provide participant's with the basic necessities of hygiene supplies to include toothpaste, shampoo, toothbrushes, razors, etc. at no cost; and,

F.  We hope that the most treasured item you leave with is **Sobriety!**

---

**EXHIBIT**

**G**

tabbies

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Dec-25 12:38:22
04CV-17-2190
C06D06 : 6 Pages

**Form 990**

OMB No 1545-0047

**2013**

## Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)

▶ Do not enter Social Security numbers on this form as it may be made public By law, the IRS generally cannot redact the information on the form

Department of the Treasury
Internal Revenue Service

▶ Information about Form 990 and its instructions is at www.IRS.gov/form990

**Open to Public Inspection**

**A** For the 2013 calendar year, or tax year beginning 07-01-2013 , 2013, and ending 06-30-2014

| B Check if applicable | C Name of organization CHRISTIAN ALCOHOLICS & ADDICTS IN RECOVERY INC | D Employer identification number |
|---|---|---|
| ☐ Address change | | 20-8810021 |
| ☐ Name change | Doing Business As | |
| ☐ Initial return | Number and street (or P O box if mail is not delivered to street address) Room/suite 40152 S 700 ROAD | E Telephone number |
| ☐ Terminated | | (918) 529-8608 |
| ☐ Amended return | City or town, state or province, country, and ZIP or foreign postal code JAY, OK 74346 | |
| ☐ Application pending | | G Gross receipts $ 2,010,842 |

| F Name and address of principal officer JANET WILKERSON 40152 S 700 ROAD JAY,OK 74346 | H(a) Is this a group return for subordinates? ☐ Yes ☑ No |
|---|---|
| | H(b) Are all subordinates included? ☐ Yes ☐ No If "No," attach a list (see instructions) |
| **I** Tax-exempt status ☑ 501(c)(3) ☐ 501(c) ( ) ◄ (insert no ) ☐ 4947(a)(1) or ☐ 527 | |
| **J** Website: ▶ WWW CAAIR ORG | H(c) Group exemption number ▶ |

| K Form of organization ☑ Corporation ☐ Trust ☐ Association ☐ Other ▶ | L Year of formation 2007 | M State of legal domicile OK |
|---|---|---|

### Part I Summary

**Activities & Governance**

1 Briefly describe the organization's mission or most significant activities

CAAIR, INC IS A FAITH BASED, LONG TERM DRUG AND ALCOHOL RECOVERY PROGRAM IT HAS A VISION AND GROWTH STRATEGY FOR MEN WHO WANT A SECOND CHANCE IN LIFE TO BECOME DRUG OR ALCOHOL-FREE THIS IS ACCOMPLISHED BY ASSISTING DRUG ADDICTS AND ALCOHOLICS IN RECOVERING AND BECOMING PRODUCTIVE MEMBERS OF SOCIETY THROUGH PROVIDING HOUSING, COUNSELING, AND JOB TRAINING

2 Check this box ▶☐ if the organization discontinued its operations or disposed of more than 25% of its net assets

| | | | |
|---|---|---|---|
| 3 Number of voting members of the governing body (Part VI, line 1a) . . . . . . . . | **3** | 6 |
| 4 Number of independent voting members of the governing body (Part VI, line 1b) . . . . . | **4** | 4 |
| 5 Total number of individuals employed in calendar year 2013 (Part V, line 2a) . . . . . | **5** | 14 |
| 6 Total number of volunteers (estimate if necessary) . . . . . . . . . . . . | **6** | |
| 7a Total unrelated business revenue from Part VIII, column (C), line 12 . . . . . . . | **7a** | 0 |
| b Net unrelated business taxable income from Form 990-T, line 34 . . . . . . . . | **7b** | |

**Revenue**

| | | Prior Year | Current Year |
|---|---|---|---|
| 8 | Contributions and grants (Part VIII, line 1h) . . . . . . . . | 57,149 | 166,245 |
| 9 | Program service revenue (Part VIII, line 2g) . . . . . . . . | 1,380,428 | 1,835,565 |
| 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d ) . . . . | 3 | 1,713 |
| 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | -146 | 0 |
| 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) . . . . . . . . . . . . . . . . . . . . | 1,437,434 | 2,003,523 |

**Expenses**

| | | | |
|---|---|---|---|
| 13 | Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) . . . | | 0 |
| 14 | Benefits paid to or for members (Part IX, column (A), line 4 ) . . . . | | 0 |
| 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 532,270 | 536,166 |
| 16a | Professional fundraising fees (Part IX, column (A), line 11e) . . . . . | | 0 |
| b | Total fundraising expenses (Part IX, column (D), line 25) ▶0 | | |
| 17 | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) . . . . . | 871,338 | 1,103,580 |
| 18 | Total expenses Add lines 13–17 (must equal Part IX, column (A), line 25) | 1,403,608 | 1,639,746 |
| 19 | Revenue less expenses Subtract line 18 from line 12 . . . . . . . | 33,826 | 363,777 |

**Net Assets or Fund Balances**

| | | Beginning of Current Year | End of Year |
|---|---|---|---|
| 20 | Total assets (Part X, line 16) . . . . . . . . . . . . . | 104,767 | 437,425 |
| 21 | Total liabilities (Part X, line 26) . . . . . . . . . . . . | 368,276 | 337,157 |
| 22 | Net assets or fund balances Subtract line 21 from line 20 . . . . . | -263,509 | 100,268 |

### Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge

| Sign Here | ****** Signature of officer | 2015-02-10 Date |
|---|---|---|
| | JANET WILKERSON CEO Type or print name and title | |

| Paid Preparer Use Only | Print/Type preparer's name MICHAEL E HOUSTON CPA | Preparer's signature | Date 2015-02-10 | Check ☐ if self-employed | PTIN P00496350 |
|---|---|---|---|---|---|
| | Firm's name ▶ HOUSTON & COMPANY PA | | | Firm's EIN ▶ 71-0836424 | |
| | Firm's address ▶ PO BOX 513 - 117 N BROADWAY ST SILOAM SPRINGS, AR 727610513 | | | Phone no (479) 524-6119 | |

May the IRS discuss this return with the preparer shown above? (see instructions) . . . . . . . . . . ☑ Yes ☐ No

**EXHIBIT H**

For Paperwork Reduction Act Notice, see the separate instructions.    Cat No 11282Y    Form **990** (2013)

Form 990 (2013)

Page **2**

Case 5:17-cv-05228-TLB    Document 1-1    Filed 11/06/17    Page 78 of 227 PageID #: 94

| **Part III** | **Statement of Program Service Accomplishments** |

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . . ✔

**1**   Briefly describe the organization's mission

CAAIR, INC IS A FAITH BASED, LONG TERM DRUG AND ALCOHOL RECOVERY PROGRAM IT HAS A VISION AND GROWTH STRATEGY FOR MEN WHO WANT A SECOND CHANCE IN LIFE TO BECOME DRUG OR ALCOHOL-FREE THIS IS ACCOMPLISHED BY ASSISTING DRUG ADDICTS AND ALCOHOLICS IN RECOVERING AND BECOMING PRODUCTIVE MEMBERS OF SOCIETY THROUGH PROVIDING HOUSING, COUNSELING, AND JOB TRAINING

**2**   Did the organization undertake any significant program services during the year which were not listed on
the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ✔ **No**
If "Yes," describe these new services on Schedule O

**3**   Did the organization cease conducting, or make significant changes in how it conducts, any program
services? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ✔ **No**
If "Yes," describe these changes on Schedule O

**4**   Describe the organization's program service accomplishments for each of its three largest program services, as measured by
expenses Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others,
the total expenses, and revenue, if any, for each program service reported

**4a**  (Code          ) (Expenses $       1,386,796    including grants of $             ) (Revenue $        1,837,278 )
ASSIST DRUG ADDICTS AND ALCOHOLICS IN RECOVERING AND BECOMING PRODUCTIVE MEMBERS OF SOCIETY THROUGH PROVIDING HOUSING, COUNSELING, AND JOB TRAINING DURING THE COURSE OF THIS YEAR CAAIR WORKED WITH 263 DIFFERENT MEN THERE WERE 70 MEN WHO SUCCESSFULLY COMPLETED THE PROGRAM DURING THE YEAR

**4b**  (Code          ) (Expenses $              including grants of $             ) (Revenue $             )

**4c**  (Code          ) (Expenses $              including grants of $             ) (Revenue $             )

**4d**  Other program services (Describe in Schedule O )
(Expenses $              including grants of $             ) (Revenue $             )

**4e**  **Total program service expenses ▶**        1,386,796

| Part IV | Checklist of Required Schedules |

|  |  | Yes | No |
|---|---|---|---|
| **1** | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* . . . . . . . . **1** | Yes |  |
| **2** | Is the organization required to complete *Schedule B, Schedule of Contributors* (see instructions)? . . . **2** | Yes |  |
| **3** | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* . . . . . . . . . . . **3** |  | No |
| **4** | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* . . . . . . . **4** |  | No |
| **5** | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5** |  | No |
| **6** | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* . . . . . . . . . . . . . . . . . . . . . **6** |  | No |
| **7** | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* . . **7** |  | No |
| **8** | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* . . . . . . . . . . . . . . . . . . . . **8** |  | No |
| **9** | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability, serve as a custodian for amounts not listed in Part X, or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* . . . . . . . . . . . **9** |  | No |
| **10** | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi-endowments? *If "Yes," complete Schedule D, Part V* . . . . . **10** |  | No |
| **11** | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable |  |  |
| **a** | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI* . . . . . . . . . . . . . . . . . . . . . . **11a** | Yes |  |
| **b** | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* . . . . . . . **11b** |  | No |
| **c** | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* . . . . . . . **11c** |  | No |
| **d** | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* . . . . . . . . . . . **11d** |  | No |
| **e** | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* **11e** | Yes |  |
| **f** | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* . . . . . . . . . . . . . . . . . . . . . . . . . **11f** |  |  |
| **12a** | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* . . . . . . . . . . . . . . . . . **12a** |  | No |
| **b** | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* **12b** |  | No |
| **13** | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* . . . . **13** |  | No |
| **14a** | Did the organization maintain an office, employees, or agents outside of the United States? . . . . . **14a** |  | No |
| **b** | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* . . . . . . . . . . **14b** |  | No |
| **15** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* . . . . . . . . . **15** |  | No |
| **16** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* . . . . **16** |  | No |
| **17** | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I (see instructions)* . . . . . **17** |  | No |
| **18** | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* . . . . . . . . . . . . . **18** |  | No |
| **19** | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* . . . . . . . . . . . . . . . . . . . . **19** |  | No |
| **20a** | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* . . . . . **20a** |  | No |
| **b** | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? **20b** |  |  |

Case 5:17-cv-05220-TLB    Document 1-1    Filed 11/06/17    Page 80 of 227 PageID #: 96

**Part IV    Checklist of Required Schedules** *(continued)*

| | | | | |
|---|---|---|---|---|
| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* . . . | **21** | | No |
| 22 | Did the organization report more than $5,000 of grants or other assistance to individuals in the United States on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* . . . . | **22** | | No |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* . . . . . | **23** | | No |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* . . . . . . . | **24a** | | No |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? . . . | **24b** | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? . . . . . . . | **24c** | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? . . . | **24d** | | |
| 25a | **Section 501(c)(3) and 501(c)(4) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* . . . . . . . | **25a** | | No |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* . . . . . . . | **25b** | | No |
| 26 | Did the organization report any amount on Part X, line 5, 6, or 22 for receivables from or payables to any current or former officers, directors, trustees, key employees, highest compensated employees, or disqualified persons? *If so, complete Schedule L, Part II* . . . . . . | **26** | Yes | |
| 27 | Did the organization provide a grant or other assistance to an officer, director, trustee, key employee, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part III* . . . . . . . | **27** | | No |
| 28 | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions) | | | |
| a | A current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* . . . . . . . | **28a** | Yes | |
| b | A family member of a current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* . . . . . . . | **28b** | | No |
| c | An entity of which a current or former officer, director, trustee, or key employee (or a family member thereof) was an officer, director, trustee, or direct or indirect owner? *If "Yes," complete Schedule L, Part IV* . . . | **28c** | Yes | |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* . . | **29** | | No |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* . . . . . . . | **30** | | No |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* . . . . . . . | **31** | | No |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* . . . . . . . | **32** | | No |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301 7701-2 and 301 7701-3? *If "Yes," complete Schedule R, Part I* . . . . . . . | **33** | | No |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* . . . . . . . | **34** | | No |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | **35a** | | No |
| b | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* . . . | **35b** | | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* . . . . . . . | **36** | | No |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | **37** | | No |
| 38 | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O . . . . . . . | **38** | Yes | |

| **Part V** | **Statements Regarding Other IRS Filings and Tax Compliance** |
|---|---|

Check if Schedule O contains a response or note to any line in this Part V . . . . . . . . . . . . . □

| | | | | Yes | No |
|---|---|---|---|---|---|
| **1a** | Enter the number reported in Box 3 of Form 1096 Enter -0- if not applicable . . | **1a** | 7 | | |
| **b** | Enter the number of Forms W-2G included in line 1a Enter -0- if not applicable | **1b** | 0 | | |
| **c** | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? . . . . . . . . . . . . . . | | | **1c** | Yes | |
| **2a** | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return . . . . . . . . . . . . . . . | **2a** | 14 | | | |
| **b** | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? **Note.** If the sum of lines 1a and 2a is greater than 250, you may be required to e-file (see instructions) | | | **2b** | Yes | |
| **3a** | Did the organization have unrelated business gross income of $1,000 or more during the year? . . . | | | **3a** | | No |
| **b** | If "Yes," has it filed a Form 990-T for this year? *If "No" to line 3b, provide an explanation in Schedule O* . . . | | | **3b** | | |
| **4a** | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? . . . . . . . . . . . . . . . . | | | **4a** | | No |
| **b** | If "Yes," enter the name of the foreign country ▶ _____ See instructions for filing requirements for Form TD F 90-22 1, Report of Foreign Bank and Financial Accounts | | | | | |
| **5a** | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? . . | | | **5a** | | No |
| **b** | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | | **5b** | | No |
| **c** | If "Yes," to line 5a or 5b, did the organization file Form 8886-T? . . . . . . . . . | | | **5c** | | |
| **6a** | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? . . . | | | **6a** | | No |
| **b** | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? . . . . . . . . . . . . . . . . | | | **6b** | | |
| **7** | **Organizations that may receive deductible contributions under section 170(c).** | | | | | |
| **a** | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? . . . . . . . . . . . . . . . | | | **7a** | | |
| **b** | If "Yes," did the organization notify the donor of the value of the goods or services provided? . . . . . | | | **7b** | | |
| **c** | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? . . . . . . . . . . . . . . . . | | | **7c** | | |
| **d** | If "Yes," indicate the number of Forms 8282 filed during the year . . . | **7d** | | | | |
| **e** | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? . . . . . . . . . . . . . . . . . | | | **7e** | | |
| **f** | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? . . | | | **7f** | | |
| **g** | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? . . . . . . . . . . . . . . . . . | | | **7g** | | |
| **h** | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? . . . . . . . . . . . . . . . . | | | **7h** | | |
| **8** | **Sponsoring organizations maintaining donor advised funds and section 509(a)(3) supporting organizations.** Did the supporting organization, or a donor advised fund maintained by a sponsoring organization, have excess business holdings at any time during the year? . . . . . . . . . . . . . | | | **8** | | |
| **9** | **Sponsoring organizations maintaining donor advised funds.** | | | | | |
| **a** | Did the organization make any taxable distributions under section 4966? . . . . . . . . . | | | **9a** | | |
| **b** | Did the organization make a distribution to a donor, donor advisor, or related person? . . . . . . | | | **9b** | | |
| **10** | **Section 501(c)(7) organizations.** Enter | | | | | |
| **a** | Initiation fees and capital contributions included on Part VIII, line 12 . . . | **10a** | | | | |
| **b** | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | **10b** | | | | |
| **11** | **Section 501(c)(12) organizations.** Enter | | | | | |
| **a** | Gross income from members or shareholders . . . . . . . . . | **11a** | | | | |
| **b** | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them ) . . . . . . . . | **11b** | | | | |
| **12a** | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | | **12a** | | |
| **b** | If "Yes," enter the amount of tax-exempt interest received or accrued during the year . . . . . | **12b** | | | | |
| **13** | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | | |
| **a** | Is the organization licensed to issue qualified health plans in more than one state? **Note.** See the instructions for additional information the organization must report on Schedule O | | | **13a** | | |
| **b** | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans . . . . | **13b** | | | | |
| **c** | Enter the amount of reserves on hand . . . . . . . . . . | **13c** | | | | |
| **14a** | Did the organization receive any payments for indoor tanning services during the tax year? . . . . . | | | **14a** | | No |
| **b** | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation in Schedule O* . . | | | **14b** | | |

Form 990 (2013)

Page **6**

**Part VI** **Governance, Management, and Disclosure** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*

Check if Schedule O contains a response or note to any line in this Part VI . . . . . . . . . . . . ☑

## Section A. Governing Body and Management

|  |  | Yes | No |
|---|---|---|---|
| **1a** Enter the number of voting members of the governing body at the end of the tax year . . . . . . . . . . . . **1a** 6 |  |  |  |
| If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O |  |  |  |
| **b** Enter the number of voting members included in line 1a, above, who are independent . . . . . . . . . . . **1b** 4 |  |  |  |
| **2** Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? . . . . . . . . . . . . . . . | **2** | Yes |  |
| **3** Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? . | **3** |  | No |
| **4** Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4** |  | No |
| **5** Did the organization become aware during the year of a significant diversion of the organization's assets? . | **5** |  | No |
| **6** Did the organization have members or stockholders? . . . . . . . . . . . . . . | **6** |  | No |
| **7a** Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? . . . . . . . . . . . . . . . . . . | **7a** |  | No |
| **b** Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? . . . . . . . . . . . . . . . . . | **7b** |  | No |
| **8** Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following |  |  |  |
| **a** The governing body? . . . . . . . . . . . . . . . . . . . . . . . | **8a** | Yes |  |
| **b** Each committee with authority to act on behalf of the governing body? . . . . . . . . . . | **8b** | Yes |  |
| **9** Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? If "Yes," provide the names and addresses in Schedule O . . . . . . . | **9** |  | No |

## Section B. Policies *(This Section B requests information about policies not required by the Internal Revenue Code.)*

|  |  | Yes | No |
|---|---|---|---|
| **10a** Did the organization have local chapters, branches, or affiliates? . . . . . . . . . . . | **10a** |  | No |
| **b** If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | **10b** |  |  |
| **11a** Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? . . . . . . . . . . . . . . . . . . . . . . . . . | **11a** | Yes |  |
| **b** Describe in Schedule O the process, if any, used by the organization to review this Form 990 |  |  |  |
| **12a** Did the organization have a written conflict of interest policy? If "No," go to line 13 . . . . . . . . | **12a** | Yes |  |
| **b** Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? . . . . . . . . . . . . . . . . . . . . . . . | **12b** | Yes |  |
| **c** Did the organization regularly and consistently monitor and enforce compliance with the policy? If "Yes," describe in Schedule O how this was done . . . . . . . . . . . . . . . . . . . | **12c** | Yes |  |
| **13** Did the organization have a written whistleblower policy? . . . . . . . . . . . . . | **13** |  | No |
| **14** Did the organization have a written document retention and destruction policy? . . . . . . . . | **14** |  | No |
| **15** Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? |  |  |  |
| **a** The organization's CEO, Executive Director, or top management official . . . . . . . . . . | **15a** |  | No |
| **b** Other officers or key employees of the organization . . . . . . . . . . . . . . | **15b** |  | No |
| If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions) |  |  |  |
| **16a** Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? . . . . . . . . . . . . . . . . . . . . | **16a** |  | No |
| **b** If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? . . . . . . . . . . . . | **16b** |  |  |

## Section C. Disclosure

**17** List the States with which a copy of this Form 990 is required to be filed►OK

**18** Section 6104 requires an organization to make its Form 1023 (or 1024 if applicable), 990, and 990-T (501(c) (3)s only) available for public inspection Indicate how you made these available Check all that apply
☐ Own website   ☐ Another's website   ☑ Upon request   ☐ Other (explain in Schedule O )

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year

**20** State the name, physical address, and telephone number of the person who possesses the books and records of the organization
►OLGA L DUNNAM  40152 S 700 ROAD
JAY, OK  74346  (918) 529-8608

Form **990** (2013)

Case 5:17-cv-05229-TLB    Document 1-1    Filed 11/06/17    Page 83 of 227 PageID #: 99

**Part VII**  **Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII  .  .  .  .  .  .  .  .  .  .  .  .  .  . ⌐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed  Report compensation for the calendar year ending with or within the organization's tax year

◆ List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation  Enter -0- in columns (D), (E), and (F) if no compensation was paid

◆ List all of the organization's **current** key employees, if any  See instructions for definition of "key employee "

◆ List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations

◆ List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations

◆ List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations

List persons in the following order  individual trustees or directors, institutional trustees, officers, key employees, highest compensated employees, and former such persons

⌐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) OLGA L DUNNAM<br>DIRECTOR & V | 45 00 | X | | X | | | | 103,853 | 0 | 13,827 |
| (2) JANET WILKERSON<br>CHAIRMAN & C | 50 00 | X | | X | | | | 101,816 | 0 | 13,827 |
| (3) SCOTT MCDANIEL<br>DIRECTOR | 2 00 | X | | | | | | 0 | 0 | 0 |
| (4) GARY JECH<br>DIRECTOR | 2 00 | X | | | | | | 0 | 0 | 0 |
| (5) DR DOUG COX<br>DIRECTOR | 2 00 | X | | | | | | 0 | 0 | 0 |
| (6) BRENDA HAXEL<br>DIRECTOR | 2 00 | X | | | | | | 0 | 0 | 0 |
| (7) DONALD WILKERSON<br>VP OPERATION | 52 00 | | | | X | | | 55,577 | 0 | 12,718 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

**Part VII** Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)*

| (A)<br>Name and Title | (B)<br>Average hours per week (list any hours for related organizations below dotted line) | (C)<br>Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **1b** Sub-Total . . . . . . . . . . . . . . . . . ▶ | | | | | | | | | | |
| **c** Total from continuation sheets to Part VII, Section A . . . . . ▶ | | | | | | | | | | |
| **d** Total (add lines 1b and 1c) . . . . . . . . . . . ▶ | | | | | | | | 261,246 | | 40,372 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization▶2

| | | Yes | No |
|---|---|---|---|
| **3** | Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . **3** | | No |
| **4** | For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . . . . . **4** | | No |
| **5** | Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* . . . . . . . . **5** | | No |

### Section B. Independent Contractors

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization Report compensation for the calendar year ending with or within the organization's tax year

| (A)<br>Name and business address | (B)<br>Description of services | (C)<br>Compensation |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶

**Part VIII** Statement of Revenue

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . . . . ☐

| | | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512-514 |
|---|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | 1a | Federated campaigns . . | 1a | | | | |
| | b | Membership dues . . . | 1b | | | | |
| | c | Fundraising events . . . . | 1c | | | | |
| | d | Related organizations . . . | 1d | | | | |
| | e | Government grants (contributions) | 1e | | | | |
| | f | All other contributions, gifts, grants, and similar amounts not included above | 1f | 166,245 | | | |
| | g | Noncash contributions included in lines 1a-1f $ | | | | | |
| | h | **Total.** Add lines 1a-1f . . . . . . . . ▶ | | 166,245 | | | |
| **Program Service Revenue** | | | Business Code | | | | |
| | 2a | WORK PROGRAMS | 623220 | 1,835,565 | 1,835,565 | | |
| | b | | | | | | |
| | c | | | | | | |
| | d | | | | | | |
| | e | | | | | | |
| | f | All other program service revenue | | | | | |
| | g | **Total.** Add lines 2a–2f . . . . . . . . ▶ | | 1,835,565 | | | |
| **Other Revenue** | 3 | Investment income (including dividends, interest, and other similar amounts) . . . . . . . ▶ | | | | | |
| | 4 | Income from investment of tax-exempt bond proceeds . ▶ | | | | | |
| | 5 | Royalties . . . . . . . . . . . . ▶ | | | | | |
| | | | (i) Real | (ii) Personal | | | | |
| | 6a | Gross rents | | | | | | |
| | b | Less rental expenses | | | | | | |
| | c | Rental income or (loss) | | | | | | |
| | d | Net rental income or (loss) . . . . . . . ▶ | | | | | |
| | | | (i) Securities | (ii) Other | | | | |
| | 7a | Gross amount from sales of assets other than inventory | | 9,032 | | | | |
| | b | Less cost or other basis and sales expenses | | 7,319 | | | | |
| | c | Gain or (loss) | | 1,713 | | | | |
| | d | Net gain or (loss) . . . . . . . . . . ▶ | | 1,713 | 1,713 | | |
| | 8a | Gross income from fundraising events (not including $ _____ of contributions reported on line 1c) See Part IV, line 18 . . a | | | | | |
| | b | Less direct expenses . . . b | | | | | |
| | c | Net income or (loss) from fundraising events . . ▶ | | | | | |
| | 9a | Gross income from gaming activities See Part IV, line 19 . . . a | | | | | |
| | b | Less direct expenses . . . b | | | | | |
| | c | Net income or (loss) from gaming activities . . . ▶ | | | | | |
| | 10a | Gross sales of inventory, less returns and allowances . a | | | | | |
| | b | Less cost of goods sold . . b | | | | | |
| | c | Net income or (loss) from sales of inventory . . ▶ | | | | | |
| | | Miscellaneous Revenue | Business Code | | | | |
| | 11a | | | | | | |
| | b | | | | | | |
| | c | | | | | | |
| | d | All other revenue . . . . | | | | | |
| | e | **Total.** Add lines 11a–11d . . . . . ▶ | | | | | |
| | 12 | **Total revenue.** See Instructions . . . . . ▶ | | 2,003,523 | 1,837,278 | | |

| **Part IX** | **Statement of Functional Expenses** | | | |
|---|---|---|---|---|

Section 501(c)(3) and 501(c)(4) organizations must complete all columns  All other organizations must complete column (A)

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . ☐

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | | (A) Total expenses | (B) Program service expenses | (C) Management and general expenses | (D) Fundraising expenses |
|---|---|---|---|---|---|
| 1 | Grants and other assistance to governments and organizations in the United States  See Part IV, line 21 | | | | |
| 2 | Grants and other assistance to individuals in the United States  See Part IV, line 22 | | | | |
| 3 | Grants and other assistance to governments, organizations, and individuals outside the United States  See Part IV, lines 15 and 16 | | | | |
| 4 | Benefits paid to or for members | | | | |
| 5 | Compensation of current officers, directors, trustees, and key employees . . . . | 262,993 | 92,960 | 170,033 | |
| 6 | Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) . . . . . | | | | |
| 7 | Other salaries and wages | 188,796 | 188,796 | | |
| 8 | Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) . . . . | | | | |
| 9 | Other employee benefits . . . . . . . | 48,059 | 27,350 | 20,709 | |
| 10 | Payroll taxes . . . . . . . . . | 36,318 | 22,971 | 13,347 | |
| 11 | Fees for services (non-employees) | | | | |
| a | Management . . . . . . . | | | | |
| b | Legal . . . . . . . . . | 9,603 | | 9,603 | |
| c | Accounting . . . . . . . . . | 888 | | 888 | |
| d | Lobbying . . . . . . . . . . | | | | |
| e | Professional fundraising services  See Part IV, line 17 | | | | |
| f | Investment management fees . . . . . . | | | | |
| g | Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O ) . . . . . . . . | 113,689 | 107,689 | 6,000 | |
| 12 | Advertising and promotion . . . . | | | | |
| 13 | Office expenses . . . . . . . | 11,823 | | 11,823 | |
| 14 | Information technology . . . . . | | | | |
| 15 | Royalties . . | | | | |
| 16 | Occupancy . . . . . . . . | 336,149 | 328,342 | 7,807 | |
| 17 | Travel . . . . . . . . . | 1,281 | 1,281 | | |
| 18 | Payments of travel or entertainment expenses for any federal, state, or local public officials . . . . . . | | | | |
| 19 | Conferences, conventions, and meetings . . . . | | | | |
| 20 | Interest . . . . . . . . . | 7,626 | 7,626 | | |
| 21 | Payments to affiliates . . . . . . | | | | |
| 22 | Depreciation, depletion, and amortization . . . . . | 27,598 | 27,598 | | |
| 23 | Insurance . . . . . . . . . . | 95,328 | 95,328 | | |
| 24 | Other expenses  Itemize expenses not covered above (List miscellaneous expenses in line 24e  If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O ) | | | | |
| a | CLIENT SERVICES & SUPPLIE | 486,855 | 486,855 | | |
| b | CHARITABLE CONTRIBUTIONS | 12,675 | | 12,675 | |
| c | BUSINESS LIC & PERMITS | 65 | | 65 | |
| d | | | | | |
| e | All other expenses | | | | |
| 25 | **Total functional expenses.** Add lines 1 through 24e | 1,639,746 | 1,386,796 | 252,950 | 0 |
| 26 | **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation  Check here ▶ ☐ if following SOP 98-2 (ASC 958-720) | | | | |

| Part X | Balance Sheet | | | | | |
|---|---|---|---|---|---|---|

Check if Schedule O contains a response or note to any line in this Part X . . . . . . . . . . . . .

| | | | | **(A)** Beginning of year | | **(B)** End of year |
|---|---|---|---|---|---|---|
| | **1** | Cash–non-interest-bearing . . . . . . . . . . . | | 41,534 | **1** | 334,513 |
| | **2** | Savings and temporary cash investments . . . . . . . . | | | **2** | |
| | **3** | Pledges and grants receivable, net . . . . . . . . . . | | | **3** | |
| | **4** | Accounts receivable, net . . . . . . . . . . . | | | **4** | |
| | **5** | Loans and other receivables from current and former officers, directors, trustees, key employees, and highest compensated employees Complete Part II of Schedule L . . . . . . . . . . . . . | | | **5** | |
| | **6** | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), persons described in section 4958(c)(3)(B), and contributing employers and sponsoring organizations of section 501(c)(9) voluntary employees' beneficiary organizations (see instructions) Complete Part II of Schedule L | | | **6** | |
| | **7** | Notes and loans receivable, net . . . . . . . . . . | | | **7** | |
| | **8** | Inventories for sale or use . . . . . . . . . . . | | | **8** | |
| | **9** | Prepaid expenses and deferred charges . . . . . . . . | | | **9** | |
| | **10a** | Land, buildings, and equipment cost or other basis Complete Part VI of Schedule D | **10a** | 243,207 | | | |
| | **b** | Less accumulated depreciation . . . . . | **10b** | 140,295 | 63,233 | **10c** | 102,912 |
| | **11** | Investments—publicly traded securities . . . . . . . . | | | **11** | |
| | **12** | Investments—other securities See Part IV, line 11 . . . . . | | | **12** | |
| | **13** | Investments—program-related See Part IV, line 11 . . . . . | | | **13** | |
| | **14** | Intangible assets . . . . . . . . . . . . | | | **14** | |
| | **15** | Other assets See Part IV, line 11 . . . . . . . . . | | | **15** | |
| | **16** | **Total assets.** Add lines 1 through 15 (must equal line 34) . . . . . . . | | 104,767 | **16** | 437,425 |
| | **17** | Accounts payable and accrued expenses . . . . . . . . | | 3,380 | **17** | 1,820 |
| | **18** | Grants payable . . . . . . . . . . . . . | | | **18** | |
| | **19** | Deferred revenue . . . . . . . . . . . . . | | | **19** | |
| | **20** | Tax-exempt bond liabilities . . . . . . . . . . | | | **20** | |
| | **21** | Escrow or custodial account liability Complete Part IV of Schedule D . . | | | **21** | |
| | **22** | Loans and other payables to current and former officers, directors, trustees, key employees, highest compensated employees, and disqualified persons Complete Part II of Schedule L . . . . . . . . . | | 45,000 | **22** | 45,037 |
| | **23** | Secured mortgages and notes payable to unrelated third parties . . | | | **23** | |
| | **24** | Unsecured notes and loans payable to unrelated third parties . . . . | | | **24** | |
| | **25** | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17-24) Complete Part X of Schedule D . . . . . . . . . | | 319,896 | **25** | 290,300 |
| | **26** | **Total liabilities.** Add lines 17 through 25 . . . . . . . . . . | | 368,276 | **26** | 337,157 |
| | | Organizations that follow SFAS 117 (ASC 958), check here ▶ ☐ and complete lines 27 through 29, and lines 33 and 34. | | | | |
| | **27** | Unrestricted net assets . . . . . . . . . . . | | | **27** | |
| | **28** | Temporarily restricted net assets . . . . . . . . . . | | | **28** | |
| | **29** | Permanently restricted net assets . . . . . . . . . | | | **29** | |
| | | Organizations that do not follow SFAS 117 (ASC 958), check here ▶ ☑ and complete lines 30 through 34. | | | | |
| | **30** | Capital stock or trust principal, or current funds . . . . . . . | | | **30** | |
| | **31** | Paid-in or capital surplus, or land, building or equipment fund . . . . . | | | **31** | |
| | **32** | Retained earnings, endowment, accumulated income, or other funds | | -263,509 | **32** | 100,268 |
| | **33** | Total net assets or fund balances . . . . . . . . . | | -263,509 | **33** | 100,268 |
| | **34** | Total liabilities and net assets/fund balances . . . . . . . . | | 104,767 | **34** | 437,425 |

Assets (left margin, lines 1–16)
Liabilities (left margin, lines 17–26)
Net Assets or Fund Balances (left margin, lines 27–34)

Form 990 (2013)

Case 5:17-cv-05228-TLB   Document 1-1   Filed 11/06/17   Page 88 of 227 PageID #: 104

**Part XI**    **Reconciliation of Net Assets**

Check if Schedule O contains a response or note to any line in this Part XI   .   .   .   .   .   .   .   .   .   . ☐

| | | |
|---|---|---:|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) . . . . . . . . . . **1** | 2,003,523 |
| 2 | Total expenses (must equal Part IX, column (A), line 25) . . . . . . . . . . **2** | 1,639,746 |
| 3 | Revenue less expenses Subtract line 2 from line 1 . . . . . . . . . . . **3** | 363,777 |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 33, column (A)) . . **4** | -263,509 |
| 5 | Net unrealized gains (losses) on investments . . . . . . . . . . . . . **5** | |
| 6 | Donated services and use of facilities . . . . . . . . . . . . . . . **6** | |
| 7 | Investment expenses . . . . . . . . . . . . . . . . . . . **7** | |
| 8 | Prior period adjustments . . . . . . . . . . . . . . . . . . **8** | |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) . . . . . . . . **9** | |
| 10 | Net assets or fund balances at end of year Combine lines 3 through 9 (must equal Part X, line 33, column (B)) **10** | 100,268 |

**Part XII**    **Financial Statements and Reporting**

Check if Schedule O contains a response or note to any line in this Part XII   .   .   .   .   .   .   .   .   . ☐

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990    ☑ Cash   ☐ Accrual   ☐ Other _____ <br> If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O | | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? | **2a** | | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both <br> ☐ Separate basis    ☐ Consolidated basis    ☐ Both consolidated and separate basis | | | |
| **b** | Were the organization's financial statements audited by an independent accountant? | **2b** | | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both <br> ☐ Separate basis    ☐ Consolidated basis    ☐ Both consolidated and separate basis | | | |
| **c** | If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | **2c** | | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O | | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? | **3a** | | |
| **b** | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits | **3b** | | |

| SCHEDULE A | Public Charity Status and Public Support | OMB No 1545-0047 |
|---|---|---|
| **(Form 990 or 990EZ)** | Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust. | **2013** |
| Department of the Treasury Internal Revenue Service | ▶ **Attach to Form 990 or Form 990-EZ.** ▶ **See separate instructions.** ▶ **Information about Schedule A (Form 990 or 990-EZ) and its instructions is at** _www.irs.gov/form990._ | **Open to Public Inspection** |

| Name of the organization CHRISTIAN ALCOHOLICS & ADDICTS IN RECOVERY INC | Employer identification number 20-8810021 |
|---|---|

### Part I Reason for Public Charity Status (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is  (For lines 1 through 11, check only one box )

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E )

3 ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state _____

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II )

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☐ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II )

8 ☐ A community trust described in **section 170(b)(1)(A)(vi)** (Complete Part II )

9 ☑ An organization that normally receives  (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975  See **section 509(a)(2).** (Complete Part III )

10 ☐ An organization organized and operated exclusively to test for public safety  See **section 509(a)(4).**

11 ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in section 509(a)(1) or section 509(a)(2)  See **section 509(a)(3).** Check the box that describes the type of supporting organization and complete lines 11e through 11h
  **a** ☐ Type I  **b** ☐ Type II  **c** ☐ Type III - Functionally integrated  **d** ☐ Type III - Non-functionally integrated

**e** ☐ By checking this box, I certify that the organization is not controlled directly or indirectly by one or more disqualified persons other than foundation managers and other than one or more publicly supported organizations described in section 509(a)(1) or section 509(a)(2)

**f** If the organization received a written determination from the IRS that it is a Type I, Type II, or Type III supporting organization, check this box ☐

**g** Since August 17, 2006, has the organization accepted any gift or contribution from any of the following persons?

| | | Yes | No |
|---|---|---|---|
| **(i)** A person who directly or indirectly controls, either alone or together with persons described in (ii) and (iii) below, the governing body of the supported organization? | 11g(i) | | |
| **(ii)** A family member of a person described in (i) above? | 11g(ii) | | |
| **(iii)** A 35% controlled entity of a person described in (i) or (ii) above? | 11g(iii) | | |

**h** Provide the following information about the supported organization(s)

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1- 9 above or IRC section (see instructions)) | (iv) Is the organization in col (i) listed in your governing document? | | (v) Did you notify the organization in col (i) of your support? | | (vi) Is the organization in col (i) organized in the U S ? | | (vii) Amount of monetary support |
|---|---|---|---|---|---|---|---|---|---|
| | | | Yes | No | Yes | No | Yes | No | |
| | | | | | | | | | |
| | | | | | | | | | |
| **Total** | | | | | | | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.        Cat No  11285F        Schedule A (Form 990 or 990-EZ) 2013

Case 5:17-cv-05220-TLB    Document 1-1    Filed 11/06/17    Page 90 of 227 PageID #:
106

| **Part II** | **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)** |
|---|---|
| | (Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization fails to qualify under the tests listed below, please complete Part III.) |

## Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | **(a)** 2009 | **(b)** 2010 | **(c)** 2011 | **(d)** 2012 | **(e)** 2013 | **(f)** Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received (Do not include any "unusual grants ") | | | | | | |
| **2** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| **3** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **4** **Total.** Add lines 1 through 3 | | | | | | |
| **5** The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | |
| **6** **Public support.** Subtract line 5 from line 4 | | | | | | |

## Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | **(a)** 2009 | **(b)** 2010 | **(c)** 2011 | **(d)** 2012 | **(e)** 2013 | **(f)** Total |
|---|---|---|---|---|---|---|
| **7** Amounts from line 4 | | | | | | |
| **8** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | | | | | | |
| **9** Net income from unrelated business activities, whether or not the business is regularly carried on | | | | | | |
| **10** Other income Do not include gain or loss from the sale of capital assets (Explain in Part IV ) | | | | | | |
| **11** **Total support** (Add lines 7 through 10) | | | | | | |

| | | |
|---|---|---|
| **12** Gross receipts from related activities, etc (see instructions) | **12** | |

**13** **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a 501(c)(3) organization, check this box and **stop here** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶☐

## Section C. Computation of Public Support Percentage

| | | |
|---|---|---|
| **14** Public support percentage for 2013 (line 6, column (f) divided by line 11, column (f)) | **14** | |
| **15** Public support percentage for 2012 Schedule A, Part II, line 14 | **15** | |

**16a** **33 1/3% support test—2013.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization ▶☐

**b** **33 1/3% support test—2012.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization ▶☐

**17a** **10%-facts-and-circumstances test—2013.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part IV how the organization meets the "facts-and-circumstances" test The organization qualifies as a publicly supported organization ▶☐

**b** **10%-facts-and-circumstances test—2012.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part IV how the organization meets the "facts-and-circumstances" test The organization qualifies as a publicly supported organization ▶☐

**18** **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions ▶☐

| Part III | Support Schedule for Organizations Described in Section 509(a)(2) |
|---|---|

(Complete only if you checked the box on line 9 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

## Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2009 | (b) 2010 | (c) 2011 | (d) 2012 | (e) 2013 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received (Do not include any "unusual grants ") | 1,705 | 1,300 | 2,355 | 57,149 | 16,245 | 78,754 |
| 2 Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | 2,108,181 | 1,525,785 | 1,496,580 | 1,381,418 | 1,835,565 | 8,347,529 |
| 3 Gross receipts from activities that are not an unrelated trade or business under section 513 | | | | 2,016 | | 2,016 |
| 4 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| 5 The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 6 **Total.** Add lines 1 through 5 | 2,109,886 | 1,527,085 | 1,498,935 | 1,440,583 | 1,851,810 | 8,428,299 |
| 7a Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | 30,680 | | 30,680 |
| b Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year | | | | | | |
| c Add lines 7a and 7b | | | | 30,680 | | 30,680 |
| 8 **Public support** (Subtract line 7c from line 6 ) | | | | | | 8,397,619 |

## Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2009 | (b) 2010 | (c) 2011 | (d) 2012 | (e) 2013 | (f) Total |
|---|---|---|---|---|---|---|
| 9 Amounts from line 6 | 2,109,886 | 1,527,085 | 1,498,935 | 1,440,583 | 1,851,810 | 8,428,299 |
| 10a Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | 618 | 628 | 191 | 3 | | 1,440 |
| b Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975 | | | | | | |
| c Add lines 10a and 10b | 618 | 628 | 191 | 3 | | 1,440 |
| 11 Net income from unrelated business activities not included in line 10b, whether or not the business is regularly carried on | | | | | | |
| 12 Other income Do not include gain or loss from the sale of capital assets (Explain in Part IV ) | | | | | 150,000 | 150,000 |
| 13 **Total support.** (Add lines 9, 10c, 11, and 12 ) | 2,110,504 | 1,527,713 | 1,499,126 | 1,440,586 | 2,001,810 | 8,579,739 |

14 **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a 501(c)(3) organization, check this box and **stop here** ▶ ☐

## Section C. Computation of Public Support Percentage

| 15 Public support percentage for 2013 (line 8, column (f) divided by line 13, column (f)) | **15** | 97 880 % |
|---|---|---|
| 16 Public support percentage from 2012 Schedule A, Part III, line 15 | **16** | 99 560 % |

## Section D. Computation of Investment Income Percentage

| 17 Investment income percentage for **2013** (line 10c, column (f) divided by line 13, column (f)) | **17** | 0 % |
|---|---|---|
| 18 Investment income percentage from **2012** Schedule A, Part III, line 17 | **18** | |

19a **33 1/3% support tests—2013.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization ▶ ☑

b **33 1/3% support tests—2012.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization ▶ ☐

20 **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions ▶ ☐

Case 5:17-cv-05228-TLB    Document 1-1    Filed 11/06/17    Page 92 of 227 PageID #: 108

| Part IV | Supplemental Information. Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; and Part III, line 12. Also complete this part for any additional information. (See instructions). |
|---|---|

| Facts And Circumstances Test | |
|---|---|
| **Return Reference** | **Explanation** |
| SUPPORTING SCHEDULE | TO BE USED ON BUILDING DORM 3 150,000 |
| PART II, LINE 12 | UNUSUAL GRANT 150,000 |

**Schedule A (Form 990 or 990-EZ) 2013**

efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | DLN: 93493042011275

| SCHEDULE D | | OMB No 1545-0047 |
|---|---|---|
| (Form 990) | **Supplemental Financial Statements** | **2013** |

▶ Complete if the organization answered "Yes," to Form 990,
Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b

Department of the Treasury
Internal Revenue Service

▶ Attach to Form 990. ▶ See separate instructions. ▶ Information about Schedule D (Form 990)
and its instructions is at *www.irs.gov/form990*.

**Open to Public Inspection**

| Name of the organization | Employer identification number |
|---|---|
| CHRISTIAN ALCOHOLICS & ADDICTS IN RECOVERY INC | 20-8810021 |

**Part I** **Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.** Complete if the organization answered "Yes" to Form 990, Part IV, line 6.

| | | **(a)** Donor advised funds | **(b)** Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year | | |
| 2 | Aggregate contributions to (during year) | | |
| 3 | Aggregate grants from (during year) | | |
| 4 | Aggregate value at end of year | | |

5   Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control?     ☐ Yes   ☐ No

6   Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit?     ☐ Yes   ☐ No

**Part II** **Conservation Easements.** Complete if the organization answered "Yes" to Form 990, Part IV, line 7.

1   Purpose(s) of conservation easements held by the organization (check all that apply)
☐ Preservation of land for public use (e g , recreation or education)   ☐ Preservation of an historically important land area
☐ Protection of natural habitat   ☐ Preservation of a certified historic structure
☐ Preservation of open space

2   Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year

| | | | Held at the End of the Year |
|---|---|---|---|
| a | Total number of conservation easements | 2a | |
| b | Total acreage restricted by conservation easements | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) | 2c | |
| d | Number of conservation easements included in (c) acquired after 8/17/06, and not on a historic structure listed in the National Register | 2d | |

3   Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶_____

4   Number of states where property subject to conservation easement is located ▶_____

5   Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds?     ☐ Yes   ☐ No

6   Staff and volunteer hours devoted to monitoring, inspecting, and enforcing conservation easements during the year
▶_____

7   Amount of expenses incurred in monitoring, inspecting, and enforcing conservation easements during the year
▶ $ _____

8   Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)?     ☐ Yes   ☐ No

9   In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements

**Part III** **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.** Complete if the organization answered "Yes" to Form 990, Part IV, line 8.

1a   If the organization elected, as permitted under SFAS 116 (ASC 958), not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items

b   If the organization elected, as permitted under SFAS 116 (ASC 958), to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items

**(i)** Revenues included in Form 990, Part VIII, line 1   ▶ $ _____

**(ii)** Assets included in Form 990, Part X   ▶ $ _____

2   If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under SFAS 116 (ASC 958) relating to these items

a   Revenues included in Form 990, Part VIII, line 1   ▶ $ _____

b   Assets included in Form 990, Part X   ▶ $ _____

For Paperwork Reduction Act Notice, see the Instructions for Form 990.       Cat No 52283D       **Schedule D (Form 990) 2013**

| **Part III** | **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)* |
|---|---|

**3**   Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply)

**a**  ☐ Public exhibition

**b**  ☐ Scholarly research

**c**  ☐ Preservation for future generations

**d**  ☐ Loan or exchange programs

**e**  ☐ Other

**4**   Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII

**5**   During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection?    ☐ **Yes**  ☐ **No**

| **Part IV** | **Escrow and Custodial Arrangements.** Complete if the organization answered "Yes" to Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21. |
|---|---|

**1a**  Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X?    ☐ **Yes**  ☐ **No**

**b**   If "Yes," explain the arrangement in Part XIII and complete the following table

|  |  | Amount |
|---|---|---|
| **c** Beginning balance | **1c** |  |
| **d** Additions during the year | **1d** |  |
| **e** Distributions during the year | **1e** |  |
| **f** Ending balance | **1f** |  |

**2a**  Did the organization include an amount on Form 990, Part X, line 21?    ☐ **Yes**  ☐ **No**

**b**   If "Yes," explain the arrangement in Part XIII  Check here if the explanation has been provided in Part XIII . . . . . . . . ☐

| **Part V** | **Endowment Funds.** Complete if the organization answered "Yes" to Form 990, Part IV, line 10. |
|---|---|

|  | **(a)**Current year | **(b)**Prior year | **(c)**Two years back | **(d)**Three years back | **(e)**Four years back |
|---|---|---|---|---|---|
| **1a** Beginning of year balance . . . . |  |  |  |  |  |
| **b** Contributions . . . . . . . . |  |  |  |  |  |
| **c** Net investment earnings, gains, and losses |  |  |  |  |  |
| **d** Grants or scholarships . . . . . |  |  |  |  |  |
| **e** Other expenditures for facilities and programs . . . . . . . . |  |  |  |  |  |
| **f** Administrative expenses . . . . |  |  |  |  |  |
| **g** End of year balance . . . . . . |  |  |  |  |  |

**2**   Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as

**a**   Board designated or quasi-endowment ►

**b**   Permanent endowment ►

**c**   Temporarily restricted endowment ►
        The percentages in lines 2a, 2b, and 2c should equal 100%

**3a**  Are there endowment funds not in the possession of the organization that are held and administered for the organization by

|  |  | Yes | No |
|---|---|---|---|
| **(i)** unrelated organizations . . . . . . . . . . . . . . . . . . | **3a(i)** |  |  |
| **(ii)** related organizations . . . . . . . . . . . . . . . . . | **3a(ii)** |  |  |
| **b** If "Yes" to 3a(ii), are the related organizations listed as required on Schedule R? . . . . . . . . . . | **3b** |  |  |

**4**   Describe in Part XIII the intended uses of the organization's endowment funds

| **Part VI** | **Land, Buildings, and Equipment.** Complete if the organization answered 'Yes' to Form 990, Part IV, line 11a. See Form 990, Part X, line 10. |
|---|---|

| Description of property | **(a)** Cost or other basis (investment) | **(b)**Cost or other basis (other) | **(c)** Accumulated depreciation | **(d)** Book value |
|---|---|---|---|---|
| **1a** Land . . . . . . . . . . . . |  |  |  |  |
| **b** Buildings . . . . . . . . . . |  |  |  |  |
| **c** Leasehold improvements . . . . . . . . . |  |  |  |  |
| **d** Equipment . . . . . . . . . . |  | 243,207 | 140,295 | 102,912 |
| **e** Other . . . . . . . . . . . |  |  |  |  |
| **Total.** Add lines 1a through 1e  *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* . . . . . . . . ► |  |  |  | 102,912 |

**Part VII** **Investments—Other Securities.** Complete if the organization answered 'Yes' to Form 990, Part IV, line 11b. See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation Cost or end-of-year market value |
|---|---|---|
| (1) Financial derivatives | | |
| (2) Closely-held equity interests | | |
| Other | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col (B) line 12 )* ▶ | | |

**Part VIII** **Investments—Program Related.** Complete if the organization answered 'Yes' to Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation Cost or end-of-year market value |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col (B) line 13 )* ▶ | | |

**Part IX** **Other Assets.** Complete if the organization answered 'Yes' to Form 990, Part IV, line 11d  See Form 990, Part X, line 15

| (a) Description | (b) Book value |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 15.)* . . . . . . . . . . . ▶ | |

**Part X** **Other Liabilities.** Complete if the organization answered 'Yes' to Form 990, Part IV, line 11e or 11f. See Form 990, Part X, line 25.

| 1   (a) Description of liability | (b) Book value |
|---|---|
| Federal income taxes | |
| PAYABLE TO WD4 PARTNERSHIP | 220,701 |
| VAN LOANS | 69,599 |
| | |
| | |
| | |
| | |
| | |
| **Total.** *(Column (b) must equal Form 990, Part X, col (B) line 25 )* ▶ | 290,300 |

**2.** Liability for uncertain tax positions In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740) Check here if the text of the footnote has been provided in Part XIII ☐

| **Part XI** | Reconciliation of Revenue per Audited Financial Statements With Revenue per Return Complete if the organization answered 'Yes' to Form 990, Part IV, line 12a. | | |
|---|---|---|---|
| **1** | Total revenue, gains, and other support per audited financial statements   .   .   .   .   .   .   .   . | **1** | |
| **2** | Amounts included on line 1 but not on Form 990, Part VIII, line 12 | | |
| **a** | Net unrealized gains on investments   .   .   .   .   .   .   .   . | **2a** | |
| **b** | Donated services and use of facilities   .   .   .   .   .   .   .   . | **2b** | |
| **c** | Recoveries of prior year grants   .   .   .   .   .   .   .   .   . | **2c** | |
| **d** | Other (Describe in Part XIII )   .   .   .   .   .   .   .   .   .   . | **2d** | |
| **e** | Add lines **2a** through **2d**   .   .   .   .   .   .   .   .   .   . | **2e** | |
| **3** | Subtract line **2e** from line **1** .   .   .   .   .   .   .   .   .   .   .   . | **3** | |
| **4** | Amounts included on Form 990, Part VIII, line 12, but not on line **1** | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b  . | **4a** | |
| **b** | Other (Describe in Part XIII )   .   .   .   .   .   .   .   .   .   . | **4b** | |
| **c** | Add lines **4a** and **4b** .   .   .   .   .   .   .   .   .   .   .   .   . | **4c** | |
| **5** | Total revenue  Add lines **3** and **4c.** (This must equal Form 990, Part I, line 12 )   .   .   .   .   . | **5** | |

| **Part XII** | Reconciliation of Expenses per Audited Financial Statements With Expenses per Return. Complete if the organization answered 'Yes' to Form 990, Part IV, line 12a. | | |
|---|---|---|---|
| **1** | Total expenses and losses per audited financial statements   .   .   .   .   .   .   .   .   . | **1** | |
| **2** | Amounts included on line 1 but not on Form 990, Part IX, line 25 | | |
| **a** | Donated services and use of facilities   .   .   .   .   .   .   .   . | **2a** | |
| **b** | Prior year adjustments   .   .   .   .   .   .   .   .   .   .   .   . | **2b** | |
| **c** | Other losses   .   .   .   .   .   .   .   .   .   .   .   .   .   . | **2c** | |
| **d** | Other (Describe in Part XIII )   .   .   .   .   .   .   .   .   .   . | **2d** | |
| **e** | Add lines **2a** through **2d** .   .   .   .   .   .   .   .   .   .   . | **2e** | |
| **3** | Subtract line **2e** from line **1** .   .   .   .   .   .   .   .   .   .   .   . | **3** | |
| **4** | Amounts included on Form 990, Part IX, line 25, but not on line **1:** | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b  .  . | **4a** | |
| **b** | Other (Describe in Part XIII )   .   .   .   .   .   .   .   .   .   . | **4b** | |
| **c** | Add lines **4a** and **4b** .   .   .   .   .   .   .   .   .   .   .   . | **4c** | |
| **5** | Total expenses  Add lines **3** and **4c.** (This must equal Form 990, Part I, line 18 )   .   .   .   .   . | **5** | |

| **Part XIII** | Supplemental Information |
|---|---|

Provide the descriptions required for Part II, lines 3, 5, and 9, Part III, lines 1a and 4, Part IV, lines 1b and 2b, Part V, line 4, Part X, line 2, Part XI, lines 2d and 4b, and Part XII, lines 2d and 4b  Also complete this part to provide any additional information

| Return Reference | Explanation |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

| Part XIII | Supplemental Information *(continued)* |
|---|---|
| Return Reference | Explanation |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**Schedule L**
(Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

**Transactions with Interested Persons**

▶ Complete if the organization answered
"Yes" on Form 990, Part IV, lines 25a, 25b, 26, 27, 28a, 28b, or 28c,
or Form 990-EZ, Part V, line 38a or 40b.
▶ Attach to Form 990 or Form 990-EZ. ▶ See separate instructions.
▶Information about Schedule L (Form 990 or 990-EZ) and its instructions is at
www.irs.gov/form990.

OMB No 1545-0047

**2013**

**Open to Public Inspection**

| Name of the organization | Employer identification number |
|---|---|
| CHRISTIAN ALCOHOLICS & ADDICTS IN RECOVERY INC | 20-8810021 |

**Part I    Excess Benefit Transactions** (section 501(c)(3) and section 501(c)(4) organizations only).
Complete if the organization answered "Yes" on Form 990, Part IV, line 25a or 25b, or Form 990-EZ, Part V, line 40b

| 1 | (a) Name of disqualified person | (b) Relationship between disqualified person and organization | (c) Description of transaction | (d) Corrected? | |
|---|---|---|---|---|---|
| | | | | Yes | No |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

2  Enter the amount of tax incurred by organization managers or disqualified persons during the year under section 4958 . . . . . . . . . . . . . . . . . . ▶ $ _____

3  Enter the amount of tax, if any, on line 2, above, reimbursed by the organization . . . . . . . . . ▶ $ _____

**Part II    Loans to and/or From Interested Persons.**
Complete if the organization answered "Yes" on Form 990-EZ, Part V, line 38a, or Form 990, Part IV, line 26, or if the organization reported an amount on Form 990, Part X, line 5, 6, or 22

| (a) Name of interested person | (b) Relationship with organization | (c) Purpose of loan | (d) Loan to or from the organization? | | (e) Original principal amount | (f) Balance due | (g) In default? | | (h) Approved by board or committee? | | (i) Written agreement? | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | To | From | | | Yes | No | Yes | No | Yes | No |
| (1) LOUISE DUNNAM | | GENERAL OPERATIONS | X | | 35,000 | 35,386 | | No | Yes | | Yes | |
| (2) DONALD JANET WILKERSON | | GENERAL OPERATIONS | X | | 10,000 | 9,651 | | No | Yes | | Yes | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Total | | ▶ $ | | | | 45,037 | | | | | | |

**Part III    Grants or Assistance Benefitting Interested Persons.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 27.

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of assistance | (d) Type of assistance | (e) Purpose of assistance |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.          Cat No 50056A          Schedule L (Form 990 or 990-EZ) 2013

Case 5:17-cv-05228-TLB    Document 1-1    Filed 11/06/17    Page 99 of 227 PageID #: 105

| **Part IV** | Business Transactions Involving Interested Persons. |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 28a, 28b, or 28c.

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of transaction | (d) Description of transaction | (e) Sharing of organization's revenues? | |
|---|---|---|---|---|---|
| | | | | **Yes** | **No** |
| (1) WD4 PARTNERSHIP | MBR OF PSHIP | | CAAIR RENTS | | No |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| **Part V** | Supplemental Information |
|---|---|

Provide additional information for responses to questions on Schedule L (see instructions)

| **Return Reference** | **Explanation** |
|---|---|

**SCHEDULE O**
(Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

# Supplemental Information to Form 990 or 990-EZ

**Complete to provide information for responses to specific questions on
Form 990 or to provide any additional information.**
► **Attach to Form 990 or 990-EZ.**
► **Information about Schedule O (Form 990 or 990-EZ) and its instructions is at
www.irs.gov/form990.**

OMB No 1545-0047

**2013**

**Open to Public
Inspection**

Name of the organization
CHRISTIAN ALCOHOLICS & ADDICTS
IN RECOVERY INC

Employer identification number

20-8810021

## 990 Schedule O, Supplemental Information

| Return Reference | Explanation |
|---|---|
| FORM 990 - ORGANIZATION'S MISSION | |
| FORM 990, PAGE 6, PART VI, LINE 2 | DON & JANET WILKERSON LOUISE DUNNAM CEO & VP OP VP FINANCE |
| FORM 990, PAGE 6, PART VI, LINE 11B | A DRAFT OF THE FORM 990 WAS PROVIDED TO TWO OFFICERS FOR THEIR REVIEW  AFTER THEIR REVIEW, EACH BOARD MEMBER WAS ALSO PROVIDED WITH A COPY FOR THEIR REVIEW, QUESTIONS AND COMMENTS AFTER THIS PROCESS WAS COMPLETED, THE RETURN WAS FINALIZED AND SUBMITTED |
| FORM 990, PAGE 6, PART VI, LINE 12C | THE MINUTES OF THE GOVERNING BOARD DISCLOSE THE NAMES OF PERSONS WHO ARE FOUND TO HAVE AN ACTUAL OR POSSIBLE CONFLICT OF INTEREST CONCERNING MATTERS THAT ARE DISCUSSED AND VOTED ON   THIS PERSON IS ASKED TO LEAVE THE ROOM DURING DISCUSSION AND VOTING ON THE MATTER |
| FORM 990, PAGE 6, PART VI, LINE 19 | GOVERNING DOCUMENTS, CONFLICT OF INTEREST POLICY AND FINANCIAL STATEMENTS ARE MADE AVAILABLE TO THE PUBLIC UPON REQUEST |

efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | DLN: 93493042011275

Form **4562**

Department of the Treasury
Internal Revenue Service  (99)

# Depreciation and Amortization
## (Including Information on Listed Property)

▶ See separate instructions.   ▶ Attach to your tax return.

OMB No 1545-0172

**2013**

Attachment
Sequence No **179**

Name(s) shown on return
CHRISTIAN ALCOHOLICS & ADDICTS
IN RECOVERY INC

Business or activity to which this form relates
INDIRECT DEPRECIATION

Identifying number

20-8810021

| **Part I** | **Election To Expense Certain Property Under Section 179** |
|---|---|

**Note:** *If you have any listed property, complete Part V before you complete Part I.*

| | | | |
|---|---|---|---|
| 1 | Maximum amount (see instructions) · · · · · · · · · · · · · | **1** | 500,000 |
| 2 | Total cost of section 179 property placed in service (see instructions) · · · · · · | **2** | |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) · · · · | **3** | 2,000,000 |
| 4 | Reduction in limitation  Subtract line 3 from line 2  If zero or less, enter -0- · · · · · · · | **4** | |
| 5 | Dollar limitation for tax year  Subtract line 4 from line 1  If zero or less, enter -0-  If married filing separately, see instructions · · · · · · · · · · · · · · · · | **5** | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | | | |
| | | | |

| | | | |
|---|---|---|---|
| 7 Listed property  Enter the amount from line 29 · · · · · · · | **7** | | |
| 8 Total elected cost of section 179 property  Add amounts in column (c), lines 6 and 7 · · · · · · | | **8** | |
| 9 Tentative deduction  Enter the smaller of line 5 or line 8 · · · · · · · · · · · · · · · · | | **9** | |
| 10 Carryover of disallowed deduction from line 13 of your 2012 Form 4562 · · · · · · · · | | **10** | |
| 11 Business income limitation  Enter the smaller of business income (not less than zero) or line 5 (see instructions) · · · · · · · · · · · · · · · · · · · · · · · · · · · · | | **11** | |
| 12 Section 179 expense deduction  Add lines 9 and 10, but do not enter more than line 11 · · · · | | **12** | |
| 13 Carryover of disallowed deduction to 2014  Add lines 9 and 10, less line 12 ▶ | **13** | | |

**Note:** *Do not use Part II or Part III below for listed property. Instead, use Part V.*

| **Part II** | **Special Depreciation Allowance and Other Depreciation (Do not** include listed property **)** (See instructions ) |
|---|---|

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) · · · · · · · · · · · · · · · · | **14** | |
| 15 | Property subject to section 168(f)(1) election · · · · · · · · · · · · · · · · · | **15** | |
| 16 | Other depreciation (including ACRS) · · · · · · · · · · · · · · · · · · · · | **16** | |

| **Part III** | **MACRS Depreciation (Do not** include listed property.**)** (See instructions.) |
|---|---|

### Section A

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2013 · · · · · · · | **17** | 21,908 |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here · · · · · · · · · · · · · · · · · · · · · · ▶ ☐ | | |

### Section B—Assets Placed in Service During 2013 Tax Year Using the General Depreciation System

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only—see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g)Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | 46,725 | 5 0 | MQ | 200 DB | 2,489 |
| c 7-year property | | 24,441 | 7 0 | MQ | 200 DB | 3,158 |
| d 10-year property | | | | | | |
| e 15-year property | | 3,430 | 15 0 | MQ | 150 DB | 43 |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs | | S/L | |
| h Residential rental property | | | 27 5 yrs | MM | S/L | |
| | | | 27 5 yrs | MM | S/L | |
| i Nonresidential real property | | | 39 yrs | MM | S/L | |
| | | | | MM | S/L | |

### Section C—Assets Placed in Service During 2013 Tax Year Using the Alternative Depreciation System

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs | | S/L | |
| c 40-year | | | 40 yrs | MM | S/L | |

| **Part IV** | **Summary** (see instructions.) |
|---|---|

| | | | |
|---|---|---|---|
| 21 Listed property  Enter amount from line 28 · · · · · · · · · · · · · | **21** | | |
| 22 **Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21  Enter here and on the appropriate lines of your return  Partnerships and S corporations—see instructions · · | **22** | | 27,598 |
| 23 For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs · · · · · · · · · | **23** | | |

For Paperwork Reduction Act Notice, see separate instructions.   Cat No 12906N   Form **4562** (2013)

| **Part V** | **Listed Property** (Include automobiles, certain other vehicles, certain computers, and property used for entertainment, recreation, or amusement.) |

**Note:** For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete **only** 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

### Section A—Depreciation and Other Information (Caution: *See the instructions for limits for passenger automobiles.*)

24a Do you have evidence to support the business/investment use claimed? ☐ Yes ☐ No  24b If "Yes," is the evidence written? ☐ Yes ☐ No

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation/ deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use (see instructions) | | | | | **25** | | | |
| 26 Property used more than 50% in a qualified business use | | | | | | | | |
| | | % | | | | | | |
| | | % | | | | | | |
| | | % | | | | | | |
| 27 Property used 50% or less in a qualified business use | | | | | | | | |
| | | % | | | | S/L - | | |
| | | % | | | | S/L - | | |
| | | % | | | | S/L - | | |
| 28 Add amounts in column (h), lines 25 through 27 Enter here and on line 21, page 1 | | | | | **28** | | | |
| 29 Add amounts in column (i), line 26 Enter here and on line 7, page 1 . . . . . . . . . | | | | | | | **29** | |

### Section B—Information on Use of Vehicles

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person
If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles

| | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year (**do not** include commuting miles) . . | | | | | | | | | | | | |
| 31 Total commuting miles driven during the year . | | | | | | | | | | | | |
| 32 Total other personal(noncommuting) miles driven | | | | | | | | | | | | |
| 33 Total miles driven during the year Add lines 30 through 32 . . | | | | | | | | | | | | |
| 34 Was the vehicle available for personal use during off-duty hours? . . . . . . . | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? . . . . . . . | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? . | | | | | | | | | | | | |

### Section C—Questions for Employers Who Provide Vehicles for Use by Their Employees

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who **are not** more than 5% owners or related persons (see instructions)

| | | Yes | No |
|---|---|---|---|
| 37 | Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? | | |
| 38 | Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners . . . | | |
| 39 | Do you treat all use of vehicles by employees as personal use? . . . . . . . . . . . | | |
| 40 | Do you provide more than five vehicles to your employees, obtain information from your employees about the use of vehicles, and retain the information received? . . . . . . . . . . . . . . . | | |
| 41 | Do you meet the requirements concerning qualified automobile demonstration use? (See instructions ) . . . . . | | |
| | **Note:** If your answer to 37, 38, 39, 40, or 41 is "Yes," do not complete Section B for the covered vehicles | | |

| **Part VI** | **Amortization** |

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2013 tax year (see instructions) | | | | | |
| | | | | | |
| | | | | | |
| 43 Amortization of costs that began before your 2013 tax year . . . . . . . . . | | | **43** | | |
| 44 **Total.** Add amounts in column (f) See the instructions for where to report . . . . . . . | | | **44** | | |

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-25 12:38:22
CV-2017-1320

| efile Public Visual Render | ObjectId: 201542819349300414 - Submission: 2015-10-08 | TIN: 20-8810021 |
|---|---|---|

Form **990**

## Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)

Department of the Treasury
Internal Revenue Service

► Do not enter social security numbers on this form as it may be made public.
► Information about Form 990 and its instructions is at www.IRS.gov/form990.

OMB No. 1545-0047

**2014**

Open to Public Inspection

**A** For the 2014 calendar year, or tax year beginning 07-01-2014   , and ending 06-30-2015

**B** Check if applicable:
☐ Address change
☐ Name change
☐ Initial return
☐ Final return/terminated
☐ Amended return
☐ Application pending

**C** Name of organization
CHRISTIAN ALCOHOLICS & ADDICTS
IN RECOVERY INC

Doing business as

Number and street (or P.O. box if mail is not delivered to street address)   Room/suite
40152 S 700 ROAD

City or town, state or province, country, and ZIP or foreign postal code
JAY, OK   74346

**D** Employer identification number
20-8810021

**E** Telephone number
(918) 529-8608

**G** Gross receipts $ 2,048,875

**F** Name and address of principal officer:
JANET WILKERSON
40152 S 700 ROAD
JAY, OK 74346

**H(a)** Is this a group return for subordinates?   ☐ Yes ☑ No
**H(b)** Are all subordinates included?   ☐ Yes ☐ No
If "No," attach a list. (see instructions)

**I** Tax-exempt status: ☑ 501(c)(3)   ☐ 501(c) (  ) ◄ (insert no.)   ☐ 4947(a)(1) or   ☐ 527

**H(c)** Group exemption number ►

**J** Website: ► WWW.CAAIR.ORG

**K** Form of organization: ☑ Corporation ☐ Trust ☐ Association ☐ Other ►

**L** Year of formation: 2007   **M** State of legal domicile: OK

### Part I   Summary

**1** Briefly describe the organization's mission or most significant activities:
CAAIR, INC. IS A FAITH BASED, LONG TERM DRUG AND ALCOHOL RECOVERY PROGRAM. IT HAS A VISION AND GROWTH STRATEGY FOR MEN WHO WANT A SECOND CHANCE IN LIFE TO BECOME DRUG OR ALCOHOL-FREE. THIS IS ACCOMPLISHED BY ASSISTING DRUG ADDICTS AND ALCOHOLICS IN RECOVERING AND BECOMING PRODUCTIVE MEMBERS OF SOCIETY THROUGH PROVIDING HOUSING, COUNSELING, AND JOB TRAINING.

**2** Check this box ► ☐

| | | | |
|---|---|---|---|
| **3** Number of voting members of the governing body (Part VI, line 1a) | **3** | 7 |
| **4** Number of independent voting members of the governing body (Part VI, line 1b) | **4** | 5 |
| **5** Total number of individuals employed in calendar year 2014 (Part V, line 2a) | **5** | 17 |
| **6** Total number of volunteers (estimate if necessary) | **6** | |
| **7a** Total unrelated business revenue from Part VIII, column (C), line 12 | **7a** | 0 |
| **b** Net unrelated business taxable income from Form 990-T, line 34 | **7b** | |

| | Prior Year | Current Year |
|---|---|---|
| **8** Contributions and grants (Part VIII, line 1h) | 166,245 | 21,129 |
| **9** Program service revenue (Part VIII, line 2g) | 1,835,565 | 2,027,746 |
| **10** Investment income (Part VIII, column (A), lines 3, 4, and 7d ) | 1,713 | 0 |
| **11** Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | | 0 |
| **12** Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 2,003,523 | 2,048,875 |
| **13** Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) | | 0 |
| **14** Benefits paid to or for members (Part IX, column (A), line 4) | | 0 |
| **15** Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 536,166 | 611,407 |
| **16a** Professional fundraising fees (Part IX, column (A), line 11e) | | 0 |
| **b** Total fundraising expenses (Part IX, column (D), line 25) ►0 | | |
| **17** Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 1,103,580 | 1,193,876 |
| **18** Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 1,639,746 | 1,805,283 |
| **19** Revenue less expenses. Subtract line 18 from line 12 | 363,777 | 243,592 |

| | Beginning of Current Year | End of Year |
|---|---|---|
| **20** Total assets (Part X, line 16) | 437,425 | 595,609 |
| **21** Total liabilities (Part X, line 26) | 337,157 | 251,749 |
| **22** Net assets or fund balances. Subtract line 21 from line 20 | 100,268 | 343,860 |

### Part II   Signature Block

EXHIBIT
I

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| Sign Here | | 2015-10-02 |
|---|---|---|
| | Signature of officer | Date |
| | JANET WILKERSON  CEO | |
| | Type or print name and title | |

May the IRS discuss this return with the preparer shown above? (see instructions) . . . . . . . . . .   ☑ **Yes**  ☐ **No**

**For Paperwork Reduction Act Notice, see the separate instructions.**          Cat. No. 11282Y          Form**990**(2014)

Page 2

Form 990 (2014)                                                                                                    Page **2**

| Part III | **Statement of Program Service Accomplishments** |
|---|---|

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . . . ☑

**1** Briefly describe the organization's mission:

CAAIR, INC. IS A FAITH BASED, LONG TERM DRUG AND ALCOHOL RECOVERY PROGRAM. IT HAS A VISION AND GROWTH STRATEGY FOR MEN WHO WANT A SECOND CHANCE IN LIFE TO BECOME DRUG OR ALCOHOL-FREE. THIS IS ACCOMPLISHED BY ASSISTING DRUG ADDICTS AND ALCOHOLICS IN RECOVERING AND BECOMING PRODUCTIVE MEMBERS OF SOCIETY THROUGH PROVIDING HOUSING, COUNSELING, AND JOB TRAINING.

**2** Did the organization undertake any significant program services during the year which were not listed on
the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**
If "Yes," describe these new services on Schedule O.

**3** Did the organization cease conducting, or make significant changes in how it conducts, any program
services? . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**
If "Yes," describe these changes on Schedule O.

**4** Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

**4a** (Code:          ) (Expenses $      1,561,306   including grants of $           ) (Revenue $      2,027,746  )
ASSIST DRUG ADDICTS AND ALCOHOLICS IN RECOVERING AND BECOMING PRODUCTIVE MEMBERS OF SOCIETY THROUGH PROVIDING HOUSING, COUNSELING, AND JOB TRAINING. DURING THE COURSE OF THIS YEAR CAAIR WORKED WITH 347 DIFFERENT MEN.

**4b** (Code:          ) (Expenses $           including grants of $           ) (Revenue $           )

**4c** (Code:          ) (Expenses $           including grants of $           ) (Revenue $           )

**4d** Other program services (Describe in Schedule O.)
(Expenses $           including grants of $           ) (Revenue $           )

**4e** **Total program service expenses ▶**        1,561,306

Form **990** (2014)

Page 3

Form 990 (2014)                                                                      Page **3**

**Part IV**  **Checklist of Required Schedules**

|   |   |   | Yes | No |
|---|---|---|---|---|
| **1** | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* . . . . . . . . . . . . . . | **1** | Yes | |
| **2** | Is the organization required to complete *Schedule B, Schedule of Contributors* (see instructions)? . . . | **2** | | No |
| **3** | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* . . . . . . . . . . . . | **3** | | No |
| **4** | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* . . . . . . . . . . . | **4** | | No |
| **5** | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* . . . . . . . . . . . . . . | **5** | | No |
| **6** | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* . . . . . . . . . . . . | **6** | | No |
| **7** | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* . . . | **7** | | No |
| **8** | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* . . . . . . . . . . . | **8** | | No |
| **9** | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services?*If "Yes," complete Schedule D, Part IV* . . . . . . . . . . | **9** | | No |
| **10** | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi-endowments? *If "Yes," complete Schedule D, Part V* . . . | **10** | | No |
| **11** | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable. | | | |
| **a** | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI.* . . . . . . . . . . | **11a** | Yes | |
| **b** | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* . . . . | **11b** | | No |
| **c** | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* . . . | **11c** | | No |
| **d** | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* . . . . . . | **11d** | | No |
| **e** | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | **11e** | Yes | |
| **f** | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | **11f** | | No |
| **12a** | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* . . . . . . . . . | **12a** | | No |
| **b** | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | **12b** | | No |
| **13** | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | **13** | | No |
| **14a** | Did the organization maintain an office, employees, or agents outside of the United States? . . . . | **14a** | | No |
| **b** | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* . . . . . . | **14b** | | No |
| **15** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* . . . . . . | **15** | | No |
| **16** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* . . . . | **16** | | No |
| **17** | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I* (see instructions) . . . . | **17** | | No |
| **18** | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* . . . . . . . . . | **18** | | No |
| **19** | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* . . . . . . . . . . . | **19** | | No |
| **20a** | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* . . . . | **20a** | | No |
| **b** | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | **20b** | | |

Form **990** (2014)

Page 4

Form 990 (2014)                                                                    Page **4**

**Part IV**   **Checklist of Required Schedules** *(continued)*

| | | | | |
|---|---|---|---|---|
| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* . . . . . | **21** | | No |
| 22 | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* . . . . . . . . | **22** | | No |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* . . . . . . . . . . . . . . . . . . | **23** | | No |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* . . . . . . . . . . . . . . | **24a** | | No |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? . . . | **24b** | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? . . . . . . . . . . . . . . . . . | **24c** | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? . . . | **24d** | | |
| 25a | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* . . . . . . . . . . . . . . . | **25a** | | No |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* . . . . . . . . . . . . . . . | **25b** | | No |
| 26 | Did the organization report any amount on Part X, line 5, 6, or 22 for receivables from or payables to any current or former officers, directors, trustees, key employees, highest compensated employees, or disqualified persons? *If "Yes," complete Schedule L, Part II* . . . . . . . . . . . . . . . | **26** | Yes | |
| 27 | Did the organization provide a grant or other assistance to an officer, director, trustee, key employee, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part III* . . . . . . . . . | **27** | | No |
| 28 | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| a | A current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . . . . . . . | **28a** | Yes | |
| b | A family member of a current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . . . . . | **28b** | | No |
| c | An entity of which a current or former officer, director, trustee, or key employee (or a family member thereof) was an officer, director, trustee, or direct or indirect owner? *If "Yes," complete Schedule L, Part IV* . . . | **28c** | Yes | |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* . . | **29** | | No |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* . . . . . . . . . . . . . | **30** | | No |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* . | **31** | | No |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* . . . . . . . . . . . . . . . . . . . | **32** | | No |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* . . . . . . . . . | **33** | | No |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* . . . . . . . . . . . . . . . . . . . . . | **34** | | No |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? . . . . . . | **35a** | | No |
| b | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* . . . | **35b** | | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* . . . . . . . . . | **36** | | No |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | **37** | | No |
| 38 | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O. . . . . . . . . . . | **38** | Yes | |

Form **990** (2014)

Page 5

Form 990 (2014)                                                                                                    Page **5**

| Part V | Statements Regarding Other IRS Filings and Tax Compliance | | | | |
|---|---|---|---|---|---|

Check if Schedule O contains a response or note to any line in this Part V . . . . . . . . . . .  ☐

| | | | | Yes | No |
|---|---|---|---|---|---|
| **1a** | Enter the number reported in Box 3 of Form 1096 Enter -0- if not applicable . . | **1a** | 9 | | |
| **b** | Enter the number of Forms W-2G included in line 1a.*Enter -0-* if not applicable . | **1b** | 0 | | |
| **c** | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? . . . . . . . . . . . . . . . . . | | | **1c** | Yes | |
| **2a** | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return . . . . . . . . . . . . . . . . . . | **2a** | 17 | | | |
| **b** | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? **Note.**If the sum of lines 1a and 2a is greater than 250, you may be required to e-file (see instructions) | | | **2b** | Yes | |
| **3a** | Did the organization have unrelated business gross income of $1,000 or more during the year? . . . | | | **3a** | | No |
| **b** | If "Yes," has it filed a Form 990-T for this year?*If "No" to line 3b, provide an explanation in Schedule O* . . . | | | **3b** | | |
| **4a** | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? . . | | | **4a** | | No |
| **b** | If "Yes," enter the name of the foreign country: ▶ See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | | | |
| **5a** | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? . . . | | | **5a** | | No |
| **b** | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | | **5b** | | No |
| **c** | If "Yes," to line 5a or 5b, did the organization file Form 8886-T? . . . . . . . . . . | | | **5c** | | |
| **6a** | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? . . . . | | | **6a** | | No |
| **b** | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? . . . . . . . . . . . . . . . . . . . . | | | **6b** | | |
| **7** | **Organizations that may receive deductible contributions under section 170(c).** | | | | | |
| **a** | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? . . . . . . . . . . . . . . . . . . . . | | | **7a** | | |
| **b** | If "Yes," did the organization notify the donor of the value of the goods or services provided? . . . . . | | | **7b** | | |
| **c** | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? . . . . . . . . . . . . . . . . . . . . . . | | | **7c** | | |
| **d** | If "Yes," indicate the number of Forms 8282 filed during the year . . . . | **7d** | | | | |
| **e** | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | | **7e** | | |
| **f** | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? . . | | | **7f** | | |
| **g** | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? . . . . . . . . . . . . . . . . . . . . . . . . | | | **7g** | | |
| **h** | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? . . . . . . . . . . . . . . . . . . . . . . . | | | **7h** | | |
| **8** | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? . . . . . . . . . . . . . . . . . . . . . . . . | | | **8** | | |
| **9a** | Did the sponsoring organization make any taxable distributions under section 4966? . . . | | | **9a** | | |
| **b** | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? . . . | | | **9b** | | |
| **10** | **Section 501(c)(7) organizations.** Enter: | | | | | |
| **a** | Initiation fees and capital contributions included on Part VIII, line 12 . . . | **10a** | | | | |
| **b** | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | **10b** | | | | |
| **11** | **Section 501(c)(12) organizations.** Enter: | | | | | |
| **a** | Gross income from members or shareholders . . . . . . . . . . | **11a** | | | | |
| **b** | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them.) . . . . . . . . . | **11b** | | | | |
| **12a** | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | | **12a** | | |
| **b** | If "Yes," enter the amount of tax-exempt interest received or accrued during the year. | **12b** | | | | |
| **13** | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | | |

| | | | 13a | | |
|---|---|---|---|---|---|
| **a** | Is the organization licensed to issue qualified health plans in more than one state?**Note.** See the instructions for additional information the organization must report on Schedule O. | | | | |
| **b** | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans  .   .   .   . | 13b | | | |
| **c** | Enter the amount of reserves on hand   .   .   .   .   .   .   .   .   .   . | 13c | | | |
| **14a** | Did the organization receive any payments for indoor tanning services during the tax year?  .   .   .   .   . | | 14a | | No |
| **b** | If "Yes," has it filed a Form 720 to report these payments?*If "No," provide an explanation in Schedule O*  .   . | | 14b | | |

Form **990** (2014)

Page 6

Form 990 (2014)                                                                                    Page **6**

| Part VI | **Governance, Management, and Disclosure** |
|---|---|

*For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*

Check if Schedule O contains a response or note to any line in this Part VI . . . . . . . . . . . . ☑

## Section A. Governing Body and Management

| | | | | Yes | No |
|---|---|---|---|---|---|
| 1a | Enter the number of voting members of the governing body at the end of the tax year | **1a** | 7 | | |
| | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | | |
| b | Enter the number of voting members included in line 1a, above, who are independent | **1b** | 5 | | |
| 2 | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? . . . . . . . . . . . . . . | **2** | | Yes | |
| 3 | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? . | **3** | | | No |
| 4 | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4** | | | No |
| 5 | Did the organization become aware during the year of a significant diversion of the organization's assets? . | **5** | | | No |
| 6 | Did the organization have members or stockholders? . . . . . . . . . . . . . . | **6** | | | No |
| 7a | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? . . . . . . . . . . . . . . . . . . . | **7a** | | | No |
| b | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? . . . . . . . . . . . . . . . . . | **7b** | | | No |
| 8 | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | | |
| a | The governing body? . . . . . . . . . . . . . . . . . . . . . . . . | **8a** | | Yes | |
| b | Each committee with authority to act on behalf of the governing body? . . . . . . . . . . | **8b** | | Yes | |
| 9 | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? If "Yes," provide the names and addresses in Schedule O . . . . . . . . | **9** | | | No |

## Section B. Policies *(This Section B requests information about policies not required by the Internal Revenue Code.)*

| | | | Yes | No |
|---|---|---|---|---|
| 10a | Did the organization have local chapters, branches, or affiliates? . . . . . . . . . . . | **10a** | | No |
| b | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | **10b** | | |
| 11a | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? . . . . . . . . . . . . . . . . . . . . . . . . . . . | **11a** | Yes | |
| b | Describe in Schedule O the process, if any, used by the organization to review this Form 990. . . . . | | | |
| 12a | Did the organization have a written conflict of interest policy? If "No," go to line 13 . . . . . | **12a** | Yes | |
| b | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? . . . . . . . . . . . . . . . . . . . . . . . . . . | **12b** | Yes | |
| c | Did the organization regularly and consistently monitor and enforce compliance with the policy? If "Yes," describe in Schedule O how this was done . . . . . . . . . . . . . . . . . . . . | **12c** | Yes | |
| 13 | Did the organization have a written whistleblower policy? . . . . . . . . . . . . . | **13** | | No |
| 14 | Did the organization have a written document retention and destruction policy? . . . . . . . | **14** | | No |
| 15 | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| a | The organization's CEO, Executive Director, or top management official . . . . . . . . . | **15a** | | No |
| b | Other officers or key employees of the organization . . . . . . . . . . . . . . | **15b** | | No |
| | If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions). | | | |
| 16a | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? . . . . . . . . . . . . . . . . . . . | **16a** | | No |
| b | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? . . . . . . . . . . . . . . . . . | **16b** | | |

## Section C. Disclosure

**17** List the States with which a copy of this Form 990 is required to be filed▶

OK

**18** Section 6104 requires an organization to make its Form 1023 (or 1024 if applicable), 990, and 990-T (501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☐ Own website     ☐ Another's website     ☑ Upon request     ☐ Other (explain in Schedule O)

**19**    Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest
          policy, and financial statements available to the public during the tax year.

**20**    State the name, address, and telephone number of the person who possesses the organization's books and records:
          ▶OLGA L DUNNAM 40152 S 700 ROAD     JAY,OK 74346 (918) 529-8608

Form **990** (2014)

Page 7

| Form 990 (2014) | | | | | | | | Page **7** |

**Part VII**    **Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . . . . ☐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

● List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.

● List all of the organization's **current** key employees, if any. See instructions for definition of "key employee."

● List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations.

● List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.

● List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

List persons in the following order: individual trustees or directors; institutional trustees; officers; key employees; highest compensated employees; and former such persons.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A)<br>Name and Title | (B)<br>Average hours per week (list any hours for related organizations below dotted line) | (C)<br>Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) JANET WILKERSON<br>CHAIRMAN & C | 50.00 | X | | X | | | | 101,816 | 0 | 10,824 |
| (2) OLGA L DUNNAM<br>DIRECTOR & V | 45.00 | X | | X | | | | 100,006 | 0 | 10,571 |
| (3) SCOTT MCDANIEL<br>DIRECTOR | 2.00 | X | | | | | | 0 | 0 | 0 |
| (4) GARY JECH<br>DIRECTOR | 2.00 | X | | | | | | 0 | 0 | 0 |
| (5) DR DOUG COX<br>DIRECTOR | 2.00 | X | | | | | | 0 | 0 | 0 |
| (6) RICHARD DAILEY<br>DIRECTOR | 2.00 | X | | | | | | 0 | 0 | 0 |
| (7) DAYNA COOK<br>DIRECTOR | 2.00 | X | | | | | | 0 | 0 | 0 |
| (8) DONALD WILKERSON<br>VP OPERATION | 52.00 | | | X | | | | 60,008 | 0 | 10,825 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

Form **990** (2014)

Page 8

Form 990 (2014)　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page **8**

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

**Part VII**　**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees** *(continued)*

| | | | | | |
|---|---|---|---|---|---|
| **1b Sub-Total** . . . . . . . ▶ | | | | | |
| **c** Total from continuation sheets to Part VII, Section A . . . . . ▶ | | | | | |
| **d** Total (add lines 1b and 1c) . . . . . . . . . . . ▶ | | 261,830 | | | 32,220 |

**2**　Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶ 2

| | | Yes | No |
|---|---|---|---|
| **3** | Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . **3** | | No |
| **4** | For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . . . **4** | | No |
| **5** | Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* . . . . . . . . . **5** | | No |

**Section B. Independent Contractors**

**1**　Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

**2**　Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶

Form **990** (2014)

Page 9

Form 990 (2014)                                                                    Page **9**

## Part VIII    Statement of Revenue

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . . . . . . ☐

| | | **(A)** Total revenue | **(B)** Related or exempt function revenue | **(C)** Unrelated business revenue | **(D)** Revenue excluded from tax under sections 512-514 |
|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** **1a** Federated campaigns . . | **1a** | | | | |
| **b** Membership dues . . | **1b** | | | | |
| **c** Fundraising events . . | **1c** | | | | |
| **d** Related organizations | **1d** | | | | |
| **e** Government grants (contributions) | **1e** | | | | |
| **f** All other contributions, gifts, grants, and similar amounts not included above | **1f** 21,129 | | | | |
| **g** Noncash contributions included in lines 1a-1f:$ _____ | | | | | |
| **h Total.** Add lines 1a-1f . . . . . . . . . ▶ | | 21,129 | | | |
| **Program Service Revenue** | Business Code | | | | |
| **2a** WORK PROGRAMS | 623220 | 2,027,746 | 2,027,746 | | |
| **b** | | | | | |
| **c** | | | | | |
| **d** | | | | | |
| **e** | | | | | |
| **f** All other program service revenue. | | | | | |
| **g Total.** Add lines 2a–2f . . . . . . ▶ | | 2,027,746 | | | |
| **Other Revenue** **3** Investment income (including dividends, interest, and other similar amounts) . . . . . . . . . ▶ | | | | | |
| **4** Income from investment of tax-exempt bond proceeds ▶ | | | | | |
| **5** Royalties . . . . . . . . . . . ▶ | | | | | |
| | (i) Real | (ii) Personal | | | |
| **6a** Gross rents | | | | | |
| **b** Less: rental expenses | | | | | |
| **c** Rental income or (loss) | | | | | |
| **d** Net rental income or (loss) . . . . . . ▶ | | | | | |
| | (i) Securities | (ii) Other | | | |
| **7a** Gross amount from sales of assets other than inventory | | | | | |
| **b** Less: cost or other basis and sales expenses | | | | | |
| **c** Gain or (loss) | | | | | |
| **d** Net gain or (loss) . . . . . ▶ | | | | | |
| **8a** Gross income from fundraising events (not including $ _____ of contributions reported on line 1c). See Part IV, line 18 . . . . . **a** | | | | | |
| **b** Less: direct expenses . . . **b** | | | | | |
| **c** Net income or (loss) from fundraising events . . ▶ | | | | | |
| **9a** Gross income from gaming activities. See Part IV, line 19 . . . . . **a** | | | | | |
| **b** Less: direct expenses . . . **b** | | | | | |
| **c** Net income or (loss) from gaming activities . . ▶ | | | | | |

| | | | | |
|---|---|---|---|---|
| **10a** Gross sales of inventory, less returns and allowances   .   . | **a** | | | |
| **b** Less: cost of goods sold   .   . | **b** | | | |
| **c** Net income or (loss) from sales of inventory   .   .   ▶ | | | | |
| Miscellaneous Revenue | Business Code | | | |
| **11a** | | | | |
| **b** | | | | |
| **c** | | | | |
| **d** All other revenue   .   .   .   . | | | | |
| **e Total.** Add lines 11a–11d   .   .   .   .   .   ▶ | | | | |
| **12 Total revenue.** See Instructions.   .   .   .   .   .   ▶ | | 2,048,875 | 2,027,746 | |

Page 10

Form 990 (2014)                                                       Page **10**

**Part IX**     **Statement of Functional Expenses**

Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).

Check if Schedule O contains a response or note to any line in this Part IX   .   .   .   .   .   .   .   .   .   .   . ☐

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | (A) Total expenses | (B) Program service expenses | (C) Management and general expenses | (D) Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 | | | | |
| **2** Grants and other assistance to individuals in the United States. See Part IV, line 22 | | | | |
| **3** Grants and other assistance to governments, organizations, and individuals outside the United States. See Part IV, lines 15 and 16 | | | | |
| **4** Benefits paid to or for members | | | | |
| **5** Compensation of current officers, directors, trustees, and key employees  .   .   .   . | 261,830 | 95,644 | 166,186 | |
| **6** Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B)  .   .   .   . | | | | |
| **7** Other salaries and wages | 265,956 | 265,956 | | |
| **8** Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions)  .   .   .   . | | | | |
| **9** Other employee benefits  .   .   .   .   .   .   . | 41,174 | 23,567 | 17,607 | |
| **10** Payroll taxes  .   .   .   .   .   .   .   . | 42,447 | 29,510 | 12,937 | |
| **11** Fees for services (non-employees): | | | | |
| **a** Management  .   .   .   .   .   .   .   . | | | | |
| **b** Legal  .   .   .   .   .   .   .   .   . | | | | |
| **c** Accounting  .   .   .   .   .   .   .   . | 890 | | 890 | |
| **d** Lobbying  .   .   .   .   .   .   .   . | | | | |
| **e** Professional fundraising services. See Part IV, line 17 | | | | |
| **f** Investment management fees  .   .   .   .   . | | | | |
| **g** Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) | 128,445 | 122,445 | 6,000 | |
| **12** Advertising and promotion  .   .   .   .   . | | | | |
| **13** Office expenses  .   .   .   .   .   .   . | 12,864 | | 12,864 | |
| **14** Information technology  .   .   .   .   .   . | | | | |
| **15** Royalties  .   .   . | | | | |
| **16** Occupancy  .   .   .   .   .   .   .   . | 353,158 | 344,911 | 8,247 | |
| **17** Travel  .   .   .   .   .   .   .   .   . | 554 | 554 | | |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials  . | | | | |
| **19** Conferences, conventions, and meetings  .   .   .   . | | | | |
| **20** Interest  .   .   .   .   .   .   .   .   . | 4,889 | 4,889 | | |
| **21** Payments to affiliates  .   .   .   .   . | | | | |
| **22** Depreciation, depletion, and amortization  .   . | 50,798 | 50,798 | | |
| **23** Insurance  .   .   . | 130,416 | 130,416 | | |
| **24** Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| **a** CLIENT SERVICES & SUPPLIE | 492,616 | 492,616 | | |
| **b** CHARITABLE CONTRIBUTIONS | 19,099 | | 19,099 | |
| **c** BUSINESS LIC & PERMITS | 147 | | 147 | |
| **d** | | | | |
| **e** All other expenses | | | | |
| **25** **Total functional expenses.** Add lines 1 through 24e | 1,805,283 | 1,561,306 | 243,977 | 0 |
| **26** **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined | | | | |

| **Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII.** | **(A)** Total expenses | **(B)** Program service expenses | **(C)** Management and general expenses | **(D)** Fundraising expenses |
|---|---|---|---|---|
| educational campaign and fundraising solicitation. | | | | |
| Check here ▶ ☐ if following SOP 98-2 (ASC 958-720). | | | | |

Form **990** (2014)

Page 11

Form 990 (2014)                                                                        Page **11**

**Part X**  **Balance Sheet**

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . ☐

|  |  | **(A)** Beginning of year |  | **(B)** End of year |
|---|---|---:|---|---:|
| **Assets** | | | | |
| 1 | Cash–non-interest-bearing  . . . . . . . . | 334,513 | **1** | 213,587 |
| 2 | Savings and temporary cash investments  . . . . . . | | **2** | |
| 3 | Pledges and grants receivable, net  . . . . . . | | **3** | |
| 4 | Accounts receivable, net  . . . . . . . . . . | | **4** | |
| 5 | Loans and other receivables from current and former officers, directors, trustees, key employees, and highest compensated employees. Complete Part II of Schedule L | | **5** | |
| 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), persons described in section 4958(c)(3)(B), and contributing employers and sponsoring organizations of section 501(c)(9) voluntary employees' beneficiary organizations (see instructions) Complete Part II of Schedule L | | **6** | |
| 7 | Notes and loans receivable, net  . . . . . | | **7** | |
| 8 | Inventories for sale or use  . . . . . . | | **8** | |
| 9 | Prepaid expenses and deferred charges  . . . . . . | | **9** | |
| 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D **10a** 562,316 | | | |
| b | Less: accumulated depreciation **10b** 180,294 | 102,912 | **10c** | 382,022 |
| 11 | Investments—publicly traded securities  . . . | | **11** | |
| 12 | Investments—other securities. See Part IV, line 11 . . . . . | | **12** | |
| 13 | Investments—program-related. See Part IV, line 11 . . | | **13** | |
| 14 | Intangible assets  . . . . . . . . . . | | **14** | |
| 15 | Other assets. See Part IV, line 11 . . . . . . . . . | | **15** | |
| 16 | **Total assets.** Add lines 1 through 15 (must equal line 34)  . . . | 437,425 | **16** | 595,609 |
| **Liabilities** | | | | |
| 17 | Accounts payable and accrued expenses  . . . . . | 1,820 | **17** | 2,132 |
| 18 | Grants payable  . . . | | **18** | |
| 19 | Deferred revenue  . . . . . . . . | | **19** | |
| 20 | Tax-exempt bond liabilities  . . . . . . . . | | **20** | |
| 21 | Escrow or custodial account liability. Complete Part IV of Schedule D | | **21** | |
| 22 | Loans and other payables to current and former officers, directors, trustees, key employees, highest compensated employees, and disqualified persons. Complete Part II of Schedule L . . . . | 45,037 | **22** | 27,316 |
| 23 | Secured mortgages and notes payable to unrelated third parties  . . | | **23** | |
| 24 | Unsecured notes and loans payable to unrelated third parties  . . | | **24** | |
| 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17-24). Complete Part X of Schedule D | 290,300 | **25** | 222,301 |
| 26 | **Total liabilities.** Add lines 17 through 25 .  . | 337,157 | **26** | 251,749 |
| **Net Assets or Fund Balances** | | | | |
|  | **Organizations that follow SFAS 117 (ASC 958), check here ▶** ☐ **and complete lines 27 through 29, and lines 33 and 34.** | | | |
| 27 | Unrestricted net assets | | **27** | |
| 28 | Temporarily restricted net assets  . . . . . . . . | | **28** | |
| 29 | Permanently restricted net assets  . . . . . . . . | | **29** | |
|  | **Organizations that do not follow SFAS 117 (ASC 958), check here ▶** ☑ **and complete lines 30 through 34.** | | | |
| 30 | Capital stock or trust principal, or current funds | | **30** | |
| 31 | Paid-in or capital surplus, or land, building or equipment fund  . . . | | **31** | |
| 32 | Retained earnings, endowment, accumulated income, or other funds | 100,268 | **32** | 343,860 |
| 33 | Total net assets or fund balances  . . . . . . . | 100,268 | **33** | 343,860 |
| 34 | Total liabilities and net assets/fund balances  . . . . . . . . . | 437,425 | **34** | 595,609 |

Form **990** (2014)

Page 12

Form 990 (2014)                                                                                          Page **12**

**Part XI**   **Reconcilliation of Net Assets**

Check if Schedule O contains a response or note to any line in this Part XI . . . . . . . . . . . . . . . . ☐

| | | |
|---|---|---:|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) . . . . . . . . **1** | 2,048,875 |
| 2 | Total expenses (must equal Part IX, column (A), line 25) . . . . . . . . **2** | 1,805,283 |
| 3 | Revenue less expenses. Subtract line 2 from line 1 . . . . . . . . . **3** | 243,592 |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 33, column (A)) . . **4** | 100,268 |
| 5 | Net unrealized gains (losses) on investments . . . . . . . . . . . **5** | |
| 6 | Donated services and use of facilities . . . . . . . . . . . . **6** | |
| 7 | Investment expenses . . . . . . . . . . . . . . . . **7** | |
| 8 | Prior period adjustments . . . . . . . . . . . . . . **8** | |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) . . . . . . **9** | |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 33, column (B)) **10** | 343,860 |

**Part XII**   **Financial Statements and Reporting**

Check if Schedule O contains a response or note to any line in this Part XII . . . . . . . . . . . . . . ☐

| | | Yes | No |
|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990:   ☑ Cash   ☐ Accrual   ☐ Other _____ | | |
| | If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O. | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? | **2a** | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both: | | |
| | ☐ Separate basis   ☐ Consolidated basis   ☐ Both consolidated and separate basis | | |
| b | Were the organization's financial statements audited by an independent accountant? | **2b** | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both: | | |
| | ☐ Separate basis   ☐ Consolidated basis   ☐ Both consolidated and separate basis | | |
| c | If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | **2c** | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? | **3a** | |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits. | **3b** | |

Form **990** (2014)

Page 13

Form 990 (2014)                                                                              Page **13**

## Additional Data

Return to Form

**Software ID:**
**Software Version:**

**Form 990, Special Condition Description:**

| Special Condition Description | |
| --- | --- |

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-October 25 23:38:32
04CV-
19WD04 : 27 Pages

EXHIBIT **J**

Form **990**

## Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except black lung benefit trust or private foundation)

Department of the Treasury
Internal Revenue Service

► The organization may have to use a copy of this return to satisfy state reporting requirements

OMB No. 1545-0047

**2012**

Open to Public Inspection

**A** For the 2012 calendar year, or tax year beginning **AUG 1, 2012** and ending **JUL 31, 2013**

| B Check if applicable | C Name of organization | | | D Employer identification number |
|---|---|---|---|---|
| ☐ Address change | **D.A.R.P., Inc.** | | | |
| ☐ Name change | Doing Business As | | | **73-1611805** |
| ☐ Initial return | Number and street (or P.O. box if mail is not delivered to street address) | Room/suite | E Telephone number | |
| ☐ Termin-ated | **14100 North 477 Road** | | **918-456-9100** | |
| ☐ Amended return | City, town, or post office, state, and ZIP code | | G Gross receipts $ | **547,789.** |
| ☐ Applica-tion pending | **Tahlequah, OK 74464** | | | |

**F** Name and address of principal officer **Raymond H Jones**
**14100 North 477 Road, Tahlequah, OK 74464**

H(a) Is this a group return for affiliates? ☐ Yes ☒ No
H(b) Are all affiliates included? ☐ Yes ☐ No
If "No," attach a list (see instructions)

**I** Tax-exempt status: ☒ 501(c)(3) ☐ 501(c) ( ) ◄ (insert no.) ☐ 4947(a)(1) or ☐ 527

**J** Website: ► **None**

H(c) Group exemption number ►

**K** Form of organization: ☒ Corporation ☐ Trust ☐ Association ☐ Other ► **L** Year of formation: **2001** **M** State of legal domicile: **OK**

### Part I    Summary

| | | | | |
|---|---|---|---|---|
| Activities & Governance | 1 Briefly describe the organization's mission or most significant activities: **Provide drug and alcohol recovery services for non-violent offenders. This is the last step** | | | |
| | 2 Check this box ► ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets. | | | |
| | 3 Number of voting members of the governing body (Part VI, line 1a) | | 3 | 4 |
| | 4 Number of independent voting members of the governing body (Part VI, line 1b) | | 4 | 2 |
| | 5 Total number of individuals employed in calendar year 2012 (Part V, line 2a) | | 5 | 0 |
| | 6 Total number of volunteers (estimate if necessary) | | 6 | 0 |
| | 7a Total unrelated business revenue from Part VIII, column (C), line 12 | | 7a | 0. |
| | b Net unrelated business taxable income from Form 990-T, line 34 | | 7b | 224,097. |

| | | Prior Year | Current Year |
|---|---|---|---|
| Revenue | 8 Contributions and grants (Part VIII, line 1h) | 0. | 65. |
| | 9 Program service revenue (Part VIII, line 2g) | 820,158. | 547,724. |
| | 10 Investment income (Part VIII, column (A), lines 3, 4, and 7d) | 0. | 0. |
| | 11 Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 0. | 0. |
| | 12 Total revenue - add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 820,158. | 547,789. |
| Expenses | 13 Grants and similar amounts paid (Part IX, column (A), lines 1-3) | 10,600. | 14,050. |
| | 14 Benefits paid to or for members (Part IX, column (A), line 4) | 0. | 0. |
| | 15 Salaries, other compensation, employee benefits (Part IX, column (A), lines 5-10) | 304,533. | 405,827. |
| | 16a Professional fundraising fees (Part IX, column (A), line 11e) | 0. | 0. |
| | b Total fundraising expenses (Part IX, column (D), line 25) ► 0. | | |
| | 17 Other expenses (Part IX, column (A), lines 11a-11d, 11f-24e) | 674,690. | 557,844. |
| | 18 Total expenses Add lines 13-17 (must equal Part IX, column (A), line 25) | 989,823. | 977,721. |
| | 19 Revenue less expenses Subtract line 18 from line 12 | -169,665. | -429,932. |

| | | Beginning of Current Year | End of Year |
|---|---|---|---|
| Net Assets or Fund Balances | 20 Total assets (Part X, line 16) | 411,653. | 400,445. |
| | 21 Total liabilities (Part X, line 26) | 641,373. | 834,535. |
| | 22 Net assets or fund balances Subtract line 21 from line 20 | -229,720. | -434,090. |

### Part II    Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| Sign Here | ► *Raymond Jones* Signature of officer | | Date |
|---|---|---|---|
| | ► **Raymond Jones, President** Type or print name and title | | **July 16, 2014** |

| Paid Preparer Use Only | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | **Reece B. Morrel, Jr.** | *Reece B. Morrel, Jr.* | 07/16/14 | | **P00173422** |
| | Firm's name ► **Morrel Hicks Morrel, PC** | | | Firm's EIN ► **73-0971106** | |
| | Firm's address ► **3501 South Yale Avenue** **Tulsa, OK 74135-8014** | | | Phone no. **918-664-0800** | |

May the IRS discuss this return with the preparer shown above? (see instructions)    ☒ Yes  ☐ No

232001 12-10-12    LHA  **For Paperwork Reduction Act Notice, see the separate instructions.**    Form **990** (2012)

See Schedule O for Organization Mission Statement Continuation

SCANNED JUL 29 2014

Form 990 (2012)        D.A.R.P., Inc.                          73-1611805    Page **2**

| Part III | Statement of Program Service Accomplishments |

Check if Schedule O contains a response to any question in this Part III ...................... [X]

1   Briefly describe the organization's mission:

   **Provide drug and alcohol recovery services for non-violent offenders.**
   **This is the last step before entering the penal system. DARP has the**
   **capacity to assist both male and female clients and has served a total**
   **of 362 clients during this period. Over the last 11 years, this**

2   Did the organization undertake any significant program services during the year which were not listed on
    the prior Form 990 or 990-EZ? ............................................................................................ ☐ Yes [X] No
    If "Yes," describe these new services on Schedule O.

3   Did the organization cease conducting, or make significant changes in how it conducts, any program services? ☐ Yes [X] No
    If "Yes," describe these changes on Schedule O.

4   Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses.
    Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and
    revenue, if any, for each program service reported.

4a  (Code _____ ) (Expenses $        977,721.  including grants of $        14,050. ) (Revenue $        547,789. )
    **Provide drug and alcohol recovery services.**

4b  (Code _____ ) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

4c  (Code _____ ) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

4d  Other program services (Describe in Schedule O.)
    (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

4e  **Total program service expenses ▶**        977,721.

Form **990** (2012)

232002
12-10-12

Form 990 (2012)          **D.A,R,P., Inc.**                          73-1611805      Page **3**

| Part IV | Checklist of Required Schedules |
|---------|-------------------------------|

|  |  |  | Yes | No |
|---|---|---|---|---|
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* | 1 | X |  |
| 2 | Is the organization required to complete *Schedule B, Schedule of Contributors*? | 2 |  | X |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | 3 |  | X |
| 4 | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* | 4 |  | X |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* | 5 |  | X |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* | 6 |  | X |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* | 7 |  | X |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* | 8 |  | X |
| 9 | Did the organization report an amount in Part X, line 21, for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X, or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* | 9 |  | X |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi-endowments? *If "Yes," complete Schedule D, Part V* | 10 |  | X |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI* | 11a | X | |
| b | Did the organization report an amount for investments - other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* | 11b | | X |
| c | Did the organization report an amount for investments - program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* | 11c | | X |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* | 11d | | X |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | 11e | X | |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | 11f | | X |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* | 12a | | X |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | 12b | | X |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | 13 | | X |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? | 14a | | X |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* | 14b | | X |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or assistance to any organization or entity located outside the United States? *If "Yes," complete Schedule F, Parts II and IV* | 15 | | X |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or assistance to individuals located outside the United States? *If "Yes," complete Schedule F, Parts III and IV* | 16 | | X |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I* | 17 | | X |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* | 18 | | X |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* | 19 | | X |
| 20a | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* | 20a | | X |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | 20b | | |

Form **990** (2012)

21100716 785125 7480                     2012 03040 D.A.R.P., Inc.                     7480     1

Form 990 (2012)    **D.A.R.P., Inc.**    73-1611805    Page **4**

| Part IV | Checklist of Required Schedules *(continued)* | | | |
|---|---|---|---|---|
| | | | Yes | No |
| 21 | Did the organization report more than $5,000 of grants and other assistance to any government or organization in the United States on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | 21 | X | |
| 22 | Did the organization report more than $5,000 of grants and other assistance to individuals in the United States on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* | 22 | | X |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* | 23 | | X |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No", go to line 25* | 24a | | X |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | 24b | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | 24c | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | 24d | | |
| 25a | **Section 501(c)(3) and 501(c)(4) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* | 25a | | X |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* | 25b | | X |
| 26 | Was a loan to or by a current or former officer, director, trustee, key employee, highest compensated employee, or disqualified person outstanding as of the end of the organization's tax year? *If "Yes," complete Schedule L, Part II* | 26 | X | |
| 27 | Did the organization provide a grant or other assistance to an officer, director, trustee, key employee, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part III* | 27 | | X |
| 28 | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| a | A current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* | 28a | X | |
| b | A family member of a current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* | 28b | | X |
| c | An entity of which a current or former officer, director, trustee, or key employee (or a family member thereof) was an officer, director, trustee, or direct or indirect owner? *If "Yes," complete Schedule L, Part IV* | 28c | | X |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* | 29 | | X |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* | 30 | | X |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | 31 | | X |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* | 32 | | X |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301 7701-2 and 301 7701-3? *If "Yes," complete Schedule R, Part I* | 33 | | X |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* | 34 | | X |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | 35a | | X |
| b | If "Yes" to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* | 35b | | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* | 36 | | X |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | 37 | | X |
| 38 | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O | 38 | X | |

Form **990** (2012)

21100716 795125 7480                    2012 03040 D A R P   Inc                    7480    1

Form 990 (2012)  **D.A.R.P., Inc.**  73-1611805  Page **5**

| **Part V** | **Statements Regarding Other IRS Filings and Tax Compliance** |
|---|---|

Check if Schedule O contains a response to any question in this Part V ☐

|  |  |  | Yes | No |
|---|---|---|---|---|
| 1a | Enter the number reported in Box 3 of Form 1096. Enter -0- if not applicable | **1a** 0 | | |
| b | Enter the number of Forms W-2G included in line 1a. Enter -0- if not applicable | **1b** 0 | | |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | **1c** | | |
| 2a | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return | **2a** 0 | | |
| b | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? | **2b** | | |
| | **Note.** If the sum of lines 1a and 2a is greater than 250, you may be required to *e-file* (see instructions) | | | |
| 3a | Did the organization have unrelated business gross income of $1,000 or more during the year? | **3a** | X | |
| b | If "Yes," has it filed a Form 990-T for this year? If "No," provide an explanation in Schedule O | **3b** | X | |
| 4a | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? | **4a** | | X |
| b | If "Yes," enter the name of the foreign country ▶ _____ | | | |
| | See instructions for filing requirements for Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts. | | | |
| 5a | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? | **5a** | | X |
| b | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | **5b** | | X |
| c | If "Yes," to line 5a or 5b, did the organization file Form 8886-T? | **5c** | | |
| 6a | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? | **6a** | | X |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | **6b** | | |
| 7 | **Organizations that may receive deductible contributions under section 170(c).** | | | |
| a | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | **7a** | | X |
| b | If "Yes," did the organization notify the donor of the value of the goods or services provided? | **7b** | | |
| c | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? | **7c** | | X |
| d | If "Yes," indicate the number of Forms 8282 filed during the year | **7d** | | |
| e | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | **7e** | | |
| f | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? | **7f** | | |
| g | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | **7g** | | |
| h | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | **7h** | | |
| 8 | **Sponsoring organizations maintaining donor advised funds and section 509(a)(3) supporting organizations.** Did the supporting organization, or a donor advised fund maintained by a sponsoring organization, have excess business holdings at any time during the year? | **8** | | |
| 9 | **Sponsoring organizations maintaining donor advised funds.** | | | |
| a | Did the organization make any taxable distributions under section 4966? | **9a** | | |
| b | Did the organization make a distribution to a donor, donor advisor, or related person? | **9b** | | |
| 10 | **Section 501(c)(7) organizations. Enter:** | | | |
| a | Initiation fees and capital contributions included on Part VIII, line 12 | **10a** | | |
| b | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | **10b** | | |
| 11 | **Section 501(c)(12) organizations. Enter:** | | | |
| a | Gross income from members or shareholders | **11a** | | |
| b | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them.) | **11b** | | |
| 12a | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | **12a** | | |
| b | If "Yes," enter the amount of tax-exempt interest received or accrued during the year | **12b** | | |
| 13 | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | |
| a | Is the organization licensed to issue qualified health plans in more than one state? | **13a** | | |
| | **Note.** See the instructions for additional information the organization must report on Schedule O. | | | |
| b | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | **13b** | | |
| c | Enter the amount of reserves on hand | **13c** | | |
| 14a | Did the organization receive any payments for indoor tanning services during the tax year? | **14a** | | X |
| b | If "Yes," has it filed a Form 720 to report these payments? If "No," provide an explanation in Schedule O | **14b** | | |

Form **990** (2012)

232005
12-10-12

21100716 795125 7490          2012.03040 D.A.R.P., Inc.          7490___1

Form 990 (2012)  **D.A.R.P., Inc.**  73-1611805  Page **6**

| **Part VI** | **Governance, Management, and Disclosure** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to line 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.* |

Check if Schedule O contains a response to any question in this Part VI ........................................... ☒

## Section A. Governing Body and Management

|  |  | Yes | No |
|---|---|---|---|
| **1a** | Enter the number of voting members of the governing body at the end of the tax year ............ **1a** ⎸ 4 | | |
| | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | |
| **b** | Enter the number of voting members included in line 1a, above, who are independent ............ **1b** ⎸ 2 | | |
| **2** | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? ........................................ **2** | X | |
| **3** | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors, or trustees, or key employees to a management company or other person? ...... **3** | | X |
| **4** | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? ... **4** | | X |
| **5** | Did the organization become aware during the year of a significant diversion of the organization's assets? ...... **5** | | X |
| **6** | Did the organization have members or stockholders? ................................................ **6** | | X |
| **7a** | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? ............................................ **7a** | | X |
| **b** | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? ........................................ **7b** | | X |
| **8** | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | |
| **a** | The governing body? ................................................................ **8a** | X | |
| **b** | Each committee with authority to act on behalf of the governing body? ........................ **8b** | X | |
| **9** | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* ............ **9** | | X |

## Section B. Policies *(This Section B requests information about policies not required by the Internal Revenue Code )*

|  |  | Yes | No |
|---|---|---|---|
| **10a** | Did the organization have local chapters, branches, or affiliates? ........................ **10a** | | X |
| **b** | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? ...... **10b** | | |
| **11a** | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? **11a** | | X |
| **b** | Describe in Schedule O the process, if any, used by the organization to review this Form 990 | | |
| **12a** | Did the organization have a written conflict of interest policy? *If "No," go to line 13* .................. **12a** | | X |
| **b** | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? **12b** | | |
| **c** | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe in Schedule O how this was done* ........................................ **12c** | | |
| **13** | Did the organization have a written whistleblower policy? ................................ **13** | | X |
| **14** | Did the organization have a written document retention and destruction policy? .................. **14** | X | |
| **15** | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | |
| **a** | The organization's CEO, Executive Director, or top management official ........................ **15a** | X | |
| **b** | Other officers or key employees of the organization ................................ **15b** | X | |
| | If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions). | | |
| **16a** | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? ........................................ **16a** | | X |
| **b** | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? .............................. **16b** | | |

## Section C. Disclosure

**17** List the states with which a copy of this Form 990 is required to be filed ▶ OK

**18** Section 6104 requires an organization to make its Forms 1023 (or 1024 if applicable), 990, and 990-T (Section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply
☐ Own website    ☐ Another's website    ☒ Upon request    ☐ Other (*explain in Schedule O*)

**19** Describe in Schedule O whether (and if so, how), the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year

**20** State the name, physical address, and telephone number of the person who possesses the books and records of the organization ▶ _____
D.A.R.P., Inc. - 918-456-9100
14100 North 477 Road, Tahlequah, OK  74464

232006
12-10-12
Form **990** (2012)

6

21100716 785125 7480        2012 03040 D A R P  Inc        7480  1

Form 990 (2012)    D.A.R.P., Inc.    73-1611805    Page 7

| **Part VII** | **Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors** |
|---|---|

Check if Schedule O contains a response to any question in this Part VII ☐

**Section A.   Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

● List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.

● List all of the organization's **current** key employees, if any. See instructions for definition of "key employee."

● List the organization's five **current** highest compensated employees (other than an officer, director, trustee, or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations.

● List all of the organization's **former** officers, key employees, and highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.

● List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations

List persons in the following order: individual trustees or directors; institutional trustees; officers; key employees; highest compensated employees; and former such persons

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A)<br>Name and Title | (B)<br>Average hours per week<br>(list any hours for related organizations below line) | (C)<br>Position<br>(do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization<br>(W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations<br>(W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) Raymond H. Jones<br>President | 75.00 | | | | | | | 77,306. | 0. | 0. |
| (2) Lynn D. Jones<br>Vice-President | 75.00 | | | | | | | 61,367. | 0. | 0. |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

232007  12-10-12

Form **990** (2012)

7

21100716 785125 7480                    2012.03040 D.A.R.P., Inc.                    7480___1

Form 990 (2012)    **D.A.R,P., Inc.**    73-1611805    Page **8**

| Part VII | Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)* | | | | | | | | | | | |

| (A)<br>Name and title | (B)<br>Average hours per week<br>(list any hours for related organizations below line) | (C)<br>Position<br>(do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization<br>(W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations<br>(W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **1b** Sub-total | | | | | | | ▶ | 138,673. | 0. | 0. |
| **c** Total from continuation sheets to Part VII, Section A | | | | | | | ▶ | 0. | 0. | 0. |
| **d** Total (add lines 1b and 1c) | | | | | | | ▶ | 138,673. | 0. | 0. |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶    0

| | | Yes | No |
|---|---|---|---|
| **3** Did the organization list any *former* officer, director, or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* | **3** | | X |
| **4** For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* | **4** | | X |
| **5** Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* | **5** | | X |

**Section B. Independent Contractors**

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year

| (A)<br>Name and business address    NONE | (B)<br>Description of services | (C)<br>Compensation |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶    0

Form **990** (2012)

232008
12-10-12

─────────8─────────

21100716 785125 7480                 2012 03040 D A R P  Inc                 7480___1

Form 990 (2012)        D.A.R.P., Inc.                           73-1611805    Page **9**

| **Part VIII** | Statement of Revenue |

Check if Schedule O contains a response to any question in this Part VIII ☐

| | | | | **(A)** Total revenue | **(B)** Related or exempt function revenue | **(C)** Unrelated business revenue | **(D)** Revenue excluded from tax under sections 512, 513, or 514 |
|---|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | **1 a** Federated campaigns | 1a | | | | | |
| | **b** Membership dues | 1b | | | | | |
| | **c** Fundraising events | 1c | | | | | |
| | **d** Related organizations | 1d | | | | | |
| | **e** Government grants (contributions) | 1e | | | | | |
| | **f** All other contributions, gifts, grants, and similar amounts not included above | 1f | 65. | | | | |
| | **g** Noncash contributions included in lines 1a-1f $ | | | | | | |
| | **h Total.** Add lines 1a-1f ▶ | | | 65. | | | |
| **Program Service Revenue** | **2 a** Drug & Alcohol Recover | Business Code 624310 | | 547,724. | 547,724. | | |
| | **b** | | | | | | |
| | **c** | | | | | | |
| | **d** | | | | | | |
| | **e** | | | | | | |
| | **f** All other program service revenue | | | | | | |
| | **g Total.** Add lines 2a-2f ▶ | | | 547,724. | | | |
| **Other Revenue** | **3** Investment income (including dividends, interest, and other similar amounts) ▶ | | | | | | |
| | **4** Income from investment of tax-exempt bond proceeds ▶ | | | | | | |
| | **5** Royalties ▶ | | | | | | |
| | | (i) Real | (ii) Personal | | | | |
| | **6 a** Gross rents | | | | | | |
| | **b** Less: rental expenses | | | | | | |
| | **c** Rental income or (loss) | | | | | | |
| | **d** Net rental income or (loss) ▶ | | | | | | |
| | **7 a** Gross amount from sales of assets other than inventory | (i) Securities | (ii) Other | | | | |
| | **b** Less: cost or other basis and sales expenses | | | | | | |
| | **c** Gain or (loss) | | | | | | |
| | **d** Net gain or (loss) ▶ | | | | | | |
| | **8 a** Gross income from fundraising events (not including $ _____ of contributions reported on line 1c) See Part IV, line 18 | a | | | | | |
| | **b** Less: direct expenses | b | | | | | |
| | **c** Net income or (loss) from fundraising events ▶ | | | | | | |
| | **9 a** Gross income from gaming activities. See Part IV, line 19 | a | | | | | |
| | **b** Less: direct expenses | b | | | | | |
| | **c** Net income or (loss) from gaming activities ▶ | | | | | | |
| | **10 a** Gross sales of inventory, less returns and allowances | a | | | | | |
| | **b** Less: cost of goods sold | b | | | | | |
| | **c** Net income or (loss) from sales of inventory ▶ | | | | | | |
| | Miscellaneous Revenue | Business Code | | | | | |
| | **11 a** | | | | | | |
| | **b** | | | | | | |
| | **c** | | | | | | |
| | **d** All other revenue | | | | | | |
| | **e Total.** Add lines 11a-11d ▶ | | | | | | |
| | **12 Total revenue.** See instructions. ▶ | | | 547,789. | 547,724. | 0. | 0. |

232009
12-10-12

Form **990** (2012)

21100716 785125 7490          2012.03040 D.A.R.P., Inc.          7490___1

Form 990 (2012)      D.A.R.P., Inc.                          73-1611805   Page **10**

| Part IX | Statement of Functional Expenses |

*Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).*

Check if Schedule O contains a response to any question in this Part IX ........................................ [X]

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | (A) Total expenses | (B) Program service expenses | (C) Management and general expenses | (D) Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to governments and organizations in the United States. See Part IV, line 21 | 14,050. | 14,050. | | |
| **2** Grants and other assistance to individuals in the United States. See Part IV, line 22 | | | | |
| **3** Grants and other assistance to governments, organizations, and individuals outside the United States  See Part IV, lines 15 and 16 | . | | | |
| **4** Benefits paid to or for members | | | | |
| **5** Compensation of current officers, directors, trustees, and key employees | 25,168. | 25,168. | | |
| **6** Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) | | | | |
| **7** Other salaries and wages | 380,659. | 380,659. | | |
| **8** Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) | | | | |
| **9** Other employee benefits | | | | |
| **10** Payroll taxes | | | | |
| **11** Fees for services (non-employees): | | | | |
| **a** Management | | | | |
| **b** Legal | 10,445. | 10,445. | | |
| **c** Accounting | 1,180. | 1,180. | | |
| **d** Lobbying | | | | |
| **e** Professional fundraising services. See Part IV, line 17 | | | | |
| **f** Investment management fees | | | | |
| **g** Other. (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Sch O.) | 15,820. | 15,820. | | |
| **12** Advertising and promotion | | | | |
| **13** Office expenses | | | | |
| **14** Information technology | | | | |
| **15** Royalties | | | | |
| **16** Occupancy | | | | |
| **17** Travel | | | | |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials | | | | |
| **19** Conferences, conventions, and meetings | | | | |
| **20** Interest | 5,222. | 5,222. | | |
| **21** Payments to affiliates | | | | |
| **22** Depreciation, depletion, and amortization | 45,053. | 45,053. | | |
| **23** Insurance | 25,870. | 25,870. | | |
| **24** Other expenses. Itemize expenses not covered above. (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| **a** Auto | 122,734. | 122,734. | | |
| **b** General Expense for Dec | 75,170. | 75,170. | | |
| **c** Groceries | 55,302. | 55,302. | | |
| **d** Graduation Stipend | 52,732. | 52,732. | | |
| **e** All other expenses   See Sch O | 148,316. | 148,316. | | |
| **25** Total functional expenses. Add lines 1 through 24e | 977,721. | 977,721. | 0. | 0. |
| **26** Joint costs. Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶ ☐ if following SOP 98-2 (ASC 958-720) | | | | |

232010  12-10-12

Form **990** (2012)

21100716  785125  7480              2012 03040 D A R P   Inc                          7480    1

Form 990 (2012)        D.A.R.P., Inc.                                    73-1611805   Page **11**

| Part X | Balance Sheet |
|---|---|

Check if Schedule O contains a response to any question in this Part X ☐

<table>
<tr><th colspan="2"></th><th></th><th colspan="2">(A)<br>Beginning of year</th><th></th><th>(B)<br>End of year</th></tr>
<tr><td rowspan="16">Assets</td><td>1</td><td>Cash · non-interest-bearing</td><td>68,585.</td><td>1</td><td>108,249.</td></tr>
<tr><td>2</td><td>Savings and temporary cash investments</td><td></td><td>2</td><td></td></tr>
<tr><td>3</td><td>Pledges and grants receivable, net</td><td></td><td>3</td><td></td></tr>
<tr><td>4</td><td>Accounts receivable, net</td><td></td><td>4</td><td></td></tr>
<tr><td>5</td><td>Loans and other receivables from current and former officers, directors, trustees, key employees, and highest compensated employees. Complete Part II of Schedule L</td><td></td><td>5</td><td></td></tr>
<tr><td>6</td><td>Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), persons described in section 4958(c)(3)(B), and contributing employers and sponsoring organizations of section 501(c)(9) voluntary employees' beneficiary organizations (see instr) Complete Part II of Sch L</td><td></td><td>6</td><td></td></tr>
<tr><td>7</td><td>Notes and loans receivable, net</td><td></td><td>7</td><td></td></tr>
<tr><td>8</td><td>Inventories for sale or use</td><td></td><td>8</td><td></td></tr>
<tr><td>9</td><td>Prepaid expenses and deferred charges</td><td></td><td>9</td><td></td></tr>
<tr><td>10a</td><td>Land, buildings, and equipment cost or other basis. Complete Part VI of Schedule D  **10a** 1,742,002.</td><td></td><td></td><td></td></tr>
<tr><td>b</td><td>Less accumulated depreciation  **10b** 1,449,806.</td><td>343,068.</td><td>10c</td><td>292,196.</td></tr>
<tr><td>11</td><td>Investments · publicly traded securities</td><td></td><td>11</td><td></td></tr>
<tr><td>12</td><td>Investments · other securities See Part IV, line 11</td><td></td><td>12</td><td></td></tr>
<tr><td>13</td><td>Investments · program-related. See Part IV, line 11</td><td></td><td>13</td><td></td></tr>
<tr><td>14</td><td>Intangible assets</td><td></td><td>14</td><td></td></tr>
<tr><td>15</td><td>Other assets. See Part IV, line 11</td><td></td><td>15</td><td></td></tr>
<tr><td></td><td>16</td><td>**Total assets.** Add lines 1 through 15 (must equal line 34)</td><td>411,653.</td><td>16</td><td>400,445.</td></tr>
<tr><td rowspan="10">Liabilities</td><td>17</td><td>Accounts payable and accrued expenses</td><td></td><td>17</td><td></td></tr>
<tr><td>18</td><td>Grants payable</td><td></td><td>18</td><td></td></tr>
<tr><td>19</td><td>Deferred revenue</td><td></td><td>19</td><td></td></tr>
<tr><td>20</td><td>Tax-exempt bond liabilities</td><td></td><td>20</td><td></td></tr>
<tr><td>21</td><td>Escrow or custodial account liability Complete Part IV of Schedule D</td><td></td><td>21</td><td></td></tr>
<tr><td>22</td><td>Loans and other payables to current and former officers, directors, trustees, key employees, highest compensated employees, and disqualified persons Complete Part II of Schedule L</td><td>247,354.</td><td>22</td><td>266,466.</td></tr>
<tr><td>23</td><td>Secured mortgages and notes payable to unrelated third parties</td><td>383,828.</td><td>23</td><td>559,934.</td></tr>
<tr><td>24</td><td>Unsecured notes and loans payable to unrelated third parties</td><td></td><td>24</td><td></td></tr>
<tr><td>25</td><td>Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17-24) Complete Part X of Schedule D</td><td>10,191.</td><td>25</td><td>8,135.</td></tr>
<tr><td>26</td><td>**Total liabilities.** Add lines 17 through 25</td><td>641,373.</td><td>26</td><td>834,535.</td></tr>
<tr><td rowspan="9">Net Assets or Fund Balances</td><td colspan="2">Organizations that follow SFAS 117 (ASC 958), check here ▶ ☐ and complete lines 27 through 29, and lines 33 and 34.</td><td></td><td></td><td></td></tr>
<tr><td>27</td><td>Unrestricted net assets</td><td></td><td>27</td><td></td></tr>
<tr><td>28</td><td>Temporarily restricted net assets</td><td></td><td>28</td><td></td></tr>
<tr><td>29</td><td>Permanently restricted net assets</td><td></td><td>29</td><td></td></tr>
<tr><td colspan="2">Organizations that do not follow SFAS 117 (ASC 958), check here ▶ ☒ and complete lines 30 through 34.</td><td></td><td></td><td></td></tr>
<tr><td>30</td><td>Capital stock or trust principal, or current funds</td><td>0.</td><td>30</td><td>0.</td></tr>
<tr><td>31</td><td>Paid-in or capital surplus, or land, building, or equipment fund</td><td>0.</td><td>31</td><td>0.</td></tr>
<tr><td>32</td><td>Retained earnings, endowment, accumulated income, or other funds</td><td>-229,720.</td><td>32</td><td>-434,090.</td></tr>
<tr><td>33</td><td>Total net assets or fund balances</td><td>-229,720.</td><td>33</td><td>-434,090.</td></tr>
<tr><td>34</td><td>Total liabilities and net assets/fund balances</td><td>411,653.</td><td>34</td><td>400,445.</td></tr>
</table>

Form **990** (2012)

232011
12-10-12

21100716 785125 7480              2012 03040 D A R P Inc              7480    1

Form 990 (2012)    **D.A.R.P., Inc.**    73-1611805    Page **12**

| Part XI | Reconciliation of Net Assets |
|---|---|

Check if Schedule O contains a response to any question in this Part XI ☐

| | | | |
|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) | **1** | 547,789. |
| 2 | Total expenses (must equal Part IX, column (A), line 25) | **2** | 977,721. |
| 3 | Revenue less expenses. Subtract line 2 from line 1 | **3** | -429,932. |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 33, column (A)) | **4** | -229,720. |
| 5 | Net unrealized gains (losses) on investments | **5** | |
| 6 | Donated services and use of facilities | **6** | |
| 7 | Investment expenses | **7** | |
| 8 | Prior period adjustments | **8** | 225,562. |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) | **9** | 0. |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 33, column (B)) | **10** | -434,090. |

| Part XII | Financial Statements and Reporting |
|---|---|

Check if Schedule O contains a response to any question in this Part XII ☐

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990:  ☒ Cash  ☐ Accrual  ☐ Other _____ | | | |
| | If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O | | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? | **2a** | | X |
| | If "Yes," check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both: | | | |
| | ☐ Separate basis  ☐ Consolidated basis  ☐ Both consolidated and separate basis | | | |
| b | Were the organization's financial statements audited by an independent accountant? | **2b** | | X |
| | If "Yes," check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both. | | | |
| | ☐ Separate basis  ☐ Consolidated basis  ☐ Both consolidated and separate basis | | | |
| c | If "Yes" to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | **2c** | | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O | | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? | **3a** | | X |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits | **3b** | | |

Form **990** (2012)

232012
12-10-12

21100716 785125 7480                    2012.03040 D.A.R.P., Inc.                    7480    1

**SCHEDULE A**
(Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

# Public Charity Status and Public Support

Complete if the organization is a section 501(c)(3) organization or a section
4947(a)(1) nonexempt charitable trust.
▶ Attach to Form 990 or Form 990-EZ. ▶ See separate instructions.

OMB No 1545-0047

**2012**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| D.A.R.P., Inc. | 73-1611805 |

| Part I | Reason for Public Charity Status (All organizations must complete this part.) See instructions. |
|---|---|

The organization is not a private foundation because it is (For lines 1 through 11, check only one box.)

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E.)

3 ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state: _____

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☐ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

9 ☒ An organization that normally receives (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions - subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

10 ☐ An organization organized and operated exclusively to test for public safety See **section 509(a)(4).**

11 ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in section 509(a)(1) or section 509(a)(2) See **section 509(a)(3).** Check the box that describes the type of supporting organization and complete lines 11e through 11h

    a ☐ Type I      b ☐ Type II      c ☐ Type III - Functionally integrated      d ☐ Type III - Non-functionally integrated

e ☐ By checking this box, I certify that the organization is not controlled directly or indirectly by one or more disqualified persons other than foundation managers and other than one or more publicly supported organizations described in section 509(a)(1) or section 509(a)(2).

f    If the organization received a written determination from the IRS that it is a Type I, Type II, or Type III supporting organization, check this box        ☐

g    Since August 17, 2006, has the organization accepted any gift or contribution from any of the following persons?

| | | Yes | No |
|---|---|---|---|
| (i) | A person who directly or indirectly controls, either alone or together with persons described in (ii) and (iii) below, the governing body of the supported organization? **11g(i)** | | |
| (ii) | A family member of a person described in (i) above? **11g(ii)** | | |
| (iii) | A 35% controlled entity of a person described in (i) or (ii) above? **11g(iii)** | | |

h    Provide the following information about the supported organization(s)

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1-9 above or IRC section (see instructions)) | (iv) Is the organization in col. (i) listed in your governing document? | | (v) Did you notify the organization in col. (i) of your support? | | (vi) Is the organization in col. (i) organized in the U.S.? | | (vii) Amount of monetary support |
|---|---|---|---|---|---|---|---|---|---|
| | | | Yes | No | Yes | No | Yes | No | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

**Total**

LHA **For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.**

Schedule A (Form 990 or 990-EZ) 2012

232021
12-04-12

21100716 785125 7480 2012 03040 D.A.R.P., Inc. 7480 1

Schedule A (Form 990 or 990-EZ) 2012                                                                                      Page **2**

| **Part II** | **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)** |

(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III If the organization fails to qualify under the tests listed below, please complete Part III )

## Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2008 | (b) 2009 | (c) 2010 | (d) 2011 | (e) 2012 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | | | | | | |
| 2 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| 3 The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 4 **Total.** Add lines 1 through 3 | | | | | | |
| 5 The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | |
| 6 **Public support.** Subtract line 5 from line 4 | | | | | | |

## Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2008 | (b) 2009 | (c) 2010 | (d) 2011 | (e) 2012 | (f) Total |
|---|---|---|---|---|---|---|
| 7 Amounts from line 4 | | | | | | |
| 8 Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | | | | | | |
| 9 Net income from unrelated business activities, whether or not the business is regularly carried on | | | | | | |
| 10 Other income Do not include gain or loss from the sale of capital assets (Explain in Part IV ) | | | | | | |
| 11 **Total support.** Add lines 7 through 10 | | | | | | |
| 12 Gross receipts from related activities, etc. (see instructions) | | | | | **12** | |

13 **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** ............................................................................................................... ▶ ☐

## Section C. Computation of Public Support Percentage

| | | | |
|---|---|---|---|
| 14 Public support percentage for 2012 (line 6, column (f) divided by line 11, column (f)) | | **14** | % |
| 15 Public support percentage from 2011 Schedule A, Part II, line 14 | | **15** | % |

16a **33 1/3% support test - 2012.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization ........................................................................ ▶ ☐

 b **33 1/3% support test - 2011.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization ............................................................ ▶ ☐

17a **10% -facts-and-circumstances test - 2012.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part IV how the organization meets the "facts-and-circumstances" test  The organization qualifies as a publicly supported organization ......................... ▶ ☐

 b **10% -facts-and-circumstances test - 2011.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part IV how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization .................... ▶ ☐

18 **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions ......... ▶ ☐

**Schedule A (Form 990 or 990-EZ) 2012**

21100716 785125 7480                    2012 03040 D A B B  Inc                      7480     1

Schedule A (Form 990 or 990-EZ) 2012 D.A.R.P., Inc.                                      73-1611805  Page 3

**Part III  Support Schedule for Organizations Described in Section 509(a)(2)**

(Complete only if you checked the box on line 9 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

## Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2008 | (b) 2009 | (c) 2010 | (d) 2011 | (e) 2012 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received (Do not include any "unusual grants") | | | | | | |
| 2 Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | 1,424,011. | 950,614. | 951,076. | | | 3,325,701. |
| 3 Gross receipts from activities that are not an unrelated trade or business under section 513 | | | | | | |
| 4 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| 5 The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 6 Total. Add lines 1 through 5 | 1,424,011. | 950,614. | 951,076. | | | 3,325,701. |
| 7a Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | 0. |
| b Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year | | | | | | 0. |
| c Add lines 7a and 7b | | | | | | 0. |
| 8 Public support (Subtract line 7c from line 6) | | | | | | 3,325,701. |

## Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2008 | (b) 2009 | (c) 2010 | (d) 2011 | (e) 2012 | (f) Total |
|---|---|---|---|---|---|---|
| 9 Amounts from line 6 | 1,424,011. | 950,614. | 951,076. | | | 3,325,701. |
| 10a Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | | | | | | |
| b Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975 | | | | | | |
| c Add lines 10a and 10b | | | | | | |
| 11 Net income from unrelated business activities not included in line 10b, whether or not the business is regularly carried on | | | | | | |
| 12 Other income Do not include gain or loss from the sale of capital assets (Explain in Part IV) | | | | | | |
| 13 Total support. (Add lines 9, 10c, 11, and 12) | 1,424,011. | 950,614. | 951,076. | | | 3,325,701. |

14 First five years. If the Form 990 is for the organization's first, second, third, fourth, or fifth year as a section 501(c)(3) organization, check this box and stop here ▶ ☐

## Section C. Computation of Public Support Percentage

| | | | |
|---|---|---|---|
| 15 Public support percentage for 2012 (line 8, column (f) divided by line 13, column (f)) | 15 | 100.00 | % |
| 16 Public support percentage from 2011 Schedule A, Part III, line 15 | 16 | 100.00 | % |

## Section D. Computation of Investment Income Percentage

| | | | |
|---|---|---|---|
| 17 Investment income percentage for 2012 (line 10c, column (f) divided by line 13, column (f)) | 17 | .00 | % |
| 18 Investment income percentage from 2011 Schedule A, Part III, line 17 | 18 | | % |

19a 33 1/3% support tests - 2012. If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and stop here. The organization qualifies as a publicly supported organization ▶ ☒

b 33 1/3% support tests - 2011. If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3%, and line 18 is not more than 33 1/3%, check this box and stop here. The organization qualifies as a publicly supported organization ▶ ☐

20 Private foundation. If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions ▶ ☐

232023 12-04-12                                                    Schedule A (Form 990 or 990-EZ) 2012

15

| SCHEDULE D | Supplemental Financial Statements | OMB No 1545-0047 |
|---|---|---|
| **(Form 990)** | ▶ Complete if the organization answered "Yes," to Form 990, Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b. | **2012** |
| Department of the Treasury Internal Revenue Service | ▶ Attach to Form 990. ▶ See separate instructions. | Open to Public Inspection |

| Name of the organization | Employer identification number |
|---|---|
| D.A.R.P., Inc. | 73-1611805 |

**Part I**  Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts. Complete if the organization answered "Yes" to Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year | | |
| 2 | Aggregate contributions to (during year) | | |
| 3 | Aggregate grants from (during year) | | |
| 4 | Aggregate value at end of year | | |

5   Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control?   ☐ Yes   ☐ No

6   Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit?   ☐ Yes   ☐ No

**Part II**  **Conservation Easements.** Complete if the organization answered "Yes" to Form 990, Part IV, line 7

1   Purpose(s) of conservation easements held by the organization (check all that apply).
☐ Preservation of land for public use (e g , recreation or education)   ☐ Preservation of an historically important land area
☐ Protection of natural habitat   ☐ Preservation of a certified historic structure
☐ Preservation of open space

2   Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

| | | Held at the End of the Tax Year |
|---|---|---|
| a | Total number of conservation easements | **2a** |
| b | Total acreage restricted by conservation easements | **2b** |
| c | Number of conservation easements on a certified historic structure included in (a) | **2c** |
| d | Number of conservation easements included in (c) acquired after 8/17/06, and not on a historic structure listed in the National Register | **2d** |

3   Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶ _____

4   Number of states where property subject to conservation easement is located ▶ _____

5   Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds?   ☐ Yes   ☐ No

6   Staff and volunteer hours devoted to monitoring, inspecting, and enforcing conservation easements during the year ▶ _____

7   Amount of expenses incurred in monitoring, inspecting, and enforcing conservation easements during the year ▶ $ _____

8   Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)?   ☐ Yes   ☐ No

9   In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements

**Part III**  **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.**
Complete if the organization answered "Yes" to Form 990, Part IV, line 8

1a   If the organization elected, as permitted under SFAS 116 (ASC 958), not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b   If the organization elected, as permitted under SFAS 116 (ASC 958), to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items:

(i)   Revenues included in Form 990, Part VIII, line 1   ▶ $ _____

(ii)   Assets included in Form 990, Part X   ▶ $ _____

2   If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under SFAS 116 (ASC 958) relating to these items.

a   Revenues included in Form 990, Part VIII, line 1   ▶ $ _____

b   Assets included in Form 990, Part X   ▶ $ _____

LHA  **For Paperwork Reduction Act Notice, see the Instructions for Form 990.**   Schedule D (Form 990) 2012

232051 12-10-12

21100716 785125 7490                    2012 03040 D.A.R.P., Inc.                    7490    1

Schedule D (Form 990) 2012     **D.A.R.P., Inc.**                     73-1611805    Page **2**

| Part III | Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets(continued) |
|---|---|

3    Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply)

a  ☐  Public exhibition                              d  ☐  Loan or exchange programs

b  ☐  Scholarly research                             e  ☐  Other _____

c  ☐  Preservation for future generations

4    Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

5    During the year, did the organization solicit or receive donations of art, historical treasures, or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection?    ☐ **Yes**    ☐ **No**

| Part IV | Escrow and Custodial Arrangements. Complete if the organization answered "Yes" to Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21 |
|---|---|

1a  Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X?    ☐ Yes    ☐ No

b  If "Yes," explain the arrangement in Part XIII and complete the following table:

|  | | Amount |
|---|---|---|
| c  Beginning balance | 1c | |
| d  Additions during the year | 1d | |
| e  Distributions during the year | 1e | |
| f  Ending balance | 1f | |

2a  Did the organization include an amount on Form 990, Part X, line 21?    ☐ Yes    ☐ No

b  If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII    ☐

| Part V | Endowment Funds. Complete if the organization answered "Yes" to Form 990, Part IV, line 10. |
|---|---|

| | (a) Current year | (b) Prior year | (c) Two years back | (d) Three years back | (e) Four years back |
|---|---|---|---|---|---|
| 1a  Beginning of year balance | | | | | |
| b  Contributions | | | | | |
| c  Net investment earnings, gains, and losses | | | | | |
| d  Grants or scholarships | | | | | |
| e  Other expenditures for facilities and programs | | | | | |
| f  Administrative expenses | | | | | |
| g  End of year balance | | | | | |

2    Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

a  Board designated or quasi-endowment ▶ _____ %

b  Permanent endowment ▶ _____ %

c  Temporarily restricted endowment ▶ _____ %

The percentages in lines 2a, 2b, and 2c should equal 100%.

3a  Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | Yes | No |
|---|---|---|---|
| (i)  unrelated organizations | 3a(i) | | |
| (ii)  related organizations | 3a(ii) | | |
| b  If "Yes" to 3a(ii), are the related organizations listed as required on Schedule R? | 3b | | |

4    Describe in Part XIII the intended uses of the organization's endowment funds.

| Part VI | Land, Buildings, and Equipment. See Form 990, Part X, line 10 |
|---|---|

| Description of property | (a) Cost or other basis (investment) | (b) Cost or other basis (other) | (c) Accumulated depreciation | (d) Book value |
|---|---|---|---|---|
| 1a  Land | | 37,300. | | 37,300. |
| b  Buildings | | 961,516. | 744,723. | 216,793. |
| c  Leasehold improvements | | 363,555. | 325,463. | 38,092. |
| d  Equipment | | 354,236. | 354,225. | 11. |
| e  Other | | 25,395. | 25,395. | 0. |
| Total. Add lines 1a through 1e (Column (d) must equal Form 990, Part X, column (B), line 10(c) ) ............  ▶ | | | | 292,196. |

Schedule D (Form 990) 2012

232052
12-10-12

21100716 785125 7490                    2012.03040 D.A.R.P., Inc.                    7490____1

Schedule D (Form 990) 2012    **D.A.R.P., Inc.**                73-1611805   Page **3**

| **Part VII** | **Investments - Other Securities.** See Form 990, Part X, line 12 | | |
|---|---|---|---|
| **(a)** Description of security or category (including name of security) | **(b)** Book value | **(c)** Method of valuation. Cost or end-of-year market value | |
| (1) Financial derivatives | | | |
| (2) Closely-held equity interests | | | |
| (3) Other | | | |
| (A) | | | |
| (B) | | | |
| (C) | | | |
| (D) | | | |
| (E) | | | |
| (F) | | | |
| (G) | | | |
| (H) | | | |
| (I) | | | |
| Total. (Col. (b) must equal Form 990, Part X, col. (B) line 12.) ▶ | | | |

| **Part VIII** | **Investments - Program Related.** See Form 990, Part X, line 13. | | |
|---|---|---|---|
| **(a)** Description of investment type | **(b)** Book value | **(c)** Method of valuation. Cost or end-of-year market value | |
| (1) | | | |
| (2) | | | |
| (3) | | | |
| (4) | | | |
| (5) | | | |
| (6) | | | |
| (7) | | | |
| (8) | | | |
| (9) | | | |
| (10) | | | |
| Total. (Col. (b) must equal Form 990, Part X, col. (B) line 13.) ▶ | | | |

| **Part IX** | **Other Assets.** See Form 990, Part X, line 15. | |
|---|---|---|
| **(a)** Description | | **(b)** Book value |
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| (10) | | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 15.) ▶ | | |

| **Part X** | **Other Liabilities.** See Form 990, Part X, line 25 | |
|---|---|---|
| **1.** | **(a)** Description of liability | **(b)** Book value |
| (1) Federal income taxes | | |
| (2) Accrued Payroll Liabilities | | 8,135. |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| (10) | | |
| (11) | | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 25.) ▶ | | 8,135. |

**2.** FIN 48 (ASC 740) Footnote In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740) Check here if the text of the footnote has been provided in Part XIII ☐

232053
12-10-12

Schedule D (Form 990) 2012

21100716  795125  7480            2012 03040 D A R P  Inc            7480      1

Schedule D (Form 990) 2012     **D.A.R,P., Inc.**                              73-1611805   Page **4**

| Part XI | Reconciliation of Revenue per Audited Financial Statements With Revenue per Return |
|---|---|

| | | | |
|---|---|---|---|
| 1 | Total revenue, gains, and other support per audited financial statements | **1** | |
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12 | | |
| a | Net unrealized gains on investments | **2a** | |
| b | Donated services and use of facilities | **2b** | |
| c | Recoveries of prior year grants | **2c** | |
| d | Other (Describe in Part XIII.) | **2d** | |
| e | Add lines **2a** through **2d** | **2e** | |
| 3 | Subtract line **2e** from line **1** | **3** | |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line 1. | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | **4a** | |
| b | Other (Describe in Part XIII ) | **4b** | |
| c | Add lines **4a** and **4b** | **4c** | |
| 5 | Total revenue  Add lines **3** and **4c.** *(This must equal Form 990, Part I, line 12.)* | **5** | |

| Part XII | Reconciliation of Expenses per Audited Financial Statements With Expenses per Return |
|---|---|

| | | | |
|---|---|---|---|
| 1 | Total expenses and losses per audited financial statements | **1** | |
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25 | | |
| a | Donated services and use of facilities | **2a** | |
| b | Prior year adjustments | **2b** | |
| c | Other losses | **2c** | |
| d | Other (Describe in Part XIII ) | **2d** | |
| e | Add lines **2a** through **2d** | **2e** | |
| 3 | Subtract line **2e** from line **1** | **3** | |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line 1 | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | **4a** | |
| b | Other (Describe in Part XIII ) | **4b** | |
| c | Add lines **4a** and **4b** | **4c** | |
| 5 | Total expenses. Add lines **3** and **4c.** *(This must equal Form 990, Part I, line 18 )* | **5** | |

| Part XIII | Supplemental Information |
|---|---|

Complete this part to provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4, Part IV, lines 1b and 2b, Part V, line 4, Part X, line 2, Part XI, lines 2d and 4b, and Part XII, lines 2d and 4b  Also complete this part to provide any additional information.

_____

_____

_____

_____

_____

_____

_____

_____

**Schedule D (Form 990) 2012**

232054
12-10-12

21100716  795125  7480              2012 03040 D A R P   Inc              7480     1

**SCHEDULE I (Form 990)**

Department of the Treasury
Internal Revenue Service

**Grants and Other Assistance to Organizations, Governments, and Individuals in the United States**

Complete if the organization answered "Yes" to Form 990, Part IV, line 21 or 22.

▶ Attach to Form 990.

OMB No. 1545-0047

**2012**

Open to Public Inspection

Name of the organization: **D.A.R.P., Inc.**

Employer identification number: **73-1611805**

**Part I** General Information on Grants and Assistance

1  Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? ........ [X] Yes [ ] No

2  Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

**Part II** Grants and Other Assistance to Governments and Organizations in the United States. Complete if the organization answered "Yes" to Form 990, Part IV, line 21, for any recipient that received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 (a) Name and address of organization or government | (b) EIN | (c) IRC section if applicable | (d) Amount of cash grant | (e) Amount of non-cash assistance | (f) Method of valuation (book, FMV, appraisal, other) | (g) Description of non-cash assistance | (h) Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|
| Victorious Life World Outreach 24389 Highway 82 Park Hill, OK 74451 | 73-1565829 | | 0. | 0. | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

2  Enter total number of section 501(c)(3) and government organizations listed in the line 1 table ........ ▶
3  Enter total number of other organizations listed in the line 1 table ........ ▶

**LHA   For Paperwork Reduction Act Notice, see the Instructions for Form 990.**

Schedule I (Form 990) (2012)

232101 12-18-12

20

Schedule I (Form 990) (2012)    D.A.R.P., Inc.    73-1611805    Page **2**

**Part III** | Grants and Other Assistance to Individuals in the United States. Complete if the organization answered "Yes" to Form 990, Part IV, line 22
Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Number of recipients | (c) Amount of cash grant | (d) Amount of non-cash assistance | (e) Method of valuation (book, FMV, appraisal, other) | (f) Description of non-cash assistance |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Part IV** | **Supplemental Information.** Complete this part to provide the information required in Part I, line 2, Part III, column (b), and any other additional information.

Schedule I, Part I, Line 2: Tithes and offerings are given to a local

congregation where many of the organization's clients regularly attend.

232102  12-18-12

21

Schedule I (Form 990) (2012)

| SCHEDULE L | **Transactions With Interested Persons** | OMB No 1545-0047 |
|---|---|---|
| (Form 990 or 990-EZ) | ► Complete if the organization answered "Yes" on Form 990, Part IV, line 25a, 25b, 26, 27, 28a, 28b, or 28c, or Form 990-EZ, Part V, line 38a or 40b. | **2012** |
| Department of the Treasury Internal Revenue Service | ► Attach to Form 990 or Form 990-EZ. ► See separate instructions. | Open To Public Inspection |

| Name of the organization | Employer identification number |
|---|---|
| D.A.R.P., Inc. | 73-1611805 |

**Part I** **Excess Benefit Transactions** (section 501(c)(3) and section 501(c)(4) organizations only)

Complete if the organization answered "Yes" on Form 990, Part IV, line 25a or 25b, or Form 990-EZ, Part V, line 40b.

| 1 (a) Name of disqualified person | (b) Relationship between disqualified person and organization | (c) Description of transaction | (d) Corrected? | |
|---|---|---|---|---|
| | | | Yes | No |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

2 Enter the amount of tax incurred by the organization managers or disqualified persons during the year under section 4958 ► $ _____

3 Enter the amount of tax, if any, on line 2, above, reimbursed by the organization ► $ _____

**Part II** **Loans to and/or From Interested Persons.**

Complete if the organization answered "Yes" on Form 990-EZ, Part V, line 38a or Form 990, Part IV, line 26; or if the organization reported an amount on Form 990, Part X, line 5, 6, or 22

| (a) Name of interested person | (b) Relationship with organization | (c) Purpose of loan | (d) Loan to or from the organization? | | (e) Original principal amount | (f) Balance due | (g) In default? | | (h) Approved by board or committee? | | (i) Written agreement? | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | To | From | | | Yes | No | Yes | No | Yes | No |
| Raymond H Jones | | To provi | X | | 155,989. | 266,466. | | X | X | | X | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

Total ► $ 266,466.

**Part III** **Grants or Assistance Benefiting Interested Persons.**

Complete if the organization answered "Yes" on Form 990, Part IV, line 27

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of assistance | (d) Type of assistance | (e) Purpose of assistance |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

LHA  For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.    Schedule L (Form 990 or 990-EZ) 2012

See Part V for Continuations

21100716 785125 7480        2012 03040 D A R P  Inc        7480    1

Schedule L (Form 990 or 990-EZ) 2012 D.A.R.P., Inc.                           73-1611805  Page 2

| Part IV | **Business Transactions Involving Interested Persons.** |

Complete if the organization answered "Yes" on Form 990, Part IV, line 28a, 28b, or 28c.

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of transaction | (d) Description of transaction | (e) Sharing of organization's revenues? Yes | No |
|---|---|---|---|---|---|
| Raymond H Jones | President | 0. | Mr. & Mrs. | | X |
| Lynn D Jones | Vice-President | 0. | | | X |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Part V | **Supplemental Information** |

Complete this part to provide additional information for responses to questions on Schedule L (see instructions)

Schedule L, Part II, Loans To and From Interested Persons:

(a) Name of Person: Raymond H Jones


(c) Purpose of Loan: To provide operating capital to the organization

during expansion

(d) Loan to or from organization? = To

(e) Original Principal Amount $ 155,989.   (f) Balance Due $ 266,466.

(g) Loan in Default? = No

(h) Approved by Board or Committee? = Yes

(i) Written Agreement? = Yes


Sch L, Part IV, Business Transactions Involving Interested Persons:

(a) Name of Person: Raymond H Jones

(d) Description of Transaction: Mr. & Mrs. Jones used their personal

credit cards as a method of financing the operations of DARP Inc.

232132
12-03-12

Schedule L (Form 990 or 990-EZ) 2012

21100716 795135 7490                    2012 03040 D A R P   Inc                    7490     1

| SCHEDULE O | Supplemental Information to Form 990 or 990-EZ | OMB No 1545-0047 |
|---|---|---|
| (Form 990 or 990-EZ) | Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information. ▶ Attach to Form 990 or 990-EZ. | **2012** |
| Department of the Treasury Internal Revenue Service | | Open to Public Inspection |

| Name of the organization | Employer identification number |
|---|---|
| D.A.R.P., Inc. | 73-1611805 |

Form 990, Part I, Line 1, Description of Organization Mission:

before entering the penal system.  DARP has the capacity to assist both

male and female clients and has served over 300 clients during this

period.  Over the last 12 years, this program has been so successful

and changed so many lives that there are two other programs that have

been blueprinted from this one.  DARP has saved taxpayers millions of

dollars in incarceration costs during this period.

Form 990, Part III, Line 1, Description of Organization Mission:

program has been so successful and changed so many lives that there are

two other programs that have been blueprinted from this one.  DARP has

saved taxpayers millions of dollars in incarceration costs during this

period.

Form 990, Part VI, Section A, line 2: Raymond Jones, the President, and

Lynn Jones, the Vice-President, are husband and wife.

Form 990, Part VI, Section B, line 11: A copy of the Form 990 is provided

to the President, Vice-President and Treasurer of the organization.  These

officers are involved in the daily preparation of the underlying

documentation.  These officers also represent a majority of the governing

body.

Form 990, Part VI, Section B, Line 15: The compensation of Raymond Jones

(President) and Lynn Jones (Vice-President) are determined by non-related

members of the governing body based upon several factors (including

LHA  For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.          Schedule O (Form 990 or 990-EZ) (2012)
232211
01-04-13

21100716  785125  7480              2012.03040 D.A.R.P., Inc.                7480___1

| Name of the organization | Employer identification number |
|---|---|
| D.A.R.P., Inc. | 73-1611805 |

performance and comparability data).

Form 990, Part VI, Section C, Line 19: The books and records of the

organization are available by appointment during regular business hours at

the corporate offices.

Form 990, Part IX, Line 24e, All Other Functional Expenses:

Electric:

Program service expenses                                                                        32,458.

Management and general expenses                                                                      0.

Fundraising expenses                                                                                  0.

Total expenses                                                                                  32,458.

Rent, parking, other occupancy:

Program service expenses                                                                        24,423.

Management and general expenses                                                                      0.

Fundraising expenses                                                                                  0.

Total expenses                                                                                  24,423.

Telephone:

Program service expenses                                                                        14,433.

Management and general expenses                                                                      0.

Fundraising expenses                                                                                  0.

Total expenses                                                                                  14,433.

Medical & Dental:

Program service expenses                                                                        14,416.

Management and general expenses                                                                      0.

232212
01-04-13                                                   Schedule O (Form 990 or 990-EZ) (2012)

11100716 785125 7480                  2012 03040 D.A.R.P., Inc.                    7480     1

Schedule O (Form 990 or 990-EZ) (2012)                                                    Page 2

| Name of the organization | Employer identification number |
|---|---|
| D.A.R,P., Inc. | 73-1611805 |

Fundraising expenses                                                                0.

Total expenses                                                                14,416.


Supplies:

Program service expenses                                                      11,755.

Management and general expenses                                                    0.

Fundraising expenses                                                                0.

Total expenses                                                                11,755.


Tobacco:

Program service expenses                                                       9,253.

Management and general expenses                                                    0.

Fundraising expenses                                                                0.

Total expenses                                                                 9,253.


Clothing & Safety Equipment:

Program service expenses                                                       6,078.

Management and general expenses                                                    0.

Fundraising expenses                                                                0.

Total expenses                                                                 6,078.


Repairs:

Program service expenses                                                       5,771.

Management and general expenses                                                    0.

Fundraising expenses                                                                0.

Total expenses                                                                 5,771.


Water & Sewer:

232212
01-04-13                                                        Schedule O (Form 990 or 990-EZ) (2012)

21100716 785125 7480                2012.03040 D.A.R.P., Inc.                    7480___1

Schedule O (Form 990 or 990-EZ) (2012)                                                      Page **2**

| Name of the organization | Employer identification number |
|---|---|
| D.A.R.P., Inc. | 73-1611805 |

Program service expenses                                                                    4,097.

Management and general expenses                                                                0.

Fundraising expenses                                                                           0.

Total expenses                                                                             4,097.


Real estate taxes:

Program service expenses                                                                    4,039.

Management and general expenses                                                                0.

Fundraising expenses                                                                           0.

Total expenses                                                                             4,039.


Trash Services:

Program service expenses                                                                    4,000.

Management and general expenses                                                                0.

Fundraising expenses                                                                           0.

Total expenses                                                                             4,000.


TV-Cable/Satellite:

Program service expenses                                                                    3,584.

Management and general expenses                                                                0.

Fundraising expenses                                                                           0.

Total expenses                                                                             3,584.


Meals:

Program service expenses                                                                    3,075.

Management and general expenses                                                                0.

Fundraising expenses                                                                           0.

Total expenses                                                                             3,075.

232212
01-04-13                                                          Schedule O (Form 990 or 990-EZ) (2012)

21100716 785125 7480              2012 03040 D.A.R.P., Inc.                    7480      1

Schedule O (Form 990 or 990-EZ) (2012)                                                                                      Page **2**

| Name of the organization | Employer identification number |
|---|---|
| D.A.R,P., Inc. | 73-1611805 |

## Office Supplies:

Program service expenses                                                                                           3,071.

Management and general expenses                                                                                    0.

Fundraising expenses                                                                                               0.

Total expenses                                                                                                     3,071.

## Pest Control:

Program service expenses                                                                                           2,276.

Management and general expenses                                                                                    0.

Fundraising expenses                                                                                               0.

Total expenses                                                                                                     2,276.

## Reconciliation differences:

Program service expenses                                                                                           1,893.

Management and general expenses                                                                                    0.

Fundraising expenses                                                                                               0.

Total expenses                                                                                                     1,893.

## Education:

Program service expenses                                                                                           1,039.

Management and general expenses                                                                                    0.

Fundraising expenses                                                                                               0.

Total expenses                                                                                                     1,039.

## Computer Expenses:

Program service expenses                                                                                           969.

Management and general expenses                                                                                    0.

232212
01-04-13                                                                 Schedule O (Form 990 or 990-EZ) (2012)

21100716 795125 7480              2012 03040 D A R P  Inc              7480    1

Schedule O (Form 990 or 990-EZ) (2012)        Page **2**

| Name of the organization | Employer identification number |
|---|---|
| D.A.R.P., Inc. | 73-1611805 |

**Fundraising expenses**      0.

**Total expenses**      969.

**Mobile Phones:**

**Program service expenses**      527.

**Management and general expenses**      0.

**Fundraising expenses**      0.

**Total expenses**      527.

**Propane:**

**Program service expenses**      336.

**Management and general expenses**      0.

**Fundraising expenses**      0.

**Total expenses**      336.

**Postage & Shipping:**

**Program service expenses**      330.

**Management and general expenses**      0.

**Fundraising expenses**      0.

**Total expenses**      330.

**Bank Fees:**

**Program service expenses**      172.

**Management and general expenses**      0.

**Fundraising expenses**      0.

**Total expenses**      172.

**Licenses & fees:**

232212
01-04-13

Schedule O (Form 990 or 990-EZ) (2012)

21100716 785125 7480      2012.03040 D.A.R.P., Inc.      7480___1

Schedule O (Form 990 or 990-EZ) (2012)                                                  **Page 2**

| Name of the organization | Employer identification number |
|---|---|
| D.A.R,P., Inc. | 73-1611805 |

Program service expenses                                                              170.

Management and general expenses                                                        0.

Fundraising expenses                                                                   0.

Total expenses                                                                       170.


Mailing Service:

Program service expenses                                                              81.

Management and general expenses                                                        0.

Fundraising expenses                                                                   0.

Total expenses                                                                        81.


Other expenses:

Program service expenses                                                              45.

Management and general expenses                                                        0.

Fundraising expenses                                                                   0.

Total expenses                                                                        45.


Unspecified Expenses:

Program service expenses                                                              16.

Management and general expenses                                                        0.

Fundraising expenses                                                                   0.

Total expenses                                                                        16.


Membership Dues:

Program service expenses                                                               9.

Management and general expenses                                                        0.

Fundraising expenses                                                                   0.

Total expenses                                                                         9.

232212
01-04-13                                                        Schedule O (Form 990 or 990-EZ) (2012)

21100716 785125 7480              2012.03040 D.A.R.P., Inc.              7480      1

Schedule O (Form 990 or 990-EZ) (2012)                                                                    Page **2**

| Name of the organization | Employer identification number |
|---|---|
| D.A.R,P., Inc. | 73-1611805 |

Total Other Expenses on Form 990, Part IX, line 24e, Col A          148,316.

990

2012 DEPRECIATION AND AMORTIZATION REPORT

Form 990 Page 10

| Asset No | Description | Date Acquired | Method | Life | Line No | Unadjusted Cost Or Basis | Bus % Excl | Reduction In Basis | Basis For Depreciation | Accumulated Depreciation | Current Sec 179 | Current Year Deduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Land | | | | | 0. | | | 0. | 0. | 0. | 0. |
| | * 990 Page 10 Total - Land | | | | | | | | | | | |
| | Buildings | | | | | | | | | | | |
| 11 | Facilities - Oklahoma (Men's) | 073109 | SL | 22.00 | 17 | 250,000. | | | 250,000. | 219,733. | | 11,364. |
| 12 | Facilities - Oklahoma (Women's) | 073109 | SL | 22.00 | 17 | 75,000. | | | 75,000. | 69,137. | | 3,409. |
| 13 | Facilities - Arkansas | 073109 | SL | 22.00 | 17 | 425,000. | | | 425,000. | 386,415. | | 19,318. |
| | * 990 Page 10 Total - Buildings | | | | | 750,000. | | | 750,000. | 675,285. | 0. | 34,091. |
| | Leasehold Improvements | | | | | | | | | | | |
| 14 | Leasehold Improvements (Prior | 073109 | 150DB | 39.00 | 17 | 335,000. | | | 335,000. | 288,444. | | 8,465. |
| | * 990 Page 10 Total - Leasehold Improv | | | | | 335,000. | | 0. | 335,000. | 288,444. | 0. | 8,465. |
| | Equipment & Furniture | | | | | | | | | | | |
| 15 | Equipment - OK Facility (Prior to | 073109 | 200DB | 4.00 | 17 | 239,996. | | | 239,996. | 237,523. | | 2,473. |
| 16 | Equipment - OK Facility (2009) | 031510 | 200DB | 4.00 | 17 | 390. | | | 390. | 354. | | 24. |
| 17 | Equipment - OK Facility (2010) | 022211 | 200DB | 4.00 | 17 | 6,197. | | 6,197. | | | | 0. |
| 18 | Equipment - AR Facility (2010) | 032411 | 200DB | 4.00 | 17 | 2,385. | | 2,385. | | | | 0. |
| 31 | Equipment - OK Facility (2011) | 111411 | 200DB | 4.00 | 17 | 5,119. | | 5,119. | | | | 0. |
| 32 | Equipment - AR Facility (2011) | 120311 | 200DB | 4.00 | 17 | 590. | | 590. | | | | 0. |
| | * 990 Page 10 Total - Equipment & Furn | | | | | 254,677. | | 14,291. | 240,386. | 237,877. | 0. | 2,497. |

(D) - Asset disposed

* ITC, Section 179, Salvage, Bonus, Commercial Revitalization Deduction

228102
05-01-12

31.1

2012 DEPRECIATION AND AMORTIZATION REPORT

Form 990 Page 10

990

| Asset No | Description | Date Acquired | Method | Life | Line No | Unadjusted Cost Of Basis | Bus % Excl | Reduction In Basis | Basis For Depreciation | Accumulated Depreciation | Current Sec 179 | Current Year Deduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Other Assets | | | | | | | | | | | |
| | Other - 2008 Ford 19Van | 051511 | 1200DB | 4.00 | 17 | 12,995. | | 12,995. | | | | 0. |
| | * 990 Page 10 Total - Other Assets | | | | | 12,995. | | 12,995. | 0. | 0. | 0. | 0. |
| | * Grand Total 990 Page 10 Depr | | | | | 1,352,672. | | 27,286. | 1,325,386. | 1,201,606. | 0. | 45,053. |

229102
05-01-12

(D) - Asset disposed

31.2

* ITC, Section 179, Salvage, Bonus, Commercial Revitalization Deduction

D.A.R,P., Inc.                                                        73-1611805

| Form **990-W** | **Estimated Tax on Unrelated Business Taxable Income for Tax-Exempt Organizations** | OMB No. 1545-0976 |
|---|---|---|
| (Worksheet)<br>Department of the Treasury<br>Internal Revenue Service | (and on Investment Income for Private Foundations)  Form 990-T<br>(Keep for your records. Do not send to the Internal Revenue Service.) | **2013** |

| | | | |
|---|---|---|---|
| 1 | Unrelated business taxable income expected in the tax year | 1 | |
| 2 | **Tax on the amount on line 1**  See instructions for tax computation | 2 | |
| 3 | Alternative minimum tax (see instructions) | 3 | |
| 4 | Total. Add lines 2 and 3 | 4 | |
| 5 | Estimated tax credits (see instructions) | 5 | |
| 6 | Subtract line 5 from line 4 | 6 | |
| 7 | Other taxes (see instructions) | 7 | |
| 8 | Total. Add lines 6 and 7 | 8 | |
| 9 | Credit for federal tax paid on fuels (see instructions) | 9 | |

**10a** Subtract line 9 from line 8. **Note.** If less than $500, the organization is not required to make estimated tax payments. Private foundations, see instructions     **10a**

**b** Enter the tax shown on the 2012 return (see instructions). **Caution.** If zero or the tax year was for less than 12 months, skip this line and enter the amount from line 10a on line 10c     **10b**  70,648.

**c** 2013 **Estimated Tax.** Enter the smaller of line 10a or line 10b. If the organization is required to skip line 10b, enter the amount from line 10a on line 10c     **10c**  70,648.

| | | (a) | (b) | (c) | (d) |
|---|---|---|---|---|---|
| 11 | Installment due dates (see instructions) | **11** 11/15/13 | 01/15/14 | 04/15/14 | 07/15/14 |
| 12 | Required installments. Enter 25% of line 10c in columns (a) through (d) unless the organization uses the annualized income installment method, the adjusted seasonal installment method, or is a "large organization" (see instructions) | **12** 17,662. | 17,662. | 17,662. | 17,662. |
| 13 | 2012 Overpayment (see instructions) | **13** | | | |
| 14 | **Payment due.** (Subtract line 13 from line 12.) | **14** 17,662. | 17,662. | 17,662. | 17,662. |

LHA   **For Paperwork Reduction Act Notice, see instructions.**                          Form **990-W** (2013)

223801
02-26-13

21100716 785125 7480                 2013 03040 D A R P   Inc                    7480    1

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-25 12:38:22
04CV-2014
C19V-345-2017

Form **990**

Department of the Treasury
Internal Revenue Service

# Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)

▶ Do not enter social security numbers on this form as it may be made public.
▶ Information about Form 990 and its instructions is at www.irs.gov/form990.

OMB No. 1545-0047

**2014**

Open to Public Inspection

**A** For the 2014 calendar year, or tax year beginning 8/1/2013 , and ending 7/31/2014

| B Check if applicable: | C Name of organization **D. A. R. P. INC.** | D Employer Identification number |
|---|---|---|
| ☐ Address change | Doing business as | **73-1611805** |
| ☐ Name change | Number and street (or P.O. box if mail is not delivered to street address)   Room/suite | E Telephone number |
| ☐ Initial return | **14100 NORTH 477 ROAD** | **(918) 456-9100** |
| ☐ Final return/terminated | City or town   State   ZIP code | |
| ☐ Amended return | **TAHLEQUAH**   **OK**   **74464** | |
| ☐ Application pending | Foreign country name   Foreign province/state/county   Foreign postal code | G Gross receipts $   532,998 |

**F** Name and address of principal officer: **RAYMOND JONES 14100 N. 477 RD, TAHLEQUAH, OK 74464**

H(a) Is this a group return for subordinates? ☐ Yes ☒ No
H(b) Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list (see instructions)

**I** Tax-exempt status: ☒ 501(c)(3) ☐ 501(c) ( ) ◀ (insert no.) ☐ 4947(a)(1) or ☐ 527

**J** Website: ▶ NONE

H(c) Group exemption number ▶

**K** Form of organization: ☒ Corporation ☐ Trust ☐ Association ☐ Other ▶   **L** Year of formation: 2001   **M** State of legal domicile: OK

## Part I   Summary

| | | | |
|---|---|---|---|
| 1 | Briefly describe the organization's mission or most significant activities: 3 FOR NON-VIOLENT OFFENDERS, LAST STEP BEFORE ENTERING THE PENAL SYSTEM. DARP HAS THE CAPACITY TO ASS MALE AND FEMALE CLIENTS AND HAS SERVED A TOTAL OF 362 THIS PERIOD. | | |
| 2 | Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets. | | |
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 3 | 4 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 2 |
| 5 | Total number of individuals employed in calendar year 2014 (Part V, line 2a) | 5 | 21 |
| 6 | Total number of volunteers (estimate if necessary) | 6 | |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0 |
| b | Net unrelated business taxable income from Form 990-T, line 34 | 7b | -76,330 |

| | | Prior Year | Current Year |
|---|---|---|---|
| 8 | Contributions and grants (Part VIII, line 1h) | 65 | 0 |
| 9 | Program service revenue (Part VIII, line 2g) | 547,724 | 532,998 |
| 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d) | 0 | 0 |
| 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 0 | 0 |
| 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 547,789 | 532,998 |
| 13 | Grants and similar amounts paid (Part IX, column (A), lines 1–3) | 14,050 | 6,950 |
| 14 | Benefits paid to or for members (Part IX, column (A), line 4) | | 0 |
| 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 405,827 | 320,878 |
| 16a | Professional fundraising fees (Part IX, column (A), line 11e) | | 0 |
| b | Total fundraising expenses (Part IX, column (D), line 25) ▶ 0 | | |
| 17 | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 557,844 | 343,749 |
| 18 | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 977,721 | 671,577 |
| 19 | Revenue less expenses. Subtract line 18 from line 12 | -429,932 | -138,579 |

| | | Beginning of Current Year | End of Year |
|---|---|---|---|
| 20 | Total assets (Part X, line 16) | 404,546 | 298,389 |
| 21 | Total liabilities (Part X, line 26) | 833,995 | 809,316 |
| 22 | Net assets or fund balances. Subtract line 21 from line 20 | -429,449 | -510,927 |

(stamp: RECEIVED APR 27 2015 EIN UT)

## Part II   Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| Sign Here | ▶ *Raymond H. Jones* (signature of officer)   4/15/2015 (Date) |
|---|---|
| | ▶ RAYMOND JONES   PRESIDENT (Type or print name and title) |

| | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| Paid Preparer Use Only | NANCY C JOHNSON | | 4/15/2015 | | P01069152 |
| | Firm's name ▶ AXXE TAX & BOOKKEEPING | | | Firm's EIN ▶ 73-1611775 | |
| | Firm's address ▶ 12135 E. 11TH ST. STE F, TULSA, OK 74128 | | | Phone no. (918) 660-2882 | |

May the IRS discuss this return with the preparer shown above? (see instructions) ☒ Yes ☐ No

EXHIBIT K

For Paperwork Reduction Act Notice, see the separate instructions.   HTA   Form **990** (2014)

Form 990 (2014)     D. A. R. P. INC.        73-1611805     Page **2**

| **Part III** | **Statement of Program Service Accomplishments** |
|---|---|

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . ☐

**1**   Briefly describe the organization's mission:

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

**2**   Did the organization undertake any significant program services during the year which were not listed on
the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ **Yes**   ☒ **No**
If "Yes," describe these new services on Schedule O.

**3**   Did the organization cease conducting, or make significant changes in how it conducts, any program
services? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ **Yes**   ☒ **No**
If "Yes," describe these changes on Schedule O.

**4**   Describe the organization's program service accomplishments for each of its three largest program services, as measured by
expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others,
the total expenses, and revenue, if any, for each program service reported.

**4a**   (Code: _____ ) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

**4b**   (Code: _____ ) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

**4c**   (Code: _____ ) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------

**4d**   Other program services. (Describe in Schedule O.)
(Expenses $           0 including grants of $         0 ) (Revenue $        0 )

**4e**   Total program service expenses ▶           0

Form **990** (2014)

Form 990 (2014)   D. A. R. P. INC.                                                73-1611805        Page **3**

**Part IV** **Checklist of Required Schedules**

|  |  | | Yes | No |
|---|---|---|---|---|
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **1** | X | |
| 2 | Is the organization required to complete *Schedule B, Schedule of Contributors* (see instructions)? . . . . . . . . . | **2** | | X |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* . . . . . . . . . . . . . . . . . . | **3** | | X |
| 4 | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* . . . . . . . . . . . . . . . | **4** | | X |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **5** | | X |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **6** | | X |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* . . . . . . . . . | **7** | | X |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8** | | X |
| 9 | Did the organization report an amount in Part X, line 21, for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* . . . . . . . . . . . . . . . . . . . . | **9** | | X |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi-endowments? *If "Yes," complete Schedule D, Part V* . . . . . . | **10** | | X |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable. | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **11a** | X | |
| b | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* . . . . . . . . . . | **11b** | | X |
| c | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* . . . . . . . . . . . | **11c** | | X |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* . . . . . . . . . . . . . . . . . | **11d** | | X |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* . . . | **11e** | X | |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* . . . . . | **11f** | | X |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **12a** | | X |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* . . . . . | **12b** | | X |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* . . . . . . . . . | **13** | | X |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? . . . . . . . . . . | **14a** | | X |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* . . . . . . . . . . | **14b** | | X |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* . . . . . . . . . . . . . . . | **15** | | X |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* . . . . . . . . . . . | **16** | | X |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I* (see instructions). . . . . . . . . . | **17** | | X |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* . . . . . . . . . . . . . . . . . . . | **18** | | X |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **19** | | X |
| 20a | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* . . . . . . . . . . . | **20a** | | X |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? . . . . . . . | **20b** | | X |

Form **990** (2014)

Form 990 (2014)        D. A. R. P. INC.                                              73-1611805        Page **4**

| Part IV | Checklist of Required Schedules *(continued)* | | | |
|---|---|---|---|---|
| | | | Yes | No |
| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* . . . . . . . . . | **21** | | X |
| 22 | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* . . . . . . . . . . . . . . | **22** | | X |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* . . . . . . . . . . . . . . . . . . . . . . . . | **23** | | X |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* . . . . . . . . . . . . . . . . | **24a** | | X |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? . . . . . . . | **24b** | | X |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? . . . . . . . . . . . . . . . . . . . . . . . . . . | **24c** | | X |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? . . . . . . | **24d** | | X |
| 25a | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* . . . . . . . . | **25a** | | X |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* . . . . . . . . . . . . . . . . . . . . . | **25b** | | X |
| 26 | Did the organization report any amount on Part X, line 5, 6, or 22 for receivables from or payables to any current or former officers, directors, trustees, key employees, highest compensated employees, or disqualified persons? *If "Yes," complete Schedule L, Part II* . . . . . . . . . . . . . . . . . | **26** | X | |
| 27 | Did the organization provide a grant or other assistance to an officer, director, trustee, key employee, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part III* . . . . . . . . . | **27** | | X |
| 28 | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| a | A current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* . . . . . . . | **28a** | X | |
| b | A family member of a current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **28b** | X | |
| c | An entity of which a current or former officer, director, trustee, or key employee (or a family member thereof) was an officer, director, trustee, or direct or indirect owner? *If "Yes," complete Schedule L, Part IV* . . . . . | **28c** | X | |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* . . . . . | **29** | | X |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* . . . . . . . . . . . . . . . . . | **30** | | X |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **31** | | X |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* . . . . . . . . . . . . . . . . . . . . . . . . . . | **32** | | X |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* . . . . . . . . . . . . | **33** | | X |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* . . . . . . . . . . . . . . . . . . . . . . . . . . | **34** | | X |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? . . . . . . . . . . . . | **35a** | | X |
| b | If "Yes" to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* . . . . . . . . . | **35b** | | X |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* . . . . . . . . . . . . . . . . | **36** | | X |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **37** | | X |
| 38 | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? Note. All Form 990 filers are required to complete Schedule O. . . . . . . . . . . . . . . . | **38** | | X |

Form **990** (2014)

Form 990 (2014)        D. A. R. P. INC.                                                        73-1611805        Page **5**

## Part V    Statements Regarding Other IRS Filings and Tax Compliance

Check if Schedule O contains a response or note to any line in this Part V . . . . . . . . . . . . . □

|  |  |  | Yes | No |
|---|---|---|---|---|
| **1a** | Enter the number reported in Box 3 of Form 1096. Enter -0- if not applicable . . . . . . . . | **1a**   4 | | |
| **b** | Enter the number of Forms W-2G included in line 1a. Enter -0- if not applicable . . . . . . . | **1b**   0 | | |
| **c** | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? . . . . . . . . . . . . . . . . . . . | | **1c** | X |
| **2a** | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return . . . | **2a**   21 | | |
| **b** | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? . . . . . | | **2b** | X |
| | **Note.** If the sum of lines 1a and 2a is greater than 250, you may be required to *e-file.* (see instructions) | | | |
| **3a** | Did the organization have unrelated business gross income of $1,000 or more during the year? . . . . . . . . | | **3a** | X |
| **b** | If "Yes," has it filed a Form 990-T for this year? *If "No" to line 3b, provide an explanation in Schedule O* . . . . . | | **3b** | X |
| **4a** | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **4a** | X |
| **b** | If "Yes," enter the name of the foreign country: ▶ - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | |
| **5a** | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? . . . . . . . | | **5a** | X |
| **b** | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? . . . . | | **5b** | X |
| **c** | If "Yes" to line 5a or 5b, did the organization file Form 8886-T? . . . . . . . . . . . . . . . . . | | **5c** | |
| **6a** | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? . . . . . . . . | | **6a** | X |
| **b** | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **6b** | X |
| **7** | **Organizations that may receive deductible contributions under section 170(c).** | | | |
| **a** | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? . . . . . . . . . . . . . . . . . . . . . . . . . | | **7a** | X |
| **b** | If "Yes," did the organization notify the donor of the value of the goods or services provided? . . . . . . . . | | **7b** | |
| **c** | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **7c** | X |
| **d** | If "Yes," indicate the number of Forms 8282 filed during the year . . . . . . . . . . . . . | **7d** | | |
| **e** | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? . . . | | **7e** | X |
| **f** | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? . . . . . | | **7f** | X |
| **g** | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? . . | | **7g** | |
| **h** | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? . . | | **7h** | |
| **8** | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? . . . . . . . . . . . | | **8** | |
| **9** | **Sponsoring organizations maintaining donor advised funds.** | | | |
| **a** | Did the sponsoring organization make any taxable distributions under section 4966? . . . . . . . . . . . | | **9a** | |
| **b** | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? . . . . . . . | | **9b** | |
| **10** | **Section 501(c)(7) organizations. Enter:** | | | |
| **a** | Initiation fees and capital contributions included on Part VIII, line 12 . . . . . . . . . | **10a** | | |
| **b** | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities . . . . | **10b** | | |
| **11** | **Section 501(c)(12) organizations. Enter:** | | | |
| **a** | Gross income from members or shareholders . . . . . . . . . . . . . . . | **11a** | | |
| **b** | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them.) . . . . . . . . . . . . . | **11b** | | |
| **12a** | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? . . . . | | **12a** | |
| **b** | If "Yes," enter the amount of tax-exempt interest received or accrued during the year . . . . . | **12b** | | |
| **13** | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | |
| **a** | Is the organization licensed to issue qualified health plans in more than one state? . . . . . . . . . . | | **13a** | |
| | **Note.** See the instructions for additional information the organization must report on Schedule O. | | | |
| **b** | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans . . . . . . . . . . . . . | **13b** | | |
| **c** | Enter the amount of reserves on hand . . . . . . . . . . . . . . . . . . | **13c** | | |
| **14a** | Did the organization receive any payments for indoor tanning services during the tax year? . . . . . . . . | | **14a** | X |
| **b** | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation in Schedule O* . . . . . | | **14b** | |

Form **990** (2014)

Form 990 (2014)          D. A. R. P. INC.                                          73-1611805          Page **6**

| **Part VI** | Governance, Management, and Disclosure *For each "Yes" response to lines 2 through 7b below, and for a "No" response to line 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.* |
|---|---|

Check if Schedule O contains a response or note to any line in this Part VI . . . . . . . . . . . ☐

## Section A. Governing Body and Management

|  |  |  | Yes | No |
|---|---|---|---|---|
| **1a** | Enter the number of voting members of the governing body at the end of the tax year . . . . | **1a** | 4 | | |
| | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | | |
| **b** | Enter the number of voting members included in line 1a, above, who are independent . . . . | **1b** | 2 | | |
| **2** | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? . . . . . . . . . . . . . . . | **2** | | X | |
| **3** | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors, or trustees, or key employees to a management company or other person? . . . | **3** | | | X |
| **4** | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? . . . | **4** | | | X |
| **5** | Did the organization become aware during the year of a significant diversion of the organization's assets? . . . . . | **5** | | | X |
| **6** | Did the organization have members or stockholders? . . . . . . . . . . . . . . . . . . . . | **6** | | | X |
| **7a** | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? . . . . . . . . . . . . . . . . . . . . | **7a** | | | X |
| **b** | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? . . . . . . . . . . . . . . . . . | **7b** | | | X |
| **8** | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | | |
| **a** | The governing body? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **8a** | | X | |
| **b** | Each committee with authority to act on behalf of the governing body? . . . . . . . . . . . . | **8b** | | X | |
| **9** | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* . . . . . . | **9** | | | X |

## Section B. Policies *(This Section B requests information about policies not required by the Internal Revenue Code.)*

|  |  |  | Yes | No |
|---|---|---|---|---|
| **10a** | Did the organization have local chapters, branches, or affiliates? . . . . . . . . . . . . . . | **10a** | | | X |
| **b** | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? . . . . . | **10b** | | | |
| **11a** | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? . | **11a** | | | X |
| **b** | Describe in Schedule O the process, if any, used by the organization to review this Form 990. | | | | |
| **12a** | Did the organization have a written conflict of interest policy? *If "No," go to line 13* . . . . . . . | **12a** | | | X |
| **b** | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | **12b** | | | |
| **c** | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe in Schedule O how this was done* . . . . . . . . . . . . . . . . . . . . . . | **12c** | | | |
| **13** | Did the organization have a written whistleblower policy? . . . . . . . . . . . . . . . . . | **13** | | | X |
| **14** | Did the organization have a written document retention and destruction policy? . . . . . . . . . | **14** | | X | |
| **15** | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | | |
| **a** | The organization's CEO, Executive Director, or top management official. . . . . . . . . . . . | **15a** | | X | |
| **b** | Other officers or key employees of the organization . . . . . . . . . . . . . . . . . . . | **15b** | | X | |
| | If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions). | | | | |
| **16a** | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? . . . . . . . . . . . . . . . . . . . . . . . | **16a** | | | X |
| **b** | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? . . . . . . . . . . . . . | **16b** | | | |

## Section C. Disclosure

**17**  List the states with which a copy of this Form 990 is required to be filed    ► OK

**18**  Section 6104 requires an organization to make its Forms 1023 (or 1024 if applicable), 990, and 990-T (Section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☐ Own website     ☐ Another's website     ☒ Upon request     ☐ Other *(explain in Schedule O)*

**19**  Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20**  State the name, address, and telephone number of the person who possesses the organization's books and records:    ►

D. A. R. P. INC                                                      (918) 456-9100
14100 N. 477 RD, TAHLEQUAH, OK 74464

Form **990** (2014)

Form 990 (2014)    D. A. R. P. INC.    73-1611805    Page **7**

| **Part VII** | **Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors** |
|---|---|

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . ☐

| **Section A.** | **Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees** |

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

* List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.
* List all of the organization's **current** key employees, if any. See instructions for definition of "key employee."
* List the organization's five **current** highest compensated employees (other than an officer, director, trustee, or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations.
* List all of the organization's **former** officers, key employees, and highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.
* List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

List persons in the following order: individual trustees or directors; institutional trustees; officers; key employees; highest compensated employees; and former such persons.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A)<br>Name and Title | (B)<br>Average hours per week (list any hours for related organizations below dotted line) | (C)<br>Position<br>(do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1)  RAYMOND JONES<br>PRESIDENT | 75.00 | | | X | | | | 66,750 | | |
| (2)  LYNN JONES<br>VICE PRESIDENT | 75.00 | | | X | | | | 55,250 | | |
| (3) | | | | | | | | | | |
| (4) | | | | | | | | | | |
| (5) | | | | | | | | | | |
| (6) | | | | | | | | | | |
| (7) | | | | | | | | | | |
| (8) | | | | | | | | | | |
| (9) | | | | | | | | | | |
| (10) | | | | | | | | | | |
| (11) | | | | | | | | | | |
| (12) | | | | | | | | | | |
| (13) | | | | | | | | | | |
| (14) | | | | | | | | | | |

Form **990** (2014)

Form 990 (2014)  D. A. R. P. INC.  73-1611805  Page **8**

| Part VII | Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)* |
|---|---|

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (15) | | | | | | | | | | |
| (16) | | | | | | | | | | |
| (17) | | | | | | | | | | |
| (18) | | | | | | | | | | |
| (19) | | | | | | | | | | |
| (20) | | | | | | | | | | |
| (21) | | | | | | | | | | |
| (22) | | | | | | | | | | |
| (23) | | | | | | | | | | |
| (24) | | | | | | | | | | |
| (25) | | | | | | | | | | |

| 1b | **Sub-total** . . . . . . . . . . . . . . ▶ | 122,000 | 0 | 0 |
|---|---|---|---|---|
| c | **Total from continuation sheets to Part VII, Section A** . . . . . . . . . . ▶ | 0 | 0 | 0 |
| d | **Total (add lines 1b and 1c)** . . . . . . . . . . . . . . ▶ | 122,000 | 0 | 0 |

2  Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶  0

| | | | Yes | No |
|---|---|---|---|---|
| 3 | Did the organization list any **former** officer, director, or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . | 3 | | X |
| 4 | For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . . . . | 4 | | X |
| 5 | Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* . . . . . . . . . . . . | 5 | | X |

**Section B. Independent Contractors**

1  Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| | | 0 |
| | | 0 |
| | | 0 |
| | | 0 |
| | | 0 |

2  Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶  0

Form 990 (2014)     D. A. R. P. INC.                                                73-1611805            Page **9**

| Part VIII | Statement of Revenue |

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . . . . . . . □

| | | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512-514 |
|---|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | 1a | Federated campaigns . . . . . . . | 1a | 0 | | | |
| | b | Membership dues . . . . . . . . . | 1b | 0 | | | |
| | c | Fundraising events . . . . . . . . | 1c | 0 | | | |
| | d | Related organizations . . . . . . . | 1d | 0 | | | |
| | e | Government grants (contributions) . . . | 1e | 0 | | | |
| | f | All other contributions, gifts, grants, and similar amounts not included above . | 1f | 0 | | | |
| | g | Noncash contributions included in lines 1a-1f: $ _____ 0 | | | | | |
| | h | **Total.** Add lines 1a–1f . . . . . . . . . . . ▶ | | 0 | | | |
| **Program Service Revenue** | | | Business Code | | | | |
| | 2a | DRUG & ALCOHAL RECOVERY | 624310 | 532,998 | | | |
| | b | _____ | | 0 | | | |
| | c | _____ | | 0 | | | |
| | d | _____ | | 0 | | | |
| | e | _____ | | 0 | | | |
| | f | All other program service revenue . . . . . | | 0 | | | |
| | g | **Total.** Add lines 2a–2f . . . . . . . . . ▶ | | 532,998 | | | |
| **Other Revenue** | 3 | Investment income (including dividends, interest, and other similar amounts) . . . . . . . . . . . ▶ | | 0 | | | |
| | 4 | Income from investment of tax-exempt bond proceeds . . . ▶ | | 0 | | | |
| | 5 | Royalties . . . . . . . . . . . . . . . . ▶ | | 0 | | | |
| | | | (i) Real | (ii) Personal | | | |
| | 6a | Gross rents . . . . . . . . | | | | | |
| | b | Less: rental expenses . . . . | | | | | |
| | c | Rental income or (loss) . . . | 0 | 0 | | | |
| | d | Net rental income or (loss) . . . . . . . . ▶ | | 0 | | | |
| | | | (i) Securities | (ii) Other | | | |
| | 7a | Gross amount from sales of assets other than inventory . . | 0 | 0 | | | |
| | b | Less: cost or other basis and sales expenses . . . . . | 0 | 0 | | | |
| | c | Gain or (loss) . . . . . . | 0 | 0 | | | |
| | d | Net gain or (loss) . . . . . . . . . . . ▶ | | 0 | | | |
| | 8a | Gross income from fundraising events (not including $ _____ 0 of contributions reported on line 1c). See Part IV, line 18 . . . . . . . . a | | 0 | | | |
| | b | Less: direct expenses . . . . . b | | 0 | | | |
| | c | Net income or (loss) from fundraising events . . . . . ▶ | | 0 | | | |
| | 9a | Gross income from gaming activities. See Part IV, line 19. . . . . . . . . . a | | 0 | | | |
| | b | Less: direct expenses . . . . . b | | 0 | | | |
| | c | Net income or (loss) from gaming activities . . . . . . . ▶ | | 0 | | | |
| | 10a | Gross sales of inventory, less returns and allowances . . . . . . . a | | 0 | | | |
| | b | Less: cost of goods sold . . . . . . . b | | 0 | | | |
| | c | Net income or (loss) from sales of inventory . . . . . . ▶ | | 0 | | | |
| | | Miscellaneous Revenue | Business Code | | | | |
| | 11a | _____ | | 0 | | | |
| | b | _____ | | 0 | | | |
| | c | _____ | | 0 | | | |
| | d | All other revenue . . . . . . . . . . . | | 0 | | | |
| | e | **Total.** Add lines 11a–11d . . . . . . . . . ▶ | | 0 | | | |
| | 12 | **Total revenue.** See instructions. . . . . . . . . . ▶ | | 532,998 | 0 | 0 | 0 |

Form **990** (2014)

Form 990 (2014)          D. A. R. P. INC.                                                        73-1611805          Page **10**

| Part IX | Statement of Functional Expenses |
|---|---|

*Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).*

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . . . . ☐

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | (A)<br>Total expenses | (B)<br>Program service expenses | (C)<br>Management and general expenses | (D)<br>Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations domestic governments. See Part IV, line 21 . . . . . . | 6,950 | 6,950 | | |
| **2** Grants and other assistance to domestic individuals. See Part IV, line 22 . . . . . . . . | 0 | | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16 . . . . . . . | 0 | | | |
| **4** Benefits paid to or for members . . . . . . . | 0 | | | |
| **5** Compensation of current officers, directors, trustees, and key employees . . . . . . . . . . | 122,000 | 122,000 | | |
| **6** Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) . . . . . . | 0 | | | |
| **7** Other salaries and wages . . . . . . . . . . | 182,035 | 182,035 | | |
| **8** Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) . . . | 0 | | | |
| **9** Other employee benefits . . . . . . . . . . . | 0 | | | |
| **10** Payroll taxes . . . . . . . . . . . . . . | 16,843 | 16,843 | | |
| **11** Fees for services (non-employees): | | | | |
| **a** Management . . . . . . . . . . . . . . . | 0 | | | |
| **b** Legal . . . . . . . . . . . . . . . . . . | 7,500 | 7,500 | | |
| **c** Accounting . . . . . . . . . . . . . . . . | 4,500 | 4,500 | | |
| **d** Lobbying . . . . . . . . . . . . . . . . . | 0 | | | |
| **e** Professional fundraising services. See Part IV, line 17 . . . | 0 | | | |
| **f** Investment management fees . . . . . . . . . | 0 | | | |
| **g** Other. (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O.) | 51,307 | 51,307 | | |
| **12** Advertising and promotion . . . . . . . . . . | 0 | | | |
| **13** Office expenses . . . . . . . . . . . . . . | 2,776 | 2,776 | | |
| **14** Information technology . . . . . . . . . . . | 0 | | | |
| **15** Royalties . . . . . . . . . . . . . . . . . | 0 | | | |
| **16** Occupancy . . . . . . . . . . . . . . . . | 417 | 417 | | |
| **17** Travel . . . . . . . . . . . . . . . . . . | 0 | | | |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials . . . . . | 0 | | | |
| **19** Conferences, conventions, and meetings . . . . . . | 0 | | | |
| **20** Interest . . . . . . . . . . . . . . . . . | 4,129 | 4,129 | | |
| **21** Payments to affiliates . . . . . . . . . . . . | 0 | | | |
| **22** Depreciation, depletion, and amortization . . . . . . | 19,648 | 19,648 | 0 | 0 |
| **23** Insurance . . . . . . . . . . . . . . . . | 26,158 | 26,158 | | |
| **24** Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| **a** AUTO | 109,789 | 109,789 | | |
| **b** GRADUATION STIPEND | 53,590 | 53,590 | | |
| **c** GROCERIES | 23,912 | 23,912 | | |
| **d** UTILITIES | 40,023 | 40,023 | | |
| **e** All other expenses    SEE SCHEDULE O | 0 | | | |
| **25** Total functional expenses. Add lines 1 through 24e . . | 671,577 | 671,577 | 0 | 0 |
| **26** Joint costs. Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶☐ if following SOP 98-2 (ASC 958-720) . . . . . . . | | | | |

Form 990 (2014)        D. A. R. P. INC.                                                73-1611805        Page **11**

| Part X | Balance Sheet |
| --- | --- |

Check if Schedule O contains a response or note to any line in this Part X . . . . . . . . . . . . . . . . . . ☐

|  |  |  | **(A)** Beginning of year |  | **(B)** End of year |
|---|---|---|---|---|---|
| **Assets** | **1** | Cash—non-interest-bearing . . . . . . . . . . . | 108,248 | **1** | 21,739 |
| | **2** | Savings and temporary cash investments . . . . . . . . . . . . . . | | **2** | |
| | **3** | Pledges and grants receivable, net . . . . . . . . . . . . . . . | 0 | **3** | 0 |
| | **4** | Accounts receivable, net . . . . . . . . . . . | 0 | **4** | 0 |
| | **5** | Loans and other receivables from current and former officers, directors, trustees, key employees, and highest compensated employees. Complete Part II of Schedule L . . . . . . . . . . . . . . . | | **5** | |
| | **6** | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), persons described in section 4958(c)(3)(B), and contributing employers and sponsoring organizations of section 501(c)(9) voluntary employees' beneficiary organizations (see instructions). Complete Part II of Schedule L . . . . . . . . . | | **6** | |
| | **7** | Notes and loans receivable, net . . . . . . . . . . . . . . . | 0 | **7** | 0 |
| | **8** | Inventories for sale or use . . . . . . . . . . . . . . . . | | **8** | |
| | **9** | Prepaid expenses and deferred charges . . . . . . . . . . . | | **9** | |
| | **10a** | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D | **10a** | 1,747,460 | | |
| | **b** | Less: accumulated depreciation . . . . . | **10b** | 1,470,810 | 296,298 **10c** | 276,650 |
| | **11** | Investments—publicly traded securities . . . . . . . . . . . . | 0 | **11** | 0 |
| | **12** | Investments—other securities. See Part IV, line 11 . . . . . . . . | 0 | **12** | 0 |
| | **13** | Investments—program-related. See Part IV, line 11 . . . . . . . . | 0 | **13** | 0 |
| | **14** | Intangible assets . . . . . . . . . . . . . . . . . . | 0 | **14** | 0 |
| | **15** | Other assets. See Part IV, line 11 . . . . . . . . . . . . . | 0 | **15** | 0 |
| | **16** | **Total assets.** Add lines 1 through 15 (must equal line 34) . . . . . . . | 404,546 | **16** | 298,389 |
| **Liabilities** | **17** | Accounts payable and accrued expenses . . . . . . . . . . . . | | **17** | |
| | **18** | Grants payable . . . . . . . . . . . . . . . . . . . | | **18** | |
| | **19** | Deferred revenue . . . . . . . . . . . . . . . . . . | | **19** | |
| | **20** | Tax-exempt bond liabilities . . . . . . . . . . . . . . . . | | **20** | |
| | **21** | Escrow or custodial account liability. Complete Part IV of Schedule D . . . | | **21** | |
| | **22** | Loans and other payables to current and former officers, directors, trustees, key employees, highest compensated employees, and disqualified persons. Complete Part II of Schedule L . . . . . . . . | 266,466 | **22** | 260,401 |
| | **23** | Secured mortgages and notes payable to unrelated third parties . . . . . | 559,394 | **23** | 547,287 |
| | **24** | Unsecured notes and loans payable to unrelated third parties . . . . . . | 0 | **24** | 0 |
| | **25** | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17-24). Complete Part X of Schedule D . . . . . . . . . . . . . . . . . . | 8,135 | **25** | 1,628 |
| | **26** | **Total liabilities.** Add lines 17 through 25 . . . . . . . . . . . | 833,995 | **26** | 809,316 |
| **Net Assets or Fund Balances** | | Organizations that follow SFAS 117 (ASC 958), check here ▶ ☐ and complete lines 27 through 29, and lines 33 and 34. | | | |
| | **27** | Unrestricted net assets . . . . . . . . . . . . . . . . . | | **27** | |
| | **28** | Temporarily restricted net assets . . . . . . . . . . . . . . | | **28** | |
| | **29** | Permanently restricted net assets . . . . . . . . . . . . . | | **29** | |
| | | Organizations that do not follow SFAS 117 (ASC958), check here ▶ ☐ and complete lines 30 through 34. | | | |
| | **30** | Capital stock or trust principal, or current funds . . . . . . . . . . | | **30** | |
| | **31** | Paid-in or capital surplus, or land, building, or equipment fund . . . . . | | **31** | |
| | **32** | Retained earnings, endowment, accumulated income, or other funds . . . | -310,496 | **32** | -510,937 |
| | **33** | Total net assets or fund balances . . . . . . . . . . . . . | -310,496 | **33** | -510,937 |
| | **34** | Total liabilities and net assets/fund balances . . . . . . . . . . . | 523,499 | **34** | 298,379 |

Form **990** (2014)

Form 990 (2014)    D. A. R. P. INC.                                                73-1611805    Page **12**

| Part XI | Reconciliation of Net Assets |
|---|---|

Check if Schedule O contains a response or note to any line in this Part XI . . . . . . . . . . . ☐

| | | | |
|---|---|---|---:|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) . . . . . . . . . | 1 | 532,998 |
| 2 | Total expenses (must equal Part IX, column (A), line 25) . . . . . . . . . | 2 | 671,577 |
| 3 | Revenue less expenses. Subtract line 2 from line 1 . . . . . . . . . . . | 3 | -138,579 |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 33, column (A)) . . . . . . . | 4 | -310,496 |
| 5 | Net unrealized gains (losses) on investments . . . . . . . . . . . . | 5 | |
| 6 | Donated services and use of facilities . . . . . . . . . . . . . . | 6 | |
| 7 | Investment expenses . . . . . . . . . . . . . . . . . . | 7 | |
| 8 | Prior period adjustments . . . . . . . . . . . . . . . . . | 8 | |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) . . . . | 9 | |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 33, column (B)) . . . . . . . . . . . . . . . . . . | 10 | -449,075 |

| Part XII | Financial Statements and Reporting |
|---|---|

Check if Schedule O contains a response or note to any line in this Part XII . . . . . . . . . . . . . ☐

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990:  ☐ Cash  ☐ Accrual  ☐ Other _____ <br> If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O. | | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? . . . . . . . | 2a | | |
| | If "Yes," check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both: <br> ☐ Separate basis  ☐ Consolidated basis  ☐ Both consolidated and separate basis | | | |
| b | Were the organization's financial statements audited by an independent accountant? . . . . . . . . . . | 2b | | |
| | If "Yes," check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both: <br> ☐ Separate basis  ☐ Consolidated basis  ☐ Both consolidated and separate basis | | | |
| c | If "Yes" to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? . . . . . . <br> If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | 2c | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? . . . . . . . . . . . . . . . . . . | 3a | | |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits . . . . . . | 3b | | |

Form **990** (2014)

| SCHEDULE A<br>(Form 990 or 990-EZ) | **Public Charity Status and Public Support** | OMB No. 1545-0047 |
|---|---|---|
| | Complete if the organization is a section 501(c)(3) organization or a section<br>4947(a)(1) nonexempt charitable trust. | **2014** |
| Department of the Treasury<br>Internal Revenue Service | ▶ Attach to Form 990 or Form 990-EZ.<br>▶ Information about Schedule A (Form 990 or 990-EZ) and its instructions is at *www.irs.gov/form990.* | **Open to Public<br>Inspection** |

| Name of the organization | Employer identification number |
|---|---|
| D. A. R. P. INC. | 73-1611805 |

**Part I**   **Reason for Public Charity Status (All organizations must complete this part.) See instructions.**

The organization is not a private foundation because it is: (For lines 1 through 11, check only one box.)

1  [ ]  A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2  [ ]  A school described in **section 170(b)(1)(A)(ii). (Attach Schedule E.)**

3  [ ]  A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4  [ ]  A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the
hospital's name, city, and state: ------------------------------------------------------------------------------------------

5  [ ]  An organization operated for the benefit of a college or university owned or operated by a governmental unit described in
**section 170(b)(1)(A)(iv). (Complete Part II.)**

6  [ ]  A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7  [ ]  An organization that normally receives a substantial part of its support from a governmental unit or from the general public
described in **section 170(b)(1)(A)(vi). (Complete Part II.)**

8  [ ]  A community trust described in **section 170(b)(1)(A)(vi). (Complete Part II.)**

9  [X]  An organization that normally receives: (1) more than 33 1/3% of its support from contributions, membership fees, and gross
receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 33 1/3% of its
support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses
acquired by the organization after June 30, 1975. See **section 509(a)(2). (Complete Part III.)**

10  [ ]  An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

11  [ ]  An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes
of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).**
Check the box in lines 11a through 11d that describes the type of supporting organization and complete lines 11e, 11f, and 11g.

a  [ ]  **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving
the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting
organization. **You must complete Part IV, Sections A and B.**

b  [ ]  **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having
control or management of the supporting organization vested in the same persons that control or manage the supported
organization(s). **You must complete Part IV, Sections A and C.**

c  [ ]  **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with,
its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d  [ ]  **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s)
that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness
requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e  [ ]  Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III
functionally integrated, or Type III non-functionally integrated supporting organization.

f   Enter the number of supported organizations . . . . . . . . . . . . . . . . . . . . . . . | 0 |

g   Provide the following information about the supported organization(s).

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1–9 above or IRC section (see instructions)) | (iv) Is the organization listed in your governing document? | | (v) Amount of monetary support (see instructions) | (vi) Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | Yes | No | | |
| (A) | | | | | | |
| (B) | | | | | | |
| (C) | | | | | | |
| (D) | | | | | | |
| (E) | | | | | | |
| **Total** | | | | | 0 | 0 |

For Paperwork Reduction Act Notice, see the Instructions for
Form 990 or 990-EZ.
HTA

Schedule A (Form 990 or 990-EZ) 2014

Schedule A (Form 990 or 990-EZ) 2014    D. A. R. P. INC.    73-1611805    Page **2**

**Part II** Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization fails to qualify under the tests listed below, please complete Part III.)

### Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2010 | (b) 2011 | (c) 2012 | (d) 2013 | (e) 2014 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | | | | | | 0 |
| 2 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | 0 |
| 3 The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | 0 |
| 4 **Total.** Add lines 1 through 3 | 0 | 0 | 0 | 0 | 0 | 0 |
| 5 The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | |
| 6 **Public support.** Subtract line 5 from line 4. | | | | | | 0 |

### Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2010 | (b) 2011 | (c) 2012 | (d) 2013 | (e) 2014 | (f) Total |
|---|---|---|---|---|---|---|
| 7 Amounts from line 4 | 0 | 0 | 0 | 0 | 0 | 0 |
| 8 Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | | | | | | 0 |
| 9 Net income from unrelated business activities, whether or not the business is regularly carried on | | | | | | 0 |
| 10 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) | | | | | | 0 |
| 11 **Total support.** Add lines 7 through 10 | | | | | | 0 |
| 12 Gross receipts from related activities, etc. (see instructions) | | | | | **12** | |

13 **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** ▶ ☐

### Section C. Computation of Public Support Percentage

| | | |
|---|---|---|
| 14 Public support percentage for 2014 (line 6, column (f) divided by line 11, column (f)) | **14** | 0.00% |
| 15 Public support percentage from 2013 Schedule A, Part II, line 14 | **15** | 0.00% |

16a **33 1/3% support test—2014.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization ▶ ☐

 b **33 1/3% support test—2013.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization ▶ ☐

17a **10%-facts-and-circumstances test—2014.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization ▶ ☐

 b **10%-facts-and-circumstances test—2013.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization ▶ ☐

18 **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions ▶ ☒

Schedule A (Form 990 or 990-EZ) 2014

Schedule A (Form 990 or 990-EZ) 2014    D. A. R. P. INC.    73-1611805    Page **3**

| **Part III** | Support Schedule for Organizations Described in Section 509(a)(2) |
|---|---|

(Complete only if you checked the box on line 9 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

## Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2010 | (b) 2011 | (c) 2012 | (d) 2013 | (e) 2014 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | | | | | | 0 |
| 2 Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose . . . . | | | | | | 0 |
| 3 Gross receipts from activities that are not an unrelated trade or business under section 513 . | | | | | | 0 |
| 4 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf . . . . . . . . . | | | | | | 0 |
| 5 The value of services or facilities furnished by a governmental unit to the organization without charge . . . . . . | | | | | | 0 |
| 6 **Total.** Add lines 1 through 5 . . . . . . | 0 | 0 | 0 | 0 | 0 | 0 |
| 7a Amounts included on lines 1, 2, and 3 received from disqualified persons . . . | | | | | | 0 |
| b Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year . . . . . | | | | | | 0 |
| c Add lines 7a and 7b . . . . . . . . | 0 | 0 | 0 | 0 | 0 | 0 |
| 8 **Public support** (Subtract line 7c from line 6.) . . . . . . . . . . . | | | | | | 0 |

## Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2010 | (b) 2011 | (c) 2012 | (d) 2013 | (e) 2014 | (f) Total |
|---|---|---|---|---|---|---|
| 9 Amounts from line 6 . . . . . . . . | 0 | 0 | 0 | 0 | 0 | 0 |
| 10a Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources . | | | | | | 0 |
| b Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975 . . . . . | | | | | | 0 |
| c Add lines 10a and 10b . . . . . . . | 0 | 0 | 0 | 0 | 0 | 0 |
| 11 Net income from unrelated business activities not included in line 10b, whether or not the business is regularly carried on . | | | | | | 0 |
| 12 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) . . . . . . . . | | | | | | 0 |
| 13 **Total support.** (Add lines 9, 10c, 11, and 12.) . . . . . . | 0 | 0 | 0 | 0 | 0 | 0 |
| 14 **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐ |

## Section C. Computation of Public Support Percentage

| 15 Public support percentage for 2014 (line 8, column (f) divided by line 13, column (f)) . . . . . . . . . | **15** | 0.00% |
|---|---|---|
| 16 Public support percentage from 2013 Schedule A, Part III, line 15 . . . . . . . . . . . . . . . | **16** | 0.00% |

## Section D. Computation of Investment Income Percentage

| 17 Investment income percentage for **2014** (line 10c, column (f) divided by line 13, column (f)) . . . . . . | **17** | 0.00% |
|---|---|---|
| 18 Investment income percentage from **2013** Schedule A, Part III, line 17 . . . . . . . . . . . . . | **18** | 0.00% |

19a **33 1/3% support tests—2014.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . ▶ ☐

b **33 1/3% support tests—2013.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3%, and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . ▶ ☐

20 **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . . . . . . ▶ ☒

Schedule A (Form 990 or 990-EZ) 2014

Schedule A (Form 990 or 990-EZ) 2014    D. A. R. P. INC.    73-1611805    Page **4**

| Part IV | Supporting Organizations |
|---|---|

(Complete only if you checked a box on line 11 of Part I. If you checked 11a of Part I, complete Sections A and B. If you checked 11b of Part I, complete Sections A and C. If you checked 11c of Part I, complete Sections A, D, and E. If you checked 11d of Part I, complete Sections A and D, and complete Part V.)

## Section A. All Supporting Organizations

|  |  | Yes | No |
|---|---|---|---|
| 1 | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in Part VI how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* | | |
| 2 | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? *If "Yes," explain in Part VI how the organization determined that the supported organization was described in section 509(a)(1) or (2).* | | |
| 3a | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer (b) and (c) below.* | | |
| b | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in Part VI when and how the organization made the determination.* | | |
| c | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in Part VI what controls the organization put in place to ensure such use.* | | |
| 4a | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked 11a or 11b in Part I, answer (b) and (c) below.* | | |
| b | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in Part VI how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | | |
| c | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in Part VI what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | | |
| 5a | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer (b) and (c) below (if applicable). Also, provide detail in Part VI, including (i) the names and EIN numbers of the supported organizations added, substituted, or removed, (ii) the reasons for each such action, (iii) the authority under the organization's organizing document authorizing such action, and (iv) how the action was accomplished (such as by amendment to the organizing document).* | | |
| b | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | | |
| c | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | | |
| 6 | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (a) its supported organizations; (b) individuals that are part of the charitable class benefited by one or more of its supported organizations; or (c) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in Part VI.* | | |
| 7 | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in IRC 4958(c)(3)(C)), a family member of a substantial contributor, or a 35-percent controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990).* | | |
| 8 | Did the organization make a loan to a disqualified person (as defined in section 4958) not described in line 7? *If "Yes," complete Part I of Schedule L (Form 990).* | | |
| 9a | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in Part VI.* | | |
| b | Did one or more disqualified persons (as defined in line 9(a)) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in Part VI.* | | |
| c | Did a disqualified person (as defined in line 9(a)) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in Part VI.* | | |
| 10a | Was the organization subject to the excess business holdings rules of IRC 4943 because of IRC 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer (b) below.* | | |
| b | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings.)* | | |

Schedule A (Form 990 or 990-EZ) 2014

Schedule A (Form 990 or 990-EZ) 2014     D. A. R. P. INC.                          73-1611805              Page **5**

**Part IV**   **Supporting Organizations** *(continued)*

| | | Yes | No |
|---|---|---|---|
| 11 | Has the organization accepted a gift or contribution from any of the following persons? | | |
| a | A person who directly or indirectly controls, either alone or together with persons described in (b) and (c) below, the governing body of a supported organization? | 11a | |
| b | A family member of a person described in (a) above? | 11b | |
| c | A 35% controlled entity of a person described in (a) or (b) above? *If "Yes" to a, b, or c, provide detail in Part VI.* | 11c | |

**Section B. Type I Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| 1 | Did the directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in Part VI how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | 1 | |
| 2 | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in Part VI how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised, or controlled the supporting organization.* | 2 | |

**Section C. Type II Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| 1 | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in Part VI how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* | 1 | |

**Section D. All Type III Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| 1 | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (1) a written notice describing the type and amount of support provided during the prior tax year, (2) a copy of the Form 990 that was most recently filed as of the date of notification, and (3) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | 1 | |
| 2 | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in Part VI how the organization maintained a close and continuous working relationship with the supported organization(s).* | 2 | |
| 3 | By reason of the relationship described in (2), did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in Part VI the role the organization's supported organizations played in this regard.* | 3 | |

**Section E. Type III Functionally-Integrated Supporting Organizations**

| 1 | Check the box next to the method that the organization used to satisfy the Integral Part Test during the year *(see instructions):* |
|---|---|
| a | ☐ The organization satisfied the Activities Test. *Complete line 2 below.* |
| b | ☐ The organization is the parent of each of its supported organizations. *Complete line 3 below.* |
| c | ☐ The organization supported a governmental entity. *Describe in Part VI how you supported a government entity (see instructions).* |

| | | Yes | No |
|---|---|---|---|
| 2 | Activities Test. *Answer (a) and (b) below.* | | |
| a | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in Part VI identify those supported organizations and explain how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* | 2a | |
| b | Did the activities described in (a) constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in Part VI the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* | 2b | |
| 3 | Parent of Supported Organizations. *Answer (a) and (b) below.* | | |
| a | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations? *Provide details in Part VI.* | 3a | |
| b | Did the organization exercise a substantial degree of direction over the policies, programs, and activities of each of its supported organizations? *If "Yes," describe in Part VI the role played by the organization in this regard.* | 3b | |

Schedule A (Form 990 or 990-EZ) 2014

Schedule A (Form 990 or 990-EZ) 2014     D. A. R. P. INC.                                          73-1611805            Page **6**

| Part V | Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations |
|---|---|

1 ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970. **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

| Section A - Adjusted Net Income | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|
| 1 Net short-term capital gain | 1 | | |
| 2 Recoveries of prior-year distributions | 2 | | |
| 3 Other gross income (see instructions) | 3 | | |
| 4 Add lines 1 through 3 | 4 | 0 | 0 |
| 5 Depreciation and depletion | 5 | | |
| 6 Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | 6 | | |
| 7 Other expenses (see instructions) | 7 | | |
| 8 **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | 8 | 0 | 0 |

| Section B - Minimum Asset Amount | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|
| 1 Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | | | |
| a Average monthly value of securities | 1a | | |
| b Average monthly cash balances | 1b | | |
| c Fair market value of other non-exempt-use assets | 1c | | |
| d Total (add lines 1a, 1b, and 1c) | 1d | 0 | 0 |
| e Discount claimed for blockage or other factors (explain in detail in **Part VI**): | | | |
| 2 Acquisition indebtedness applicable to non-exempt-use assets | 2 | | |
| 3 Subtract line 2 from line 1d | 3 | 0 | 0 |
| 4 Cash deemed held for exempt use. Enter 1-1/2% of line 3 (for greater amount, see instructions). | 4 | 0 | 0 |
| 5 Net value of non-exempt-use assets (subtract line 4 from line 3) | 5 | 0 | 0 |
| 6 Multiply line 5 by .035 | 6 | 0 | 0 |
| 7 Recoveries of prior-year distributions | 7 | 0 | 0 |
| 8 **Minimum Asset Amount** (add line 7 to line 6) | 8 | 0 | 0 |

| Section C - Distributable Amount | | | Current Year |
|---|---|---|---|
| 1 Adjusted net income for prior year (from Section A, line 8, Column A) | 1 | | 0 |
| 2 Enter 85% of line 1 | 2 | | 0 |
| 3 Minimum asset amount for prior year (from Section B, line 8, Column A) | 3 | | 0 |
| 4 Enter greater of line 2 or line 3 | 4 | | 0 |
| 5 Income tax imposed in prior year | 5 | | |
| 6 **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | 6 | | 0 |

7 ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions).

Schedule A (Form 990 or 990-EZ) 2014

Schedule A (Form 990 or 990-EZ) 2014    D. A. R. P. INC.    73-1611805    Page **7**

| **Part V** | Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations *(continued)* | |
|---|---|---|
| **Section D - Distributions** | | **Current Year** |
| 1 | Amounts paid to supported organizations to accomplish exempt purposes | |
| 2 | Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | |
| 3 | Administrative expenses paid to accomplish exempt purposes of supported organizations | |
| 4 | Amounts paid to acquire exempt-use assets | |
| 5 | Qualified set-aside amounts (prior IRS approval required) | |
| 6 | Other distributions (describe in **Part VI**). See instructions. | |
| 7 | **Total annual distributions.** Add lines 1 through 6. | 0 |
| 8 | Distributions to attentive supported organizations to which the organization is responsive (provide details in **Part VI**). See instructions. | |
| 9 | Distributable amount for 2014 from Section C, line 6 | 0 |
| 10 | Line 8 amount divided by Line 9 amount | 0.000 |

| **Section E - Distribution Allocations (see instructions)** | (i) Excess Distributions | (ii) Underdistributions Pre-2014 | (iii) Distributable Amount for 2014 |
|---|---|---|---|
| 1 | Distributable amount for 2014 from Section C, line 6 | | | 0 |
| 2 | Underdistributions, if any, for years prior to 2014 (reasonable cause required-see instructions) | | | |
| 3 | Excess distributions carryover, if any, to 2014: | | | |
| a | | | | |
| b | | | | |
| c | | | | |
| d | | | | |
| e | From 2013 . . . . . . . . | | | |
| f | **Total** of lines 3a through e | 0 | | |
| g | Applied to underdistributions of prior years | | 0 | |
| h | Applied to 2014 distributable amount | | | 0 |
| i | Carryover from 2009 not applied (see instructions) | | | |
| j | Remainder. Subtract lines 3g, 3h, and 3i from 3f. | 0 | | |
| 4 | Distributions for 2014 from Section D, line 7:    $        0 | | | |
| a | Applied to underdistributions of prior years | | 0 | |
| b | Applied to 2014 distributable amount | | | 0 |
| c | Remainder. Subtract lines 4a and 4b from 4. | 0 | | |
| 5 | Remaining underdistributions for years prior to 2014, if any. Subtract lines 3g and 4a from line 2 (if amount greater than zero, see instructions). | | 0 | |
| 6 | Remaining underdistributions for 2014. Subtract lines 3h and 4b from line 1 (if amount greater than zero, see instructions). | | | |
| 7 | **Excess distributions carryover to 2015.** Add lines 3j and 4c. | 0 | | |
| 8 | Breakdown of line 7: | | | |
| a | | | | |
| b | | | | |
| c | | | | |
| d | Excess from 2013 . . . . . | 0 | | |
| e | Excess from 2014 . . . . . | 0 | | |

Schedule A (Form 990 or 990-EZ) 2014

Schedule A (Form 990 or 990-EZ) 2014     D. A. R. P. INC.                                    73-1611805          Page **8**

| Part VI | **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; and Part III, line 12. Also complete this part for any additional information. (See instructions). |
|---|---|

SCHEDULE D
.(Form 990)

**Supplemental Financial Statements**
▶ Complete if the organization answered "Yes" to Form 990,
Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.

Department of the Treasury
Internal Revenue Service    ▶    Information about Schedule D (Form 990) and its instructions is at *www.irs.gov/form990.*

OMB No. 1545-0047

2014

Open to Public
Inspection

| Name of the organization | Employer Identification number |
|---|---|
| D. A. R. P. INC. | 73-1611805 |

| **Part I** | **Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.** |
|---|---|

Complete if the organization answered "Yes" to Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year . . . . . . | | |
| 2 | Aggregate value of contributions to (during year) . | | |
| 3 | Aggregate value of grants from (during year) . | | |
| 4 | Aggregate value at end of year . . . . . | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised
funds are the organization's property, subject to the organization's exclusive legal control? . . . . . . . . . ☐ Yes ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be
used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other
purpose conferring impermissible private benefit? . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

| **Part II** | **Conservation Easements.** |
|---|---|

Complete if the organization answered "Yes" to Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply).
☐ Preservation of land for public use (e.g., recreation or education)    ☐ Preservation of a historically important land area
☐ Protection of natural habitat    ☐ Preservation of a certified historic structure
☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation
easement on the last day of the tax year.

| | | | Held at the End of the Tax Year |
|---|---|---|---|
| a | Total number of conservation easements . . . . . . . . . . . . . | 2a | |
| b | Total acreage restricted by conservation easements . . . . . . . . . . . . . . | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) . . . . . | 2c | |
| d | Number of conservation easements included in (c) acquired after 8/17/06, and not on a historic structure listed in the National Register . . . . . . . . . . . . . . . | 2d | |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization
during the tax year    ▶    _____

4 Number of states where property subject to conservation easement is located    ▶    _____

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of
violations, and enforcement of the conservation easements it holds? . . . . . . . . . . . . . . ☐ Yes ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, and enforcing conservation easements during the year
▶ _____

7 Amount of expenses incurred in monitoring, inspecting, and enforcing conservation easements during the year
▶ $ _____

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section
170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and
balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes
the organization's accounting for conservation easements.

| **Part III** | **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.** |
|---|---|

Complete if the organization answered "Yes" to Form 990, Part IV, line 8.

1a If the organization elected, as permitted under SFAS 116 (ASC 958), not to report in its revenue statement and balance sheet
works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance
of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b If the organization elected, as permitted under SFAS 116 (ASC 958), to report in its revenue statement and balance sheet
works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance
of public service, provide the following amounts relating to these items:

(i) Revenue included in Form 990, Part VIII, line 1 . . . . . . . . . . . . . . . . ▶ $ _____

(ii) Assets included in Form 990, Part X . . . . . . . . . . . . . . . . . . . . ▶ $ _____

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the
following amounts required to be reported under SFAS 116 (ASC 958) relating to these items:

a Revenue included in Form 990, Part VIII, line 1 . . . . . . . . . . . . . . . . . . ▶ $ _____

b Assets included in Form 990, Part X . . . . . . . . . . . . . . . . . . . . . . ▶ $ _____

For Paperwork Reduction Act Notice, see the Instructions for Form 990.    Schedule D (Form 990) 2014
HTA

Schedule D (Form 990) 2014    D. A. R. P. INC.                                                    73-1611805                Page **2**

| **Part III** | **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)* |
|---|---|

**3** Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

a ☐ Public exhibition      d ☐ Loan or exchange programs

b ☐ Scholarly research      e ☐ Other ------------------------------------------------

c ☐ Preservation for future generations

**4** Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

**5** During the year, did the organization solicit or receive donations of art, historical treasures, or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection? . . . . .   ☐ Yes  ☐ No

| **Part IV** | **Escrow and Custodial Arrangements.** |
|---|---|

Complete if the organization answered "Yes" to Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

**1a** Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X? . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes  ☐ No

**b** If "Yes," explain the arrangement in Part XIII and complete the following table:

| | | Amount |
|---|---|---|
| **c** Beginning balance . . . . . . . . . . . . . . . . . | **1c** | |
| **d** Additions during the year . . . . . . . . . . . . . . | **1d** | |
| **e** Distributions during the year . . . . . . . . . . . . | **1e** | |
| **f** Ending balance . . . . . . . . . . . . . . . . . . | **1f** | 0 |

**2a** Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . .  ☐ Yes  ☒ No

**b** If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . . . . ☐

| **Part V** | **Endowment Funds.** |
|---|---|

Complete if the organization answered "Yes" to Form 990, Part IV, line 10.

| | | (a) Current year | (b) Prior year | (c) Two years back | (d) Three years back | (e) Four years back |
|---|---|---|---|---|---|---|
| **1a** | Beginning of year balance . . . . | | | | | |
| **b** | Contributions . . . . . . . . | | | | | |
| **c** | Net investment earnings, gains, and losses . . . . . . . . . | | | | | |
| **d** | Grants or scholarships . . . . . | | | | | |
| **e** | Other expenditures for facilities and programs . . . . . . . . | | | | | |
| **f** | Administrative expenses . . . . . | | | | | |
| **g** | End of year balance . . . . . . | 0 | 0 | 0 | 0 | 0 |

**2** Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

**a** Board designated or quasi-endowment ► ------------- %

**b** Permanent endowment ► ----------------- %

**c** Temporarily restricted endowment ► ------------- %

The percentages in lines 2a, 2b, and 2c should equal 100%.

**3a** Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | Yes | No |
|---|---|---|---|
| (i) unrelated organizations . . . . . . . . . . . . . . . . . . . . . . | **3a(i)** | | |
| (ii) related organizations . . . . . . . . . . . . . . . . . . . . . | **3a(ii)** | | |
| **b** If "Yes" to 3a(ii), are the related organizations listed as required on Schedule R? . . . . . . . . . . . | **3b** | | |

**4** Describe in Part XIII the intended uses of the organization's endowment funds.

| **Part VI** | **Land, Buildings, and Equipment.** |
|---|---|

Complete if the organization answered "Yes" to Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| | Description of property | (a) Cost or other basis (investment) | (b) Cost or other basis (other) | (c) Accumulated depreciation | (d) Book value |
|---|---|---|---|---|---|
| **1a** | Land . . . . . . . . . . . . | 0 | 37,300 | | 37,300 |
| **b** | Buildings . . . . . . . . . . . | 0 | 963,016 | 723,666 | 239,350 |
| **c** | Leasehold improvements . . . . . . . | 0 | 463,114 | 463,114 | 0 |
| **d** | Equipment . . . . . . . . . . | 0 | 354,995 | 354,995 | 0 |
| **e** | Other . . . . . . . . . . . . | 0 | 28,595 | 28,595 | 0 |
| **Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10c.)* . . . . . . . ► | | | | | 276,650 |

Schedule D (Form 990) 2014    D. A. R. P. INC.                                      73-1611805        Page **3**

| **Part VII** | **Investments—Other Securities.** |
|---|---|

Complete if the organization answered "Yes" to Form 990, Part IV, line 11b. See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation Cost or end-of-year market value |
|---|---|---|
| (1) Financial derivatives . . . . . . . . . . . | 0 | |
| (2) Closely-held equity interests . . . . . . . | 0 | |
| (3) Other | | |
| (A) | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| Total. *(Column (b) must equal Form 990, Part X, col (B) line 12 )* ▶ | 0 | |

| **Part VIII** | **Investments—Program Related.** |
|---|---|

Complete if the organization answered "Yes" to Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| Total. *(Column (b) must equal Form 990, Part X, col (B) line 13 )* ▶ | 0 | |

| **Part IX** | **Other Assets.** |
|---|---|

Complete if the organization answered "Yes" to Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| Total. *(Column (b) must equal Form 990, Part X, col. (B) line 15.)* . . . . . . . . . . . . . . . . . . . ▶ | 0 |

| **Part X** | **Other Liabilities.** |
|---|---|

Complete if the organization answered "Yes" to Form 990, Part IV, line 11e or 11f. See Form 990, Part X, line 25.

| **1.** (a) Description of liability | (b) Book value | |
|---|---|---|
| (1) Federal income taxes | 0 | |
| (2) PAYROLL TAXES | 1,628 | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| Total. *(Column (b) must equal Form 990, Part X, col (B) line 25 )* ▶ | 1,628 | |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII ☐

Schedule D (Form 990) 2014

Schedule D (Form 990) 2014     D. A. R. P. INC.                                                                73-1611805          Page **4**

| **Part XI** | Reconciliation of Revenue per Audited Financial Statements With Revenue per Return. |
|---|---|

Complete if the organization answered "Yes" to Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---:|
| **1** | Total revenue, gains, and other support per audited financial statements . . . . . . . . . . . . . . | | | **1** | |
| **2** | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | | |
| **a** | Net unrealized gains (losses) on investments . . . . . . . . . . . . . | **2a** | | | |
| **b** | Donated services and use of facilities . . . . . . . . . . . . . . . . | **2b** | | | |
| **c** | Recoveries of prior year grants . . . . . . . . . . . . . . . . . . | **2c** | | | |
| **d** | Other (Describe in Part XIII.) . . . . . . . . . . . . . . . . . . . | **2d** | | | |
| **e** | Add lines **2a** through **2d** . . . . . . . . . . . . . . . . . . . . | | | **2e** | 0 |
| **3** | Subtract line **2e** from line **1** . . . . . . . . . . . . . . . . . . . . . . . . . . | | | **3** | 0 |
| **4** | Amounts included on Form 990, Part VIII, line 12, but not on line 1: | | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b . . . . . | **4a** | | | |
| **b** | Other (Describe in Part XIII.) . . . . . . . . . . . . . . . . . . . | **4b** | | | |
| **c** | Add lines **4a** and **4b** . . . . . . . . . . . . . . . . . . . . . . . . | | | **4c** | 0 |
| **5** | Total revenue. Add lines **3** and **4c**. *(This must equal Form 990, Part I, line 12.)* . . . . . . . . . | | | **5** | 0 |

| **Part XII** | Reconciliation of Expenses per Audited Financial Statements With Expenses per Return. |
|---|---|

Complete if the organization answered "Yes" to Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---:|
| **1** | Total expenses and losses per audited financial statements . . . . . . . . . . . . . . . . . . | | | **1** | |
| **2** | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | | |
| **a** | Donated services and use of facilities . . . . . . . . . . . . . . . . | **2a** | | | |
| **b** | Prior year adjustments . . . . . . . . . . . . . . . . . . . . . | **2b** | | | |
| **c** | Other losses . . . . . . . . . . . . . . . . . . . . . . . . . | **2c** | | | |
| **d** | Other (Describe in Part XIII.) . . . . . . . . . . . . . . . . . . . | **2d** | | | |
| **e** | Add lines **2a** through **2d** . . . . . . . . . . . . . . . . . . . . | | | **2e** | 0 |
| **3** | Subtract line **2e** from line **1** . . . . . . . . . . . . . . . . . . . . . . . . . . | | | **3** | 0 |
| **4** | Amounts included on Form 990, Part IX, line 25, but not on line 1: | | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b . . . . . | **4a** | | | |
| **b** | Other (Describe in Part XIII.) . . . . . . . . . . . . . . . . . . . | **4b** | | | |
| **c** | Add lines **4a** and **4b** . . . . . . . . . . . . . . . . . . . . . . . . | | | **4c** | 0 |
| **5** | Total expenses. Add lines **3** and **4c**. *(This must equal Form 990, Part I, line 18.)* . . . . . . . . . | | | **5** | 0 |

| **Part XIII** | Supplemental Information. |
|---|---|

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

-------------------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------------------

-------------------------------------------------------------------------------------------------------------

Schedule D (Form 990) 2014    D. A. R. P. INC.    73-1611805    Page **5**

| Part XIII | **Supplemental Information** *(continued)* |

-------------------------------------------------------------------------------

**SCHEDULE I**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Grants and Other Assistance to Organizations, Governments, and Individuals in the United States

Complete if the organization answered "Yes" to Form 990, Part IV, line 21 or 22.

▶ Attach to Form 990.

▶ Information about Schedule I (Form 990) and its instructions is at *www.irs.gov/form990.*

OMB No 1545-0047

**2014**

**Open to Public Inspection**

Name of the organization

D. A. R. P. INC.

Employer identification number

73-1611805

## Part I  General Information on Grants and Assistance

1   Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ Yes  ☐ No

2   Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

## Part II  Grants and Other Assistance to Domestic Organizations and Domestic Governments. Complete if the organization answered "Yes" to Form 990, Part IV, line 21, for any recipient that received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 (a) Name and address of organization or government | (b) EIN | (c) IRC section if applicable | (d) Amount of cash grant | (e) Amount of non-cash assistance | (f) Method of valuation (book, FMV, appraisal, other) | (g) Description of non-cash assistance | (h) Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|
| (1) | | | | | | | |
| (2) | | | | | | | |
| (3) | | | | | | | |
| (4) | | | | | | | |
| (5) | | | | | | | |
| (6) | | | | | | | |
| (7) | | | | | | | |
| (8) | | | | | | | |
| (9) | | | | | | | |
| (10) | | | | | | | |
| (11) | | | | | | | |
| (12) | | | | | | | |

2   Enter total number of section 501(c)(3) and government organizations listed in the line 1 table . . . . . . . . . . . ▶

3   Enter total number of other organizations listed in the line 1 table . . . . . . . . . . . . . . . . . . . . . ▶   0

For Paperwork Reduction Act Notice, see the Instructions for Form 990.

HTA

Schedule I (Form 990) (2014)

D. A. R. P. INC.

73-1611805

Schedule I (Form 990) (2014)

Page **2**

**Part III** **Grants and Other Assistance to Domestic Individuals.** Complete if the organization answered "Yes" to Form 990, Part IV, line 22.

Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Number of recipients | (c) Amount of cash grant | (d) Amount of non-cash assistance | (e) Method of valuation (book, FMV, appraisal, other) | (f) Description of non-cash assistance |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |

**Part IV** **Supplemental Information.** Provide the information required in Part I, line 2, Part III, column (b), and any other additional information.

Schedule I (Form 990) (2014)

| SCHEDULE L | Transactions With Interested Persons | OMB No. 1545-0047 |
|---|---|---|

**SCHEDULE L**
**(Form 990 or 990-EZ)**

Department of the Treasury
Internal Revenue Service

► Complete if the organization answered "Yes" on Form 990, Part IV, line 25a, 25b, 26, 27, 28a, 28b, or 28c, or Form 990-EZ, Part V, line 38a or 40b.
► Attach to Form 990 or Form 990-EZ.
► Information about Schedule L (Form 990 or 990-EZ) and its Instructions is at *www.irs.gov/form990.*

**2014**

**Open To Public Inspection**

| Name of the organization | Employer identification number |
|---|---|
| D. A. R. P. INC. | 73-1611805 |

**Part I**  Excess Benefit Transactions (section 501(c)(3), section 501(c)(4), and 501(c)(29) organizations only).
Complete if the organization answered "Yes" on Form 990, Part IV, line 25a or 25b, or Form 990-EZ, Part V, line 40b.

| 1 | (a) Name of disqualified person | (b) Relationship between disqualified person and organization | (c) Description of transaction | (d) Corrected? | |
|---|---|---|---|---|---|
| | | | | Yes | No |
| (1) | | | | | |
| (2) | | | | | |
| (3) | | | | | |
| (4) | | | | | |
| (5) | | | | | |
| (6) | | | | | |

2 Enter the amount of tax incurred by the organization managers or disqualified persons during the year
under section 4958 . . . . . . . . . . . . . . . . . . . . ► $ _____

3 Enter the amount of tax, if any, on line 2, above, reimbursed by the organization . . . . . . . . . . . . ► $ _____

**Part II**  Loans to and/or From Interested Persons.
Complete if the organization answered "Yes" on Form 990-EZ, Part V, line 38a or Form 990, Part IV, line 26; or if the organization reported an amount on Form 990, Part X, line 5, 6, or 22.

| (a) Name of interested person | (b) Relationship with organization | (c) Purpose of loan | (d) Loan to or from the organization? | | (e) Original principal amount | (f) Balance due | (g) In default? | | (h) Approved by board or committee? | | (i) Written agreement? | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | To | From | | | Yes | No | Yes | No | Yes | No |
| (1) RAYMOND JONES | PRESIDENT | FUNDING | X | | 266,466 | 260,401 | | X | X | | X | |
| (2) | | | | | | | | | | | | |
| (3) | | | | | | | | | | | | |
| (4) | | | | | | | | | | | | |
| (5) | | | | | | | | | | | | |
| (6) | | | | | | | | | | | | |
| (7) | | | | | | | | | | | | |
| (8) | | | | | | | | | | | | |
| (9) | | | | | | | | | | | | |
| (10) | | | | | | | | | | | | |
| Total . . . . . . . . . . . . . . . . . . . . . . . . . ► $ | | | | | | 260,401 | | | | | | |

**Part III**  Grants or Assistance Benefiting Interested Persons.
Complete if the organization answered "Yes" on Form 990, Part IV, line 27.

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of assistance | (d) Type of assistance | (e) Purpose of assistance |
|---|---|---|---|---|
| (1) | | | | |
| (2) | | | | |
| (3) | | | | |
| (4) | | | | |
| (5) | | | | |
| (6) | | | | |
| (7) | | | | |
| (8) | | | | |
| (9) | | | | |
| (10) | | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.    Schedule L (Form 990 or 990-EZ) 2014
HTA

Schedule L (Form 990 or 990-EZ) 2014        D. A. R. P. INC.                                                        73-1611805        Page **2**

| **Part IV** | **Business Transactions Involving Interested Persons.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 28a, 28b, or 28c.

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of transaction | (d) Description of transaction | (e) Sharing of organization's revenues? | |
|---|---|---|---|---|---|
| | | | | Yes | No |
| (1) RAYMOND JONES | PRESIDENT | 260,401 | LOAN FOR OPERATING | | X |
| (2) LYNN JONES | VICE PRESIDENT | | PERSONAL CREDIT CARDS FOR | | |
| (3) | | | | | |
| (4) | | | | | |
| (5) | | | | | |
| (6) | | | | | |
| (7) | | | | | |
| (8) | | | | | |
| (9) | | | | | |
| (10) | | | | | |

| **Part V** | **Supplemental Information** |
|---|---|

Provide additional information for responses to questions on Schedule L (see instructions).

# SCHEDULE O
## (Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

# Supplemental Information to Form 990 or 990-EZ

Complete to provide information for responses to specific questions on
Form 990 or 990-EZ or to provide any additional information.

▶ Attach to Form 990 or 990-EZ.

▶ Information about Schedule O (Form 990 or 990-EZ) and its instructions is at *www.irs.gov/form990*.

OMB No. 1545-0047

2014

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| D. A. R. P. INC. | 73-1611805 |

| Name of the organization | Employer identification number |
|---|---|
| D. A. R. P. INC. | 73-1611805 |

## Line 28 (990-T) - Other Deductions

| | | | |
|---|---|---|---:|
| 1 | Automobile and truck expenses | 1 | 30,499 |
| 2 | Dues and subscriptions | 2 | 45 |
| 3 | Equipment rent | 3 | 20,333 |
| 4 | Insurance | 4 | 3,205 |
| 5 | Maintenance | 5 | 199 |
| 6 | Office expenses | 6 | 894 |
| 7 | Pest Control | 7 | 1,193 |
| 8 | Supplies | 8 | 63,107 |
| 9 | Total other deductions . . . . . . . . . . . . . . . . . . . . . . | 9 | 119,475 |
| 10 | Total deductions less expenses for offsetting credits . . . . . . . . . . . . . . . | 10 | 119,475 |

## Line 4b, Sch A (990-T) - Other Costs for Cost of Goods Sold

| | | | | |
|---|---|---|---:|---:|
| 1 | Travel, Meals and Entertainment | | | |
| | a  Travel . . . . . . . . . . . . . . . . . . . . . . . . . . | 1a | | 62 |
| | b  Total meals and entertainment . . . . . . . . . . . . . . | 1b | 1,596 | |
| | c  50% of line b . . . . . . . . . . . . . . . . . | 1c | 798 | |
| | d  Subtract line c from line b . . . . . . . . . . . . . . . . | 1d | | 798 |
| 2 | Depreciation . . . . . . . . . . . . . . . . . . . . . . | 2 | | 5,543 |
| 3 | Compensation of officers . . . . . . . . . . . . . . . . . | 3 | | |
| 4 | Salesperson wages and commissions . . . . . . . . . . . . . | 4 | | 30,630 |
| 5 | Indirect labor . . . . . . . . . . . . . . . . . . . . . | 5 | | |
| 6 | Rent . . . . . . . . . . . . . . . . . . . . . . . . | 6 | | 20,333 |
| 7 | Amortization . . . . . . . . . . . . . . . . . . . . . | 7 | | |
| 8 | Freight-in . . . . . . . . . . . . . . . . . . . . . . | 8 | | 12,953 |
| 9 | Supplies . . . . . . . . . . . . . . . . . . . . . . . | 9 | | 117,873 |
| 10 | Taxes . . . . . . . . . . . . . . . . . . . . . . . . | 10 | | 2,986 |
| 11 | Utilities . . . . . . . . . . . . . . . . . . . . . . . | 11 | | 70,789 |
| 12 | BABY CHICKS/FEED/BROILERS/PACKAGING/SANITARY TESTS/INSPECTIONS/PROPANE/FUELS | 12 | | 752,947 |
| 13 | | 13 | | |
| 14 | | 14 | | |
| 15 | | 15 | | |
| 16 | Total other costs . . . . . . . . . . . . . . . . . . . | 16 | | 1,014,914 |
| 17 | Reduction of expenses for offsetting credits (see attached statement) . . . . . . . . . . | 17 | | 0 |
| 18 | Total other costs less expenses for offsetting credits . . . . . . . . . . . . . . . | 18 | | 1,014,914 |

© 2014 Universal Tax Systems Inc. d/b/a/ CCH Small Firm Services. All rights reserved.

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-25  12:38:22
04CV-17-2190
C19WD04 : 3 Pages

## IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS

MARK FOCHTMAN and SHANE O'NEAL,
individually and on behalf of all others
similarly situated                                          **PLAINTIFFS**

     v.                            **CASE NO. 04CV-17-2190**

CAAIR, INC., SIMMONS FOODS, INC.,
DARP, INC., HENDREN PLASTICS, INC.,
and JOHN DOES 1-30                                          **DEFENDANTS**

---

### PLAINTIFFS' MOTION FOR
### CLASS CERTIFICATION

---

### HEARING REQUESTED

1.  This is a class action to recover for enslavement and violations of the Arkansas Minimum Wage Act.

2.  Plaintiffs bring this class action complaint to remedy Defendants' violations of the Arkansas Constitution and the Arkansas Minimum Wage Ac. Defendants CAAIR, Inc. ("CAAIR") and DARP, Inc. ("DARP") claim to operate counseling and rehabilitation services. Instead of providing services, CAAIR and DARP force their charges to toil long hours in dirty and dangerous jobs for no pay at local manufacturing and food processing businesses, like Defendants Simmons Foods, Inc., Hendren Plastics, Inc., and the John Doe Defendants.

3.  Plaintiffs move this Court to certify two classes defined as:

<u>CAAIR Class</u>

All individuals who were, are, or will be CAAIR participants from October 23, 2014 until the present, and worked in Arkansas for during their time at CAAIR.

<u>DARP Class</u>

All individuals who were, are, or will be DARP participants from October 23, 2014 until the present, and worked in Arkansas during their time at DARP.

4.     Plaintiffs move this Court to appoint Mark Fochtman and Shane O'Neal as class representatives.

5.     Plaintiffs move this Court to appoint Holleman & Associates, P.A. as class counsel.

6.     The facts and law supporting this motion are set forth more fully in the accompanying brief in support which is incorporated herein.

7.     Plaintiffs' motion is supported by the following exhibits:

a.   Affidavit of Mark Fochtman;

b.   Affidavit of Shane O'Neal;

c.   CAAIR "About Us" Webpage;

d.   DARP: Mission Statement;

e.   DARP Letter;

f.   DARP: Introduction

g.   DARP: Fees and Costs;

h.   CAAIR 2013 Form 990;

i.   CAAIR 2014 Form 990;

    j.   DARP 2012 Form 990;

    k.   DARP 2014 Form 990; and

    l.   DARP 2015 Form 990.

**WHEREFORE**, Plaintiffs respectfully request that this Court grant this motion in

its entirely and for all other just and proper relief to which they may be entitled.


Respectfully Submitted,


HOLLEMAN & ASSOCIATES, P.A.
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043


John Holleman, ABN 91056
jholleman@johnholleman.net
Timothy A. Steadman, ABN 2009113
tim@johnholleman.net
Jerry Garner, ABN 2014134
jerry@johnholleman.net

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-25  12:38:22
04CV-17-2190
C19WD04 : 20 Pages

## IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS

MARK FOCHTMAN and SHANE O'NEAL,
individually and on behalf of all others
similarly situated                                                    **PLAINTIFFS**

v.                              **CASE NO. 04CV-17-2190**

CAAIR, INC., SIMMONS FOODS, INC.,
DARP, INC., HENDREN PLASTICS, INC.,
and JOHN DOES 1-30                                                    **DEFENDANTS**

---

### BRIEF IN SUPPORT OF PLAINTIFFS'
### MOTION FOR CLASS CERTIFICATION

---

### I. INTRODUCTION

This is a class action to recover for enslavement and violations of the Arkansas

Minimum Wage Act. Defendants CAAIR, Inc. ("CAAIR") and DARP, Inc. ("DARP")

claim to operate counseling and rehabilitation services. Instead of providing services,

CAAIR and DARP force their charges to toil long hours in dirty and dangerous jobs for

no pay at local manufacturing and food processing businesses, like Defendants Simmons

Foods, Inc. and Hendren Plastics, Inc. Even those who are sick or injured are required to

work until they can work no more, with CAAIR and DARP holding the threat of jail

against those who are physically unable to work. Plaintiffs Mark Fochtman and Shane

O'Neal agreed to enter CAAIR or DARP for court-ordered treatment and were forced to

work without pay. They bring this lawsuit to recover back wages, other compensatory

damages, liquidated damages, punitive damages, and attorneys' fees, costs, and

expenses. They seek certification of two classes:

(1) Individuals who were, are, or will be CAAIR participants from October 23, 2014 until the present who worked in Arkansas during their time at CAAIR.

(2) Individuals who were, are, or will be DARP participants from October 23, 2014 until the present who worked in Arkansas during their time at DARP.

This matter is tailor made for class-action status. All CAAIR and DARP residents who worked in Arkansas were required to work without pay. CAAIR's and DARP's common policies and practices applied to all their respective residents regardless of where they worked or what job they were assigned. The case presents a common, preliminary question regarding whether CAAIR and DARP's policy and practice of forcing its residents to work without pay violates the Arkansas Constitution and the Arkansas Minimum Wage Act.  Deciding this common issue of Defendants' liability promotes efficient use of both the Court's and the parties' resources. A class action is the superior method to resolve this type of claim, and the Court should grant this motion and certify the proposed class.

## II. STATEMENT OF FACTS

1.    *CAAIR.*

Defendant CAAIR is based near Jay, Oklahoma and houses and employs hundreds of male residents in on-site dormitories. (*Fochtman Aff.* [Ex. A] at ¶ 4; *O'Neal Aff.* [Ex. B] at ¶ 4). "CAAIR" is an acronym for "Christian Alcoholics & Addicts in Recovery." (*CAAIR "About Us" Webpage* [Ex. C]). CAAIR purports to be a "faith based, long term drug and alcohol recovery program." (*CAAIR "About Us" Webpage* [Ex. C]). Despite this claim, CAAIR does not employ any licensed drug and alcohol counselors to

help the hundreds of residents it employs. *See, e.g.,* (*Fochtman Aff.* [Ex. A] at ¶ 6; *O'Neal Aff.* [Ex. B] at ¶ 6). Typically, CAAIR's residents agree to enter the CAAIR program as a condition of probation and in lieu of serving prison time. *See, e.g.,* (*Fochtman Aff.* [Ex. A] at ¶ 3; *O'Neal Aff.* [Ex. B] at ¶ 3). If a resident leaves CAAIR, either voluntarily or involuntarily, they are typically sent to prison. (*Fochtman Aff.* [Ex. A] at ¶ 3; *O'Neal Aff.* [Ex. B] at ¶ 3).

      2.     *DARP.*

Like CAAIR, Defendant DARP claims to be a "faith based alcohol and drug recovery program." (*DARP Mission Statement* [Ex. D]). DARP has two sixty-bed men's facilities in Decatur, Arkansas that has housed hundreds of male residents, including Plaintiff Fochtman and putative class members. *See* (*DARP Letter* [Ex. E]; *Fochtman Aff.* [Ex. A] at ¶ 18). "DARP" is an acronym for "Drug and Alcohol Recovery Program." (*DARP: Introduction* [Ex. F]). Typically, DARP's residents agree to enter the DARP program as a condition of probation and in lieu of serving prison time. *See, e.g.,* (*DARP: Introduction* [Ex. F]). If a resident leaves DARP, either voluntarily or involuntarily, they are typically sent to prison. (*Fochtman Aff.* [Ex. A] at ¶ 3).

      3.     *CAAIR and DARP's Common Illegal Practices.*

CAAIR and DARP are similar programs that engage in the same illegal conduct. Both programs purport to offer court-ordered rehabilitation services to residents, but those services primarily entail forcing their charges to work long hours performing dangerous, unskilled manual labor without compensation. Those who become sick or injured are coerced into continuing to work by threat of incarceration; and those who are

unable to work are jailed.

Both CAAIR and DARP assign their residents to work for various for-profit commercial enterprises in northwest Arkansas. For example, each day, CAAIR residents are transported to Simmons' pet food processing plant, poultry processing facility, and chicken farms. (*Fochtman Aff.* [Ex. A] at ¶¶ 7–8; *O'Neal Aff.* [Ex. B] at ¶ 7). There, the residents perform dirty, physically demanding, unskilled manual labor for Simmons' business, like collecting dead birds and disposing of them in chicken houses full of rotting and decaying chickens, hanging live chickens on hooks while the birds defecate into the mouths of the CAAIR employees' hanging them, and carrying and stacking heavy loads of dried pet food for hours on end. (*Fochtman Aff.* [Ex. A] at ¶¶ 10–12; *O'Neal Aff.* [Ex. B] at ¶¶ 9–10). Likewise, each day, DARP residents are transported to Hendren Plastics, Simmons, and other employers where they also perform similar demanding work under harsh conditions. (*Fochtman Aff.* [Ex. A] at ¶ 19). Both CAAIR's and DARP's residents routinely work over 40 hours in a workweek without pay. (*Fochtman Aff.* [Ex. A] at ¶¶ 8, 20; *O'Neal Aff.* [Ex. B] at ¶ 7).

CAAIR and DARP are not treatment facilities, despite their claims to the contrary. CAAIR and DARP are not licensed to perform rehabilitation services, and the facilities are nothing more than work camps. The residents of each facility are subject to the same policies and expectations. For example, at both CAAIR and DARP, individuals who are sick, injured, or otherwise unable to work, are kicked out of the program and sent to jail. (*Fochtman Aff.* [Ex. A] at ¶¶ 15, 22; *O'Neal Aff.* [Ex. B] at ¶ 13). The rules are the same no matter where the employees are assigned to work. *See, e.g.,* (*Fochtman Aff.* [Ex. A] at ¶¶

15, 22; *O'Neal Aff.* [Ex. B] at ¶ 13). But despite working long hours performing dangerous, unskilled manual labor for for-profit companies, individuals forced to work by CAAIR and DARP are not paid. (*Fochtman Aff.* [Ex. A] at ¶¶ 13, 23; *O'Neal Aff.* [Ex. B] at ¶ 11). *See also* (*DARP: Fees and Costs* [Ex. G]). Instead, CAAIR and DARP receive payment, which it uses to pay exorbitant officer salaries. (*Fochtman Aff.* [Ex. A] at ¶¶ 13, 23; *O'Neal Aff.* [Ex. B] at ¶ 11). *See also* (*DARP: Fees and Costs* [Ex. G]). Over the past several years, CAAIR and DARP have generated millions of dollars in revenue, including paying their executives hundreds of thousands of dollars in salary. *See* (*CAAIR 2013 Form 990* [Ex. H]; *CAAIR 2014 Form 990* [Ex. I]; *DARP 2012 Form 990* [Ex. J]; *DARP 2014 Form 990* [Ex. K]; *DARP 2015 Form 990* [Ex. L]).

### III. LEGAL STANDARD

1.    *Class Certification.*

To certify a class under Rule 23 of the *Arkansas Rules of Civil Procedure*, a plaintiff must meet six requirements: (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance, and (6) superiority. *Ark. Dep't of Veterans Affairs v. Okeke*, 2015 Ark. 275, at 7, 466 S.W.3d 399, 403–04. Unlike the federal courts, Arkansas courts do not conduct a "rigorous" analysis when determining whether class certification is appropriate. *Id.* at 6, 466 S.W.3d at 403. The class certification determination is within the broad discretion of the trial court. *Id.* at 5, 466 S.W.3d at 402 (quoting *Baptist Health v. Hutson*, 2011 Ark. 210, at 4, 382 S.W.3d 662, 666). Furthermore, courts do not delve into the merits of the underlying claims when deciding whether class certification is appropriate. *Id.* at 5, 466 S.W.3d at 403 (quoting *Baptist Health v. Hutson*, 2011 Ark. 210, at 4, 382 S.W.3d 662, 666).

"'[A] trial court may not consider whether the plaintiffs will ultimately prevail, or even whether they have a cause of action.'" *Id.*, 466 S.W.3d at 403 (quoting *Baptist Health v. Hutson*, 2011 Ark. 210, at 4, 382 S.W.3d 662, 666).

Class actions are encouraged when all class members rely on the same course of conduct to establish liability. *Rosenow v. Alltel Corp.*, 2010 Ark. 26, at *9, 358 S.W.3d 879, 886. Moreover, class actions are the favored mechanism for adjudicating claims where the amounts in controversy are so small that individual litigation would be discouraged. *See, e.g., Summons v. Mo. Pac. R.R.*, 306 Ark. 116, 128, 813 S.W.2d 240, 246 (1991) (reversing denial of class certification and noting that by not certifying a class of individuals with small claims, the trial court can cause the problem to "go away to the extreme disadvantage" of the claimants.).

2.    *The Arkansas Constitution & the Arkansas Minimum Wage Act.*

The Arkansas Constitution expressly prohibits slavery and involuntary servitude. Ark. Const. Art. 2, § 27. The Arkansas Minimum Wage Act requires employers to pay its employees a minimum wage for all hours worked up to 40 in a workweek. The Act provides that "beginning October 1, 2006, every employer shall pay each of his or her employees wages at the rate of not less than six dollars and twenty-five cents ($6.25) per hour except as otherwise provided in this subchapter. Beginning January 1, 2015, every employer shall pay his or her employees wages at the rate of not less than seven dollars and fifty cents ($7.50) per hour, beginning January 1, 2016, the rate of not less than eight dollars ($8.00) per hour, and beginning January 1, 2017, the rate of not less than eight dollars and fifty cents ($8.50) per hour, except as otherwise provided in this subchapter."

Ark. Code Ann. § 11-4-210(a)(1)-(2).

Further, the Arkansas Minimum Wage Act requires employers to pay its employees' overtime compensation for hours worked over 40. The Act provides that "no employer shall employ any of his or her employees for a work week longer than forty (40) hours unless the employee receives compensation for his or her employment in excess of the hours above specified at a rate not less than one and one-half (1 ½) times the regular rate of pay at which he or she is employed." Ark. Code Ann. § 11-4-211(a).

## IV. ARGUMENT

The Court should grant Plaintiffs' motion for class certification. CAAIR and DARP require their residents to work for various businesses in Arkansas without any pay, including not paying minimum wage or overtime. This common policy applies to all CAAIR and DARP residents regardless of where they worked or what job they performed. CAAIR and DARP's common policy and pay practice at issue in this case applies to all members of the putative class, and whether this policy violates the Arkansas Constitution or Arkansas Minimum Wage Act can be determined on a class-wide basis. Plaintiffs satisfy each of the six procedural requirements for class certification and the Court should certify this as a class action.

### A.    Numerosity: The class is so numerous that joinder of all members is impracticable.

Although the exact size of the class is unknown, the putative class is large enough that joinder is impracticable. "[T]he exact size of the proposed class and the identity of the class members need not be established for the court to certify a class, and the

numerosity requirement may be supported by common sense." *Cheqnet Sys. v. Montgomery*, 322 Ark. 742, 748, 911 S.W.2d 956, 959 (1995). There is no strict numerical requirement, and the Arkansas Supreme Court has approved a proposed class of as few as 77 individuals. *Ark. Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269, 287, 78 S.W.3d 58, 69 (2002).

Here, the numerosity requirement is satisfied. CAAIR employs hundreds of residents, many of which are assigned to work in Arkansas. (*Fochtman Aff.* [Ex. A] at ¶ 4; *O'Neal Aff.* [Ex. B] at ¶ 4). Likewise, DARP operates two sixty-bed facilities in Decatur, Arkansas and assigns those individuals to work at different locations in the area. *See* (*DARP Letter* [Ex. E]; *Fochtman Aff.* [Ex. A] at ¶ 18). These numbers do not include the former employees who are included in the AMWA's three-year limitations period. *See Douglas v. First Student, Inc.*, 2011 Ark. 463, at *6, 385 S.W.3d 225, 228 (holding that the statute of limitations for AMWA claims is three years). The class is so large that joinder of the putative class members is impracticable, and Plaintiffs have satisfied this element.

### B.    Commonality: There are common questions of law or fact common to the class.

This case involves common questions relating to CAAIR and DARP's class-wide policies. "Rule 23(a)(2) requires the circuit court to make a determination that there are questions of law or fact common to the class. The rule does not require that all questions of law or fact be common, but rather the standard is that there need be only a single issue common to all members of the class." *Okeke*, 2015 Ark. 275, at *7, 466 S.W.3d at 405–06. When the class-action defendant "has engaged in some course of conduct that affects a

group of persons and gives rise to a cause of action, one or more elements of that cause of action will be common to all the persons affected." *Rosenow*, 2010 Ark. 26 at *6.

In this case, the Court must resolve many common factual and legal issues, including:

- Whether Defendants failed to pay Plaintiffs and putative class members minimum wage of all hours worked;

- Whether Defendants' compensation policies and practices are illegal;

- Whether injunctive relief is available to force Defendants to comply with the AMWA;

- Whether Defendants subjected Plaintiffs and putative class members to involuntary servitude in violation of the Arkansas Constitution;

- Whether injunctive relief is available to force Defendants to comply with the AMWA;

- Whether Defendants acted in good faith;

- Whether Plaintiffs and the putative class are entitled to liquidated damages, penalties, and attorneys' fees and costs;

- Whether Defendants have complied with their record-keep obligations under the AMWA.

These issues are common among all putative class members. Like in *Rosenow*, Defendants have engaged in a course of conduct that effects the entire putative class and gives rise to their common cause of action. Defendants' policy and practice of requiring the employees to work for various businesses in Arkansas but not paying them for their work is a common policy that unites all putative class members. This policy effects each employee in the same way, and the same questions will control resolution of each

putative class member's claims. *See also Okeke*, 2015 Ark. 275, at *9. (affirming class certification of AMWA class when determining whether the policy in question was legal and whether class members were damaged by the policy were common questions for all class members.). There are numerous questions of law and fact common to all class members, and Plaintiffs have met their burden of proving commonality.

> C.     **Typicality: Plaintiffs' claims are typical because the same unlawful conduct was directed at both them and the putative class.**

To satisfy the typicality requirement, Arkansas law merely requires that a named plaintiff's interest arise "from the same wrong allegedly committed against the members of the class." *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 274, 954 S.W.2d 898, 904 (1997). When analyzing this factor, courts focus upon the defendant's conduct and not the injuries or damages suffered by the plaintiffs. *Id.*

The claims of Plaintiffs are typical of those of the putative class. All the claims in this case – both of the Plaintiffs and the proposed class – arise from the same course of conduct: Defendants' policy and practice of requiring the employees to work for various businesses in Arkansas but not paying them for their work. Likewise, the claims are based on the same legal theory: violations of the Arkansas Constitution and the Arkansas Minimum Wage Act. Plaintiffs' claims are identical to the claims of the putative class members. The typicality requirement has been satisfied.

### D.    Adequacy: Both the representative parties and their counsel will fairly and adequately protect the interest of the class.

Rule 23(a) requires representative parties and counsel who will fairly and adequately protect the interests of the class. The named plaintiffs must be members of the proposed class and display a minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making about the conduct of the litigation. *Asbury Automotive Groups, Inc. v. Palasack*, 366 Ark. 61, 605, 237 S.W.3d 462, 465 (2006). There also must be no evidence of collusion or conflicting interest between the class representatives and members of the putative class. *Id.*

Counsel for the class must be qualified, experienced, and generally able to conduct the litigation. *First Nat'l Bank v. Mercantile Bank*, 304 Ark. 196, 200, 801 S.W.2d 38, 40–41 (1990). Relevant factors include: (1) counsel's work identifying and investigating potential claims, (2) counsel's experience in handling class actions, complex litigation, and claims of the type asserted; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Reporter's Notes to Ark. R. Civ. P. 23 (2006 Amendment). Absent a showing to the contrary, however, there is a presumption that class counsel will "vigorously and competently pursue the litigation." *Mega Life*, 330 Ark. at 275.

The class representatives, Mark Fochtman and Shane O'Neal, will fairly and adequately protect the interests of the class. The class representatives are members of the proposed class and are intimately familiar with Defendants' conduct because they, like the members of the putative class, have been subject to the policies at issue in this case.

The class representatives are extremely interested in this litigation and vindicating their rights under Arkansas law, and they are able to assist in decision making. Moreover, there is no evidence of collusion or conflicting interests. Indeed, the class representatives have the exact same interest as the putative class: receiving the compensation they are entitled to receive under the law.

Plaintiffs' counsel is also qualified and experienced to conduct the litigation. Holleman & Associates, P.A., has substantial experience in litigation of matters similar to the one now before the Court. Plaintiffs' counsel has managed and conducted numerous class and collective action disputes and is deeply familiar with the substantive law which underlies the current claims. Lead counsel, John Holleman, has been practicing law in Arkansas since 1991. He has handled numerous matters of complex litigation, primarily collective and class actions dealing with wage and hour issues, including: *Allen v. Pulaski County*, No. 4:10-cv-01514 SWW (E.D. Ark. 2010); *Benefield v. Convacare Mgmt.*, No. 4:12-cv-00589 KGB (ED. Ark. 2012); *Broach v. Ark. Convalescent Ctrs., Inc.*, Case No. 5-12-cv-143 DPM (E.D. Ark. 2012); *Campbell v. Reliance Healthcare, Inc.*, No. 4:12-cv-00176 DPM (E.D. Ark. 2012); *Charles v. Horizon Foods, LP*, No. 2013-2915 (Jefferson County Cir. Ct. 2013); *Conners v. Gusano's Chicago Style Pizzeria*, 4:14-cv-002 BSM (E.D. Ark. 2014); *Croft v. Protomotive, Inc.*, No. 3:12-cv-031102 PKH (W.D. Ark. 2012); *Farnsworth v. So. Paramedic Servs., Inc.*, 4:11-cv-00760 BSM (E.D. Ark. 2011); *Gay v. Saline County*, No. 4:03CV00564 HLJ (E.D. Ark. 2006); *Graham v. Central Defense Security*, No. 4:12-cv-460 KGB (E.D. Ark. 2012); *Hannibal v. Lawson Contracting, LLC*, No. 4:12-cv-753 KGB (E.D. Ark. 2012); *Hawkins v. So. Heritage Health & Rehab., LLC*, No. 4:13-cv-00002 SWW (E.D Ark. 2013); *Hewett v.*

*Gerber Prods. Co.*, No. CV-12-75 (Sebastian County Cir. Ct. 2012); *Israsena v. Chalak-M&M AR1, LLC*, 4:15-cv-0038 JLH (E.D. Ark. 2015); *Jones v. Corizon, Inc.*, No. 5:10-cv-00057 KGB (E.D. Ark. 2012); *Kelly v. Healthcare Services Group, Inc.*, No. 2:13-cv-00441 JRG (E.D. Tex. 2013); *Lopez v. Ozark Empire Distributors, Inc.*, No. CV 14-1311 (Benton County Cir. Ct. 2015); *Maclin v. Montgomery & Sons Construction, Inc.*, No. 4:12-cv-0005 DPM (E.D. Ark. 2012); *Morgan v. El Dorado Home Care Services, LLC*, 1:16-cv-01007 SOH (W.D. Ark. 2016); *Nixon v. Costner Excavating, Inc.*, No. 4:11-cv-0578 KGB (E.D. Ark. 2011); *Okeke v. Ark. Dep't of Veterans Affairs*, 60CV-13-2403 (Pulaski County Cir. Ct. 2012); *Reyes v. Labor, Inc.*, No. 5:11-cv-05192-JLH (W.D. Ark. 2011); *Reynolds v. BLM Co.*, No. 12-1105 SOH (W.D. Ark. 2012); *Smith v. Frac Tech Services, Ltd.*, No. 4:09CV00679 JLH (E.D. Ark. 2009); *Taggart v. Davis Nursing Ass'n, No.*, 5-12-cv-0144 (E.D. Ark. 2012); *Thompson v. Corizon, Inc.*, No. 5:12-cv-0164 KGB (E.D. Ark. 2012); *Taylor v. Galaxy 1 Mktg., Inc.*, No. 4:11-cv-01255 GAF (W.D. Mo. 2011); and *Wright v. Pulaski County*, No. 4-09-CV-0065 SWW (E.D. Ark. 2009). The adequacy element is satisfied.

> **E.    Predominance: The predominant issues in this litigation are whether CAAIR and DARP's employees are entitled to compensation for the time they spent working for Arkansas businesses.**

Rule 23(b) provides that common questions of law and fact must predominate over any questions affecting only individual members. The predominance requirement is more stringent than the commonality requirement. *Okeke*, 2015 Ark. 275, at *12. "When deciding whether common questions predominate over other questions affecting only individual members, this court does not merely compare the number of individual versus

common claims. Rather, this court decides if the preliminary, overarching issues common to all class members 'predominate over' the individual issues" *Id.* "Thus, the mere fact that individual issues and defenses may be raised regarding the recovery of individual members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members. *Id.* Individualized damages issues do not predominate over a common wrong alleged by the plaintiff. *Rosenow*, 2010 Ark. 26, at *11 (holding circuit court abused its discretion when it determined that variations in potential damages predominated over the common wrong alleged by the plaintiff.).

As discussed above, there are numerous common questions of law and fact in this case, including whether Defendants' policy and practice of requiring their employees to perform work without compensation violates the Arkansas Constitution or the Arkansas Minimum Wage Act. This is clearly a preliminary issue of liability that can be resolved before considering any questions of individualized damages.

Defendants will likely argue that the common questions do not predominate because of the differences among the class members regarding the jobs they worked while a resident of CAAIR or DARP. For example, Defendants may argue that liability may be different for employees who worked at Simmons' poultry processing plants, pet food facility, chicken farms, and Hendren Plastics. These differences are irrelevant to the issues of class certification under Arkansas law. The fact that there is a preliminary issue of liability – i.e., whether Defendants' policy and practice of requiring their employees to perform work without compensation violates the Arkansas Constitution and the

Arkansas Minimum Wage Act, establishes that common issues predominate. Finding otherwise requires trial courts to delve into the merits of the claim, which the Supreme Court has repeatedly said is an inappropriate abuse of discretion. *See, e.g., Campbell*, 2011 Ark. 157 (reversing denial of class certification and stating "We have held that 'neither the trial court nor the appellate court may delve into the merits of the underlying claim.'"); *Rosenow*, 2010 Ark. 26, (reversing denial of class certification because "conducting [a] merits-based analysis was an abuse of discretion"); *Carquest v. General Parts, Inc.*, 367 Ark. 218, 238 S.W.3d 916 (2006) (reversing denial of class certification because of impermissible consideration of the merits).

*Rosenow* is particularly instructive. There, the plaintiffs sought certification of a class of all Arkansas residents who paid Alltel an early-termination fee in the three years before the complaint was filed, alleging among other things that the fee was a penalty and violated the Arkansas Deceptive Trade Practices Act. *Rosenow*, 2010 Ark. 26, at *2, 358 S.W.3d at 883. Alltel argued, and the trial court agreed, the necessity of individualized determinations of damages caused the individual issues to predominate over any common issues. *Id.* In particular, the circuit court relied on an expert who opined that, at a minimum, it would be necessary to determine Alltel's lost profits resulting from each early termination and that Alltel would be entitled to a set-off based on each class member's breach of contract. *Id.* at *4, 358 S.W.3d at 885-86.

The Arkansas Supreme Court reversed the denial of class certification, stating: "predominance does not fail simply because there are individual issues that may arise; the central issue to be resolved is whether there are overarching issues that can be

addressed before resolving individual issues." *Id.* at *10. 358 S.W.3d at 887. The Court noted the plaintiff alleged a common wrong regarding the early termination fee and held the trial court abused its discretion by "delving into the merits of the case" and focusing on damages rather than the common wrong. *Id.* at *9, 358 S.W.3d at 886-87.

Just as in *Rosenow*, this case involves a preliminary issue common to all class members: whether Defendants' policy and practice of requiring their employees to perform work without compensation violates the Arkansas Constitution and the Arkansas Minimum Wage Act. To be sure, there may be some individualized damage questions relating to the rate of pay and the number of uncompensated hours. Regardless, the preliminary question of liability predominates over any such common issues under Arkansas law, and the Court should certify the class.

> **F.    Superiority: Because this case requires resolution of common issues and involves a large number of relatively small claims, a class action is the superior method to adjudicate the controversy.**

Rule 23(b) requires that "a class action be superior to other available methods for the fair and efficient adjudication of the controversy." The superiority requirement is about efficiency. *Okeke*, 2015 Ark. 275, at *14. This requirement is satisfied if class certification is the more efficient way of handling the case, and it is fair to both sides. *Id.* Real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. *Id.* This is particularly true where the potential recovery of any one claimant is small and a class action is the only feasible method to adjudicate the claims. *Summons*, 306 Ark. 116 at 118,

813 S.W.2d at 241–42.

Here, a class action is the most efficient way to determine whether Defendants policy and practice of requiring their employees to perform work without compensation violates the Arkansas Constitution and the Arkansas Minimum Wage Act. It is far more efficient to litigate Defendants' liability in a single action, rather than clogging the docket with hundreds of lawsuits, wasting the resources of the Court and parties, not to mention having a risk of inconsistent adjudications. Preventing multiplicity of litigation lies at the heart of any class-action decision. *Rosenow*, 358 S.W.3d at 887.

Wage-and-hour actions, such as the one brought here, are especially apt for litigation in a representative fashion, as the Arkansas Supreme Court has recognized. In *Van Buren School District*, the Court affirmed certification of a class of teachers seeking compensation for time spent working before and after school and during lunch breaks. 365 Ark. at 612, 232 S.W.3d at 446-47. When discussing superiority, the Court noted answering the common questions "provides efficiency, because once they are answered, that immediately determines the viability of the claims of more than four hundred people." *Id.* at 622, 232 S.W.3d at 453. Class litigation was also more efficient because it was "economically unfeasible" for each teacher to each bring a relatively small claim separately. *Id.*

Likewise, in *Okeke v. Ark. Dep't of Veterans Affairs*, the Arkansas Supreme Court affirmed certification of a class of registered nurses, licensed practical nurses, and certified nursing assistants asserting claims under the AMWA. 2015 Ark. 275, at *12. The employer argued that the class action procedure was not superior to individual claims

because the employer intended to cross-examine each class member about whether they performed uncompensated work. *Id.* at *11. The Court rejected the employer's argument and noted that concerns relating to cross-examination "is really more about how best to manage the case, something that the circuit court has broad discretion to determine." *Id.* As a result, when dealing with wage and hour claims relating to an employer's allegedly illegal policy, a class action is the superior method to adjudicate the legality of the policy. *Id.* A class action is the superior method of litigating cases, such as this one, where an employer's policies affect a large number of employees, and the individual claims are likely small. The Court should grant the motion and certify the proposed class.

### G.    Class Definition: The proposed class is appropriately defined and does not require inquiry into the merits.

In addition to the six Rule 23 requirements, the Arkansas Supreme Court has noted that to certify a class, a class must exist. *Van Buren Sch. Dist.*, 365 Ark. at 613-14, 232 S.W.3d at 448. Despite this, a class may be certified even if the identify of each individual class member is unknown. The class need only be susceptible to precise definition to ensure the class is neither amorphous nor imprecise. *Id.* To that end, the description must also be sufficiently definite so that it is administratively feasible for the court to determine whether someone is a member of the proposed class. *Id.* at 614, 232 S.W.3d at 448. And because the trial court cannot delve into the merits, the members of the class must be ascertainable by reference to objective criteria. *Id.* at 615, 232 S.W.3d at 449.

The class is defined appropriately here. Plaintiffs propose certifying two separate classes here: (1) a class pertaining to CAAIR residents, and (2) a class pertaining for DARP

residents. Plaintiffs seek certification of the classes defined as follows:

> CAAIR Class
>
> All individuals who were, are, or will be CAAIR participants from October 23, 2014 until the present, and worked in Arkansas during their time at CAAIR.
>
> DARP Class
>
> All individuals who were, are, or will be DARP participants from October 23, 2014 until the present, and worked in Arkansas during their time at DARP.

The class definitions provide a sufficient description to allow the Court to easily identify the class members. The description describes the class-eligible employees who will be members of the classes (those who were, are, or will be participants of CAAIR and DARP within the past three years) and the locations in which they worked (Arkansas). Based on the description, Defendants should be able to easily identify each member of the class merely by reviewing their registration records, job assignment lists, and payroll records. Moreover, the definition contains only objective criteria and does not require the Court to examine the merits. The class definition is sufficient to warrant class certification.

## V. Conclusion

This case presents a preliminary question common to all proposed class members: whether Defendants' policy and practice of requiring their employees to perform work without compensation violates the Arkansas Constitution and the Arkansas Minimum Wage Act. Deciding these common issues as a class will provide real efficiency and preserve the resources of the court and parties. The class representatives and their counsel are adequate to represent the proposed class. Therefore, Plaintiffs respectfully

request that the Court grant this motion and enter an order:

a.    Certifying two classes defined as:

CAAIR Class

All individuals who were, are, or will be CAAIR participants from October 23, 2014 until the present, and worked in Arkansas during their time at CAAIR.

DARP Class

All individuals who were, are, or will be DARP participants from October 23, 2014 until the present, and worked in Arkansas during their time at DARP.

b.    Appointing Mark Fochtman and Shane O'Neal as class representatives;

c.    Appointing Holleman & Associates, P.A. as class counsel; and

d.    Granting any such other relief as the Court deems just and proper.

Respectfully Submitted,

HOLLEMAN & ASSOCIATES, P.A.
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

John Holleman, ABN 91056
jholleman@johnholleman.net
Timothy A. Steadman, ABN 2009113
tim@johnholleman.net
Jerry Garner, ABN 2014134
jerry@johnholleman.net

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-24 10:15:40
04CV-17-2190
C19WD04 : 3 Pages

## IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS

MARK FOCHTMAN and SHANE O'NEAL,
individually and on behalf of all others
similarly situated                                         **PLAINTIFFS**

v.                        CASE NO. 04CV-17-2190

CAAIR, INC., SIMMONS FOODS, INC.,
DARP, INC., HENDREN PLASTICS, INC.,
and JOHN DOES 1-30                                         **DEFENDANTS**

### PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT SIMMONS FOODS, INC.

Come now Plaintiffs, and for their First Set of Requests for Admission to Defendant Simmons Foods, Inc., state:

#### REQUESTS FOR ADMISSION

**Request for Admission No. 1.**    Simmons Foods, Inc. ("Simmons") is an "employer" of Plaintiffs and putative class members, under the AMWA.

**Request for Admission No. 2.**    During the period from October 23, 2014 to the present, Simmons hired residents of CAAIR, Inc. ("CAAIR") to work at Simmons' for-profit business enterprises in Arkansas.

**Request for Admission No. 3.**    During the period from October 23, 2014 to the present, Simmons hired residents of DARP, Inc. ("DARP") to work at Simmons' for-profit business enterprises in Arkansas.

**Request for Admission No. 4.**    During the period from October 23, 2014 to the present, Simmons did not pay CAAIR's residents for the work they performed.

**Request for Admission No. 5.**    During the period from October 23, 2014 to the present, Simmons did not pay DARP's residents for the work they performed.

**Request for Admission No. 6.**    During the period from October 23, 2014 to the present, Simmons did not pay CAAIR's residents who worked in Arkansas at least the minimum wage required by the Arkansas Minimum Wage Act for their hours worked.

**Request for Admission No. 7.**    During the period from October 23, 2014 to the present, Simmons did not pay DARP's residents who worked in Arkansas at least the minimum wage required by the Arkansas Minimum Wage Act for their hours worked.

**Request for Admission No. 8.**    During the period from October 23, 2014 to the present, Simmons did not pay CAAIR's residents who worked in Arkansas one-and-a-half times their regular rate of pay for each hour worked over 40 in a workweek.

**Request for Admission No. 9.**    During the period from October 23, 2014 to the present, Simmons did not pay DARP's residents who worked in Arkansas one-and-a-half times their regular rate of pay for each hour worked over 40 in a workweek.

**Request for Admission No. 10.**    Simmons violated the Arkansas Minimum Wage Act by not paying Plaintiffs and putative class members the minimum wage and overtime.

**Request for Admission No. 11.**    Simmons violated the Arkansas Constitution by not paying Plaintiffs and putative class members for their hours worked.

**Request for Admission No. 12.**    Simmons knew or should have known that it was required to pay Plaintiffs and putative class members for their work.

**Request for Admission No. 13.**    Simmons did not keep or maintain records of the time Plaintiffs and putative class members spent working while enrolled in CAAIR.

**Request for Admission No. 14.**    Simmons did not keep or maintain records of the time Plaintiffs and putative class members spent working while enrolled in DARP.

Respectfully submitted,

HOLLEMAN & ASSOCIATES, P.A.
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

By: _____

John Holleman - AR Bar #91056
jholleman@johnholleman.net
Timothy A. Steadman – AR Bar #2009113
tim@johnholleman.net
Jerry D. Garner – AR Bar #2014134
jerry@johnholleman.net

Page 3 of 3

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-24  10:15:40
04CV-17-2190
C19WD04 : 3 Pages

## IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS

**MARK FOCHTMAN and SHANE O'NEAL,**
**individually and on behalf of all others**
**similarly situated**                                              **PLAINTIFFS**

v.                          **CASE NO. 04CV-17-2190**

**CAAIR, INC., SIMMONS FOODS, INC.,**
**DARP, INC., HENDREN PLASTICS, INC.,**
**and JOHN DOES 1-30**                                          **DEFENDANTS**

---

### PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION
### TO DEFENDANT HENDREN PLASTICS, INC.

---

Come now Plaintiffs, and for their First Set of Requests for Admission to Defendant Hendren Plastics, Inc., state:

#### REQUESTS FOR ADMISSION

**Request for Admission No. 1.**    Hendren Plastics, Inc. ("Hendren") is an "employer" of Plaintiffs and putative class members, under the AMWA.

**Request for Admission No. 2.**    During the period from October 23, 2014 to the present, Hendren hired residents of CAAIR, Inc. ("CAAIR") to work at Hendren's for-profit business enterprises in Arkansas.

**Request for Admission No. 3.**    During the period from October 23, 2014 to the present, Hendren hired residents of DARP, Inc. ("DARP") to work at Hendren's for-profit business enterprises in Arkansas.

**Request for Admission No. 4.**    During the period from October 23, 2014 to the present, Hendren did not pay CAAIR's residents for the work they performed.

**Request for Admission No. 5.**    During the period from October 23, 2014 to the present, Hendren did not pay DARP's residents for the work they performed.

**Request for Admission No. 6.**    During the period from October 23, 2014 to the present, Hendren did not pay CAAIR's residents who worked in Arkansas at least the minimum wage required by the Arkansas Minimum Wage Act for their hours worked.

**Request for Admission No. 7.**    During the period from October 23, 2014 to the present, Hendren did not pay DARP's residents who worked in Arkansas at least the minimum wage required by the Arkansas Minimum Wage Act for their hours worked.

**Request for Admission No. 8.**    During the period from October 23, 2014 to the present, Hendren did not pay CAAIR's residents who worked in Arkansas one-and-a-half times their regular rate of pay for each hour worked over 40 in a workweek.

**Request for Admission No. 9.**    During the period from October 23, 2014 to the present, Hendren did not pay DARP's residents who worked in Arkansas one-and-a-half times their regular rate of pay for each hour worked over 40 in a workweek.

**Request for Admission No. 10.**    Hendren violated the Arkansas Minimum Wage Act by not paying Plaintiffs and putative class members the minimum wage and overtime.

**Request for Admission No. 11.**    Hendren violated the Arkansas Constitution by not paying Plaintiffs and putative class members for their hours worked.

**Request for Admission No. 12.**    Hendren knew or should have known that it was required to pay Plaintiffs and putative class members for their work.

**Request for Admission No. 13.**   Hendren did not keep or maintain records of the time Plaintiffs and putative class members spent working while enrolled in CAAIR.

**Request for Admission No. 14.**   Hendren did not keep or maintain records of the time Plaintiffs and putative class members spent working while enrolled in DARP.

Respectfully submitted,

HOLLEMAN & ASSOCIATES, P.A.
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

By: _____

John Holleman - AR Bar #91056
jholleman@johnholleman.net
Timothy A. Steadman – AR Bar #2009113
tim@johnholleman.net
Jerry D. Garner – AR Bar #2014134
jerry@johnholleman.net

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-24  10:15:40
04CV-17-2190
C19WD04 : 3 Pages

## IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS

MARK FOCHTMAN and SHANE O'NEAL,
individually and on behalf of all others
similarly situated                                                    **PLAINTIFFS**

      **v.**                              **CASE NO. 04CV-17-2190**

CAAIR, INC., SIMMONS FOODS, INC.,
DARP, INC., HENDREN PLASTICS, INC.,
and JOHN DOES 1-30                                                    **DEFENDANTS**

---

### PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION
### TO DEFENDANT DARP, INC.

---

Come now Plaintiffs, and for their First Set of Requests for Admission to Defendant DARP, Inc., state:

### REQUESTS FOR ADMISSION

**Request for Admission No. 1.**    DARP, Inc. ("DARP") is an "employer" of Plaintiffs and putative class members, under the AMWA.

**Request for Admission No. 2.**    During the period from October 23, 2014 to the present, DARP required its residents to work while enrolled in the program.

**Request for Admission No. 3.**    During the period from October 23, 2014 to the present, DARP required its residents to work at for-profit enterprises located in Arkansas while enrolled in the program.

**Request for Admission No. 4.**    During the period from October 23, 2014 to the present, DARP did not pay its residents for the work they performed.

Page **1** of **3**

Respectfully submitted,

HOLLEMAN & ASSOCIATES, P.A.
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

By: _____
John Holleman - AR Bar #91056
jholleman@johnholleman.net
Timothy A. Steadman – AR Bar #2009113
tim@johnholleman.net
Jerry D. Garner – AR Bar #2014134
jerry@johnholleman.net

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Oct-24  10:15:40
04CV-17-2190
C19WD04 : 3 Pages

## IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS

MARK FOCHTMAN and SHANE O'NEAL,
individually and on behalf of all others
similarly situated                                                    **PLAINTIFFS**

      v.               **CASE NO. 04CV-17-2190**

CAAIR, INC., SIMMONS FOODS, INC.,
DARP, INC., HENDREN PLASTICS, INC.,
and JOHN DOES 1-30                                                    **DEFENDANTS**

---

### PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT CAAIR, INC.

---

Come now Plaintiffs, and for their First Set of Requests for Admission to Defendant CAAIR, Inc., state:

#### REQUESTS FOR ADMISSION

**Request for Admission No. 1.** CAAIR, Inc. ("CAAIR") is an "employer" of Plaintiffs and putative class members, under the AMWA.

**Request for Admission No. 2.** During the period from October 23, 2014 to the present, CAAIR required its residents to work while enrolled in the program.

**Request for Admission No. 3.** During the period from October 23, 2014 to the present, CAAIR required its residents to work at for-profit enterprises located in Arkansas while enrolled in the program.

**Request for Admission No. 4.** During the period from October 23, 2014 to the present, CAAIR did not pay its residents for the work they performed.

**Request for Admission No. 5.**     During the period from October 23, 2014 to the present, CAAIR retained the wages earned by its residents for the assigned work the residents performed.

**Request for Admission No. 6.**     During the period from October 23, 2014 to the present, CAAIR did not pay its residents who worked in Arkansas at least the minimum wage required by the Arkansas Minimum Wage Act for their hours worked.

**Request for Admission No. 7.**     During the period from October 23, 2014 to the present, CAAIR did not pay its residents who worked in Arkansas one-and-a-half times their regular rate of pay for each hour worked over 40 in a workweek.

**Request for Admission No. 8.**     CAAIR violated the Arkansas Minimum Wage Act by not paying Plaintiffs and putative class members the minimum wage and overtime.

**Request for Admission No. 9.**     CAAIR violated the Arkansas Constitution by not paying Plaintiffs and putative class members for their hours worked.

**Request for Admission No. 10.**     CAAIR knew or should have known that it was required to pay Plaintiffs and putative class members for their work.

**Request for Admission No. 11.**     CAAIR did not keep or maintain records of the time Plaintiffs and putative class members spent working while enrolled in CAAIR.

Respectfully submitted,

HOLLEMAN & ASSOCIATES, P.A.
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

By:    _____

John Holleman - AR Bar #91056
jholleman@johnholleman.net
Timothy A. Steadman – AR Bar #2009113
tim@johnholleman.net
Jerry D. Garner – AR Bar #2014134
jerry@johnholleman.net

Page **3** of **3**

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Nov-02  15:33:59
04CV-17-2190
C19WD04 : 3 Pages

IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS
19TH WEST CIRCUIT DIVISION 4

FOCHTMAN V CAAIR INC

04CV-17-2190

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

SIMMONS FOODS INC.
Mark Simmons, Registered Agent
601 N Hico
Siloam Springs, AR  72761

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

John T Holleman
1008 West 2nd Street
Little Rock, AR  72201

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

CLERK OF COURT

Address of Clerks Office

BRENDA DESHIELDS, CIRCUIT CLERK
CIRCUIT COURT OF BENTON COUNTY
102 NORTHEAST A STREET
BENTONVILLE, AR  72712

DEPUTY CLERK MARLA KAY SPIVA, DC

Date: 10/23/2017

No. 04CV-17-2190 This summons is for SIMMONS FOODS INC. (name of Defendant).

PROOF OF SERVICE

❏ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❏ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❏ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

↑ *Plus see "Other"*

☒ I delivered the summons and complaint to *Mark Simmons* [name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
*Simmons Foods, Inc.* [name of defendant] on *10-30-17 at 4:40pm* [date]; or

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

☒ Other [specify]: 1) Plaintiffs' First Set of Interrogatories to Defendant Simmons Foods, Inc.
2) Plaintiffs' First Set of RFP to Defendant Simmons Foods, Inc.
3) Plaintiffs' First Set of RFA to Defendant Simmons Foods, Inc.
4) Plaintiffs' Motion for Class Certification
5) BIS of Plaintiffs' Motion for Class Certification
_____

❏ I was unable to execute service because:
_____
_____

My fee is $ 40.⁰⁰

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____        SHERIFF OF _____ COUNTY, ARKANSAS

                              By: _____
                              [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _10-31-17_    By: _Allen Law_____
[Signature of server]

_Allen Lawson BPS-15-7_
[Printed name]

Address: _3 Grisham Ln._
_Bella Vista, AR 72715_

Phone: _479-685-1347_

Subscribed and sworn to before me this date: _10-31-17_

CALEB J ELLICOTT
Notary Public – Arkansas
Benton County
Commission # 12701250
My Commission Expires Jun 14, 2027

_____
Notary Public

My commission expires: _6-14-27_

Additional information regarding service or attempted service:

_____
_____

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2017-Nov-02 15:33:59
04CV-17-2190
C19WD04 : 3 Pages

## IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS
### 19TH WEST CIRCUIT DIVISION 4

FOCHTMAN V CAAIR INC

04CV-17-2190

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

HENDREN PLASTICS INC
James Hendren, Registered Agent
15316 Highway 59 N
Sulphur Springs, AR 72768

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Timothy Steadman
1008 West Second Street
Little Rock, AR 72201

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

CLERK OF COURT

Address of Clerks Office

BRENDA DESHIELDS, CIRCUIT CLERK
CIRCUIT COURT OF BENTON COUNTY
102 NORTHEAST A STREET
BENTONVILLE, AR 72712

*Annalise Simer* 

DEPUTY CLERK ANNALISE MICHELLE SIMER, DC

Date: 10/25/2017

No. 04CV-17-2190 This summons is for HENDREN PLASTICS INC (name of Defendant).

PROOF OF SERVICE

❑ I personally delivered the summons and complaint to the individual at
_____ [place] on _____ [date];
or

❑ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❑ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

☒ I delivered the summons and complaint to *James Hendren* [name of individual], an agent
                                      ↑ Plus see "Other"
authorized by appointment or by law to receive service of summons on behalf of
*Hendren Plastics, Inc.* [name of defendant] on *10-30-17 at 3:45pm*[date]; or

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing. *1) Plaintiffs' First Set of Interrogatories to Defendant Hendren Plastics, Inc*
*2) Plaintiffs' First Set of RFP to Defendant Hendren Plastics, Inc.*
*3) Plaintiffs' First Set of RFA to Defendant Hendren Plastics, Inc*
☒ Other [specify]: *4) Plaintiffs' Motion for Class Certification*
_____ *5) BIS of Plaintiffs' Motion for Class Certification*

❑ I was unable to execute service because:
_____
_____

My fee is $ *40.⁰⁰*

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____    SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _10-31-17_      By: _Allen Law_____
[Signature of server]

_Allen Lawson  BPS-15-7_
[Printed name]

Address: _3 Grisham Ln._____
_Bella Vista, AR 72715_____

Phone: _479-685-1347_____

Subscribed and sworn to before me this date: _10-31-17_

CALEB J ELLICOTT
Notary Public – Arkansas
Benton County
Commission # 12701250
My Commission Expires Jun 14, 2027

_____
Notary Public

My commission expires: _6-14-27_____

Additional information regarding service or attempted service:

_____
_____