IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MARK FOCHTMAN and SHANE O'NEAL,
individually and on behalf of all others
similarly situated                                                                              PLAINTIFFS

      v.                CASE NO. 5:17-cv-05228-TLB

CAAIR, INC., SIMMONS FOODS, INC.,
DARP, INC., HENDREN PLASTICS, INC.,
and JOHN DOES 1-30                                                                              DEFENDANTS

**PLAINTIFFS' REPLY TO SIMMONS FOODS, INC.'S RESPONSE TO PLAINTIFFS' EMERGENCY MOTION FOR EXPEDITED JURISDICTIONAL DISCOVERY AND INCORPORATED BRIEF IN SUPPORT**

Simmons Foods, Inc. opens its response with a misrepresentation that is as inaccurate and unreliable as the remainder of its argument. Simmons claims that it "offered to provide Plaintiffs limited information specifically relevant to CAFA jurisdiction." (*Simmons' Resp.* [Doc. 17] at *1). This is a fraud on the Court. Simmons conditioned providing information on Plaintiffs agreeing to a lengthy extension to respond to the Complaint, and closed negotiations stating, "thanks for the dialogue but we can't comply with this request." *See* (*Corres.* [Doc. 12-1]). Although Simmons decided to provide some responsive information after Plaintiffs' filed their motion for jurisdictional discovery, Simmons continues to refuse to produce the information necessary to assess the Court's subject matter jurisdiction under CAFA. Plaintiffs need, and should be provided with, (a) the agreement between CAAIR and Simmons, which will likely show how payments from Simmons to CAAIR are computed (e.g., hourly

rates, any premium for overtime hours, how hours are tracked); (b) any other document that explains how Simmons compensates CAAIR, which may also show hourly rates, premium for overtime hours, and how hours are tracked; and (c) a description of how Simmons paid CAAIR for labor, including the hourly rate and how hours are tracked.

Regardless, Simmons continues to object to providing important information about how the payments it made to CAAIR were computed, which is critical to the jurisdictional issue. Although Simmons states that it paid over $3.6 million to CAAIR during the past three years, it also claims that the payments were calculated based on "an agreed hourly rate that was greater than state and federal minimum wage, plus time and a half for overtime hours worked." (*Seal Dec.* [Doc. 17-1] ¶ 3). Simmons response demonstrates why the information is relevant – if Simmons paid more than the minimum wage to CAAIR, the amount of back pay in controversy is likely far less than $3.6 million. For example, if Simmons paid CAAIR an average hourly rate of $15.00 per hour, then Simmons paid for approximately 240,000 hours of labor. ($3.6 million ÷ $15.00 per hour equals 240,000 hours). The average minimum wage in Arkansas during that time was $8.00, which would reduce the back pay in controversy to approximately $1,920,000.00. (240,000 hours x $8.00 per hour equals $1,920,000.00). If CAAIR's residents regularly worked overtime at Simmons, the amount in controversy would likely be lower because there would be fewer hours worked.

Simmons claims it based its removal on Plaintiffs' allegation in the Complaint that: "Members of the putative classes are so numerous that joinder of all members is impracticable. **The exact size of the putative classes is unknown, but may be**

**determined from records maintained by Defendants**. CAAIR and DARP each employed hundreds of individuals who worked for employers in Arkansas. Former employees are also included as putative class members." (*Compl.* [Doc. 8] ¶ 69) (emphasis added). Plaintiffs' allegation cannot be the basis for any nonspeculative calculation about the amount in controversy.

Simmons must show, by a preponderance of the evidence, that the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs. *Waters v. Ferrara Candy Co.*, 873 F.3d 633 (8th Cir. 2017). Simmons cannot make that showing solely based on the allegations in the complaint. Simmons faulty logic is shown by comparing its own calculations in the Notice of Removal with what its records actually show. Simmons initially claimed that the amount in controversy was approximately $3,000,000.00 per year, or around $9,000,000.00 in unliquidated back wages. *See* (*Notice of Removal* [Doc. 1] at ¶ 19). Yet its own records show that it only paid $3,600,000.00 to CAAIR's Arkansas residents, and it claims to have paid CAAIR more than Arkansas and Federal minimum wage.

Simmons raises frivolous objections to producing its agreement with CAAIR or providing a meaningful explanation of how it computed the payments that it made to CAAIR. First, Simmons claims that the information is irrelevant to the CAFA threshold inquiry. (*Simmons Resp. to RFP* [Doc, 17-2] Nos. 1, 3). But as discussed above, the information is highly relevant. Moreover, even if not directly relevant, the information would be helpful to understand the spreadsheets that Simmons provided.

Simmons also claims that explaining how it paid CAAIR is "outside the scope of discovery permitted under Rule 26(b()1) [sic]," and "the burden and expense for Simmons to search further at this time is disproportional to the needs of the case at this time." (*Simmons Resp. to Interrog.* [Doc. 17-2] No. 3). The information sought in this interrogatory, however, is likely contained in the agreement and other documents explaining how Simmons compensated CAAIR. Given the allegations in the Complaint, it would strain credulity to believe that Simmons had not already done whatever research is necessary to figure out how it paid CAAIR and already pulled its agreements. There is little burden on Simmons to produce the documents and provide the requested information, which is critical to all the issues in the case, including whether this Court has jurisdiction.

Records — not speculation — are what is needed for the Court and the parties to assess whether this Court has the power to hear the case. Federal courts are courts of limited jurisdiction and only possess the power authorized by the Constitution and Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994). To have jurisdiction here, the Court must find based on a preponderance of the evidence that the amount in controversy is at least $5,000,000.00, exclusive of interest and costs, without resort "to conjecture, speculation, or star gazing." *Waters v. Ferrara Candy Co.*, 873 F.3d 633 (8th Cir. 2017) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010)).

Although Plaintiffs seek the maximum recovery allowed under the law, the information about how much a factfinder could legally award assuming Plaintiffs' win is

in the possession of the Defendants. It cannot be calculated by assuming that 200 individuals worked 40 hours a week, 52 weeks per year, for a three-year period.[1] When forced to provide some support for its speculative calculation, Simmons reduced its estimate of the back pay that a fact finder could legally award by over half, from $9,000,000.00 to approximately $3,600,000.00. *Compare Notice of Removal* [Doc. 1] at ¶ 19, *with Seal Declaration* ¶ 3. And Simmons persists in refusing to provide additional information, which might show the amount of back pay in controversy from Simmons is less than $2,000,000.00. If the back pay at issue from Simmons is less than $2,000,000.00, it would be difficult for the amount in controversy to exceed $5,000,000.00, exclusive of interest and costs.[2]

Simmons has the records needed for the Court and parties to assess whether this Court has jurisdiction. Simmons chose to invoke CAFA jurisdiction but did not present information supporting jurisdiction when it removed the case, and still refuses to provide Plaintiffs with relevant information on the topic. Moreover, the information Simmons has produced so far establishes that the amount in controversy is a fraction of what it previously suggested to the Court. The Court should grant Plaintiffs' motion, and order Simmons to respond in full to Plaintiffs' jurisdictional discovery requests.

---

[1] With hundreds of class members, there might only be 25-30 working at any given time in Arkansas. Some class members may have only resided in CAAIR or DARP for a period of months.
[2] Plaintiffs intend to seek the same information from Hendren Plastics, Inc., which entered its appearance in the case yesterday afternoon.

Respectfully Submitted,

HOLLEMAN & ASSOCIATES, P.A.
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043


*/s/ John Holleman*
John Holleman, ABN 91056
jholleman@johnholleman.net
Timothy A. Steadman, ABN 2009113
tim@johnholleman.net
Jerry Garner, ABN 2014134
jerry@johnholleman.net

## CERTIFICATE OF SERVICE

I, Timothy A. Steadman, hereby certify that a true and correct copy of the foregoing document was served via CM/ECF on November 10, 2017, which will send notice to all counsel of record.

A copy was also sent by U.S. Mail to:

CAAIR, Inc.
c/o Donald Wilkerson, Registered Agent
40152 South 700 Road
Jay, Oklahoma 74346

DAPR, Inc.
c/o Raymond Jones, Registered Agent
1409 Beecher Street
Fort Gibson, Oklahoma 74434

By: /s/ *John Holleman*
John Holleman