UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MARK FOCHTMAN, individually,
and on behalf of all others
similarly situated; and
SHANE O'NEAL, individually,
and on behalf of all others
similarly situated                                                               PLAINTIFFS

V.                              CASE NO. 5:17-CV-5228

CAAIR, INC.; SIMMONS FOODS, INC.;
DARP, INC.; HENDREN PLASTICS, INC.;
and JOHN DOES 1-30                                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Now pending before the Court are the following Motions, supporting briefs, and responses:

- Motion to Sever and Remand (Doc. 20) and Brief in Support (Doc. 21), filed by Defendant Hendren Plastics, Inc. ("Hendren"); Response in Support (Doc. 38), filed by Defendant Simmons Foods, Inc. ("Simmons"); Plaintiffs' Response in Opposition (Doc. 35); Hendren's Reply (Doc. 39); and Plaintiffs' Sur-Reply (Doc. 46);

- Motion to Sever and Dismiss, or in the Alternative, to Sever and Remand (Doc. 40) and Brief in Support (Doc. 41), filed by Defendant DARP, Inc. ("DARP"); and Plaintiffs' Response in Opposition (Doc. 56);

- Motion to Dismiss or Transfer Venue (Doc. 52) and Brief in Support (Doc. 55), filed by Simmons; Joinder in Simmons' Motion (Doc. 62), filed by Defendant CAAIR, Inc. ("CAAIR"); Hendren's Response in Support (Doc. 64); Plaintiffs' Response in Opposition (Doc. 80); and Simmons' Reply (Doc. 93);

- Motion to Remand (Doc. 54) and Brief in Support (Doc. 55), filed by Plaintiffs; Hendren's Response in Support (Doc. 63); Simmons' Response in Opposition (Doc. 76); and CAAIR's Response in Opposition (Doc. 77);

- Motion to Sever Claims (Doc. 78) and Brief in Support (Doc. 79), filed by

1

CAAIR.; and Plaintiffs' Response in Opposition (Doc. 81); and

- two Motions to Quash (Docs. 70, 72), filed by Non-Party Daugherty & Daugherty Investments, LLC; and Plaintiffs' combined Response in Opposition (Doc. 89).

For the reasons explained in greater detail below, the Motion to Sever and Remand (Doc. 20) is **GRANTED IN PART AND DENIED IN PART**; the Motion to Sever and Dismiss, or in the Alternative, to Sever and Remand (Doc. 40), is **GRANTED IN PART AND DENIED IN PART**; the Motion to Dismiss or Transfer Venue (Doc. 52) is **GRANTED**; the Motion to Remand (Doc. 54) is **MOOT**; the Motion to Sever Claims (Doc. 78) is **GRANTED**; the Court will **TRANSFER** the Motion to Quash related to the CAAIR/Simmons claims (Doc. 70) to the Northern District of Oklahoma for resolution in that jurisdiction; and the Court will **RESERVE RULING** on the other Motion to Quash, involving the DARP/Hendren claims (Doc. 72), until after a separate hearing on the matter.

## I. BACKGROUND

### A. Jurisdictional Issues and Preliminary Rulings

This case is a purported class action that was originally filed in the Circuit Court of Benton County, Arkansas, on October 23, 2017. See Doc. 8. Defendant Simmons removed the case to this Court on November 6, 2017 (Doc. 1), asserting federal jurisdiction under the Class Action Fairness Act ("CAFA"). In order for CAFA jurisdiction to apply: (1) the aggregate amount in controversy must exceed $5,000,000; (2) the putative class must contain more than 100 members; and (3) at least one plaintiff and one defendant must be citizens of different states. 28 U.S.C. § 1332(d)(2).

Here, the two Plaintiffs, Mark Fochtman and Shane O'Neal, and Defendants

2

Simmons and Hendren, are all Arkansas citizens. Defendants CAAIR and DARP are believed to be citizens of Oklahoma.[1] CAAIR[2] has entered into agreements with Arkansas and Oklahoma state courts to provide residential drug, alcohol, and counseling treatment to individuals on probation. Residents of CAAIR agree to work in exchange for room, board, and treatment. They work at Simmons' facilities in Arkansas, Oklahoma, and Missouri, pursuant to a contract between CAAIR and Simmons. Each day, CAAIR's residents are transported to work at Simmons and then returned to CAAIR when the work day ends. As for DARP,[3] it provides services very similar to CAAIR's, under agreements made with state courts in the region. Instead of contracting with Simmons for labor, DARP contracts with Hendren and transports DARP's residents to work at Hendren's processing facilities in Decatur, Arkansas.

As for the Plaintiffs, Mr. Fochtman is a citizen of Arkansas who currently resides in Washington County. He agreed to enter CAAIR as a condition of probation and spent six months at CAAIR's facility near Jay, Oklahoma. When he first arrived at CAAIR, he was assigned to work at a Simmons poultry processing plant, and then later, he was assigned to work at a Simmons chicken farm. According to the Complaint, at some point in the course of the same state-court probation matter, Mr. Fochtman transferred from CAAIR to DARP. Because of the transfer, he stopped working at Simmons and began working at Hendren instead. As for Plaintiff O'Neal, he resided only at CAAIR and worked only for

---

[1] Hendren contends that DARP could also be considered a citizen of Arkansas under CAFA, see Doc. 63, p. 4.

[2] CAAIR stands for "Christian Alcoholics & Addicts in Recovery." (Doc. 8, p. 5).

[3] DARP stands for "Drug and Alcohol Recovery Program." (Doc. 8, p. 9).

Simmons during his probationary term. Plaintiffs have brought individual and class-action claims against the Defendants. All of these causes of action arise out of Arkansas law, not federal law.

As for the amount in controversy, Simmons has maintained since the time of removal that the damages in the case exceed $5,000,000. Plaintiffs have been skeptical of this figure, and their skepticism prompted them to file a Motion to Remand (Doc. 54) on December 6, 2017, in which they contested CAFA jurisdiction, but only with respect to the amount in controversy.

On January 16, 2018, the Court held a hearing on all pending motions, including the Motion to Remand, and it was made clear to all in attendance that Plaintiffs had changed their minds about contesting the amount in controversy. In open Court, Plaintiffs' counsel conceded that the amount in controversy did, in fact, exceed $5,000,000, and that CAFA jurisdiction was therefore appropriate. All other parties were also in agreement that CAFA's jurisdictional requirements had been satisfied as of the time of removal. *See* Simmons' Response to Motion to Remand, Doc. 76 (establishing that the amount in controversy exceeds $5,000,000); CAAIR's Response to Motion to Remand (Doc. 77) (agreeing with Simmons); Hendren's Reply in Support of Motion to Sever (Doc. 39) (admitting that removal based on CAFA jurisdiction was proper, but arguing in favor of remanding certain claims based on defined exceptions to CAFA jurisdiction); DARP's Brief in Support of Motion to Sever and Dismiss (Doc. 41) (agreeing with Hendren). Accordingly, the Court finds that Plaintiffs' Motion to Remand (Doc. 54) is now **MOOT**, and Simmons' removal of the case to this Court, based on CAFA jurisdiction, was proper.

The next issue that was initially contested, but to which the parties now appear in agreement, is whether the claims should be severed into two separate cases. As previously mentioned, Mr. Fochtman has individual claims pending against all Defendants, while Mr. O'Neal has claims against only CAAIR and Simmons. Two distinct classes could easily be carved out: one involving individuals who resided at CAAIR and worked for Simmons, and the other involving individuals who resided at DARP and worked for Hendren. All parties are in agreement that individuals residing at CAAIR never worked for Hendren, and individuals residing at DARP never worked for Simmons. CAAIR contracted for labor only with Simmons, and DARP contracted for labor only with Hendren. Although certain putative class members, such as Mr. Fochtman, may be members of both classes, the parties agree that severance of the CAAIR/Simmons claims from the DARP/Hendren claims is appropriate pursuant to Rule 21, and also, that severance will be simpler and more cost-efficient from a judicial-management point of view. Accordingly, as no party objects to severance, the Court finds, in its discretion, that the case should be severed into two separate cases. Hendren's Motion to Sever and Remand (Doc. 20) is **GRANTED IN PART**, with respect to severance, and **DENIED IN PART**, with respect to remand—which will be explained in further detail below; DARP's Motion to Sever and Dismiss, or in the Alternative, to Sever and Remand (Doc. 40) is **GRANTED IN PART**, with respect to severance, and **DENIED IN PART**, with respect to remand—which will be explained below; and CAAIR's Motion to Sever Claims (Doc. 78) is **GRANTED**.

Now that the matter of the Court's federal jurisdiction pursuant to CAFA has been resolved, and the claims involving CAAIR/Simmons and DARP/Hendren have been

severed, the only issues remaining for the Court at this juncture are: (1) whether the claims involving CAAIR/Simmons should be transferred to another jurisdiction, where similar claims are now pending, and (2) whether the claims involving DARP/Hendren should be remanded to state court, pursuant to a discretionary finding by the Court that an express exception to CAFA jurisdiction exists. As the issues of transfer and remand remain unresolved in the pending Motions, the Court will confine its discussion to only those issues.[4] The Court's decisions will impact the following Motions: (1) Simmons' Motion to Dismiss or Transfer Venue (Doc. 52); (2) Hendren's Motion to Sever and Remand (Doc. 20); and (3) DARP's Motion to Sever and Dismiss, or in the Alternative, to Sever and Remand (Doc. 40). As will be explained, the Court will **GRANT** Simmons' request to transfer the CAAIR/Simmons case to the Northern District of Oklahoma, where similar claims are currently pending; and the Court will **DENY** DARP's and Hendren's joint request to remand the DARP/Hendren case to state court. The Court will therefore retain jurisdiction *only* over the DARP/Hendren case.

### B. Facts Pertinent to Resolving the Transfer and Remand Issues

The Complaint alleges that Plaintiffs Fochtman and O'Neal, as well as others similarly situated, agreed to enter either CAAIR or DARP—or both—for the purpose of receiving court-ordered rehabilitation for substance abuse. Plaintiffs contend that they did

---

[4] As for the two Motions to Quash, filed by non-party Daugherty & Daugherty Investments, L.L.C., these have to do with subpoenas for documents that Plaintiffs served earlier in the litigation. The Court intends to transfer the first Motion to Quash, involving a subpoena related to the CAAIR/Simmons class claims (Doc. 70), to the Northern District of Oklahoma for ruling in that jurisdiction. This Court will retain the second Motion, which involves a subpoena related to the DARP/Hendren class claims (Doc. 72), but will defer ruling on it until after a hearing is scheduled.

not receive counseling and treatment for drug addiction while residing at either CAAIR or DARP, but were instead "forced to work for various businesses in Arkansas performing demanding, dangerous manual labor for no pay." (Doc. 8, p. 1). The Complaint further contends that "[t]hose who are injured on the job are threatened with jail to coerce them into continuing to toil; those who are unable to work are actually jailed." *Id.* Plaintiffs claim that CAAIR's and DARP's agreements to provide free labor to Simmons and Hendren, respectively, are illegal and constitute something akin to slavery, i.e., forced labor without compensation. Plaintiffs further claim that CAAIR and DARP are not certified drug treatment facilities and do not employ licensed counselors or social workers. Instead, CAAIR and DARP simply sell their residents' labor to local businesses for a profit. As for Simmons and Hendren, Plaintiffs charge them with being complicit in this allegedly illegal scheme.

CAAIR and DARP of course disagree that those who enter their residential treatment programs receive no treatment and are "enslaved" due to forced labor. Instead, they explain that each resident chooses to enter CAAIR or DARP voluntarily, as a condition of probation, with the full knowledge that: (1) they will be required to work in exchange for room and board, and (2) they may leave the program at any time (but will have to explain to the state court judge why they failed to complete the program). Defendants also point out that state courts offer an array of residential drug treatment options, some of which charge substantial costs for room, board, medical staff, and programming. CAAIR and DARP offer low-cost or no-cost room and board and treatment in exchange for work, and they contend that their programming is selected by probationers for this reason.

Turning now to the Complaint, all of Plaintiffs' claims, made on their own behalf and

7

on behalf of classes of similarly-situated individuals, arise from Arkansas law. Count I asserts individual and class claims concerning Defendants' collective failure to pay the class members a minimum wage, in violation of the Arkansas Minimum Wage Act ("AMWA"). Count II asserts individual and class claims concerning Defendants' failure to pay overtime compensation under the AMWA. Count III asserts individual and class claims concerning involuntary servitude in violation of the Arkansas Constitution, Article 2, Section 27. Count IV asserts individual and class claims concerning violations of the Arkansas Civil Rights Act. As relief, Plaintiffs seek a declaratory judgment that Defendants' work-based residential treatment programs are unlawful. They also seek a permanent injunction that would require Defendants to pay Plaintiffs for their work, an accounting of the compensation to which Plaintiffs believe they are entitled to date, compensatory damages for unpaid minimum and overtime wages, and liquidated damages in an amount equal to compensatory damages.

The Complaint was filed in state court on October 23, 2017. It was removed to this Court on November 6, 2017. Just before the Complaint was filed, however, another very similar complaint was filed in the Northern District of Oklahoma, alleging many of the same causes of action against Simmons and CAAIR—but not against Hendren and DARP. The Northern District of Oklahoma case, filed on October 10, 2017, is *Copeland et. al v. C.A.A.I.R. et al.*, 17-CV-00564-TCK-JFJ. On October 13, 2017, a separate case that alleged similar claims against Simmons and CAAIR (but again, not against Hendren and DARP) was also filed in the Northern District of Oklahoma, *Starns et al. v. Christian Alcoholics & Addicts in Recovery et al. [CAAIR]*, Case No. 17-CV-574-GKF-FHM. The

first-filed Oklahoma case, *Copeland*, asserted federal causes of action under the Fair Labor Standards Act and the United States Constitution, and state law causes of action sounding in Oklahoma law. *See* Doc. 53-1. Importantly, the *Copeland* complaint as originally filed did *not* assert any Arkansas law violations. The *Copeland* complaint was also amended on October 12, 2017—again, before the instant case was filed in Arkansas state court—but the amended complaint did not assert any new state-law causes of action. Instead, it added two new federal claims for alleged civil RICO violations. *See* Doc. 53-2.

The other Northern District of Oklahoma case, *Starns*, was also filed prior to the Arkansas complaint and also asserted individual and class claims against CAAIR and Simmons. However, unlike *Copeland*, the *Starns* complaint included not only federal claims, but also state-law causes of action arising under Oklahoma, Missouri, and Arkansas law. *See* Doc. 53-4. The plaintiffs in *Starns* voluntarily dismissed their case on November 9, 2017, and the case was closed. On the same date, the *Starns* plaintiffs joined the *Copeland* case, and the *Copeland* complaint was amended a second time to add various state-law claims from *Starns*, including an AMWA claim. *See* Doc. 53-3.

To recap the timeline, then, first *Copeland* was filed in the Northern District of Oklahoma, asserting only federal and Oklahoma state-law claims against CAAIR and Simmons. Next, *Starns* was filed in the Northern District of Oklahoma, alleging both federal and state law claims, including an AMWA claim, against CAAIR and Simmons. Following that, the Plaintiffs in the instant matter filed suit in Arkansas state court against CAAIR, Simmons, DARP, and Hendren, alleging only Arkansas claims. Simmons then removed the case from the Circuit Court of Benton County, Arkansas, to this Court. It was

only afterward that the *Starns* plaintiffs nonsuited their case and joined *Copeland*, and the *Copeland* plaintiffs added an AMWA claim to their case.

Setting aside the fact that neither of the Northern District of Oklahoma cases mention DARP or Hendren, the causes of action asserted against CAAIR and Simmons in those cases are extremely similar to those in the case at bar. In addition, it appears that Mr. Fochtman and Mr. O'Neal would be members of multiple classes named in *Copeland*, should those classes be certified. Both *Copeland* and the instant case now include a cause of action under the AMWA for failure to pay minimum and overtime wages. Both cases also argue that CAAIR's residents are subjected to conditions akin to slavery, though the case at bar makes the claim through a provision of the Arkansas Constitution, while *Copeland* raises it under the United States Constitution.

Below, the Court will first consider whether to transfer the CAAIR/Simmons case to the Northern District of Oklahoma, where *Copeland* is currently being litigated. Simmons maintains that transfer is appropriate under to the first-to-file rule, which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and same issues has already been filed elsewhere. In the alternative, Simmons argues that a discretionary change of venue is appropriate under 28 U.S.C. § 1404(a). Plaintiffs disagree that the case should be transferred under the first-to-file rule or Section 1404(a).

Next, the Court will consider whether the DARP/Hendren case should remain here, or else be remanded back to state court. Hendren points out that the Court could, in its discretion, waive its CAFA jurisdiction by making a finding that an exception applies. The possible exceptions cited in Hendren's Motion are the "local controversy" exception, 28

U.S.C. § 1332(d)(4)(A); the "home state controversy" exception, 28 U.S.C. § 1332(d)(4)(B); and the "discretionary provision" to CAFA, 28 U.S.C. § 1332(d)(3). All three possibilities will be discussed below in the context of the pending Motions to Remand.

## II. LEGAL STANDARD

### A. Motion to Transfer

Simmons moves to transfer its case involving Plaintiffs' claims against Simmons and CAAIR to the Northern District of Oklahoma, where Simmons contends the *Copeland* lawsuit was filed earlier, involving the same parties and issues as the instant case. The so-called first-to-file rule is one that is meant to prevent duplicative litigation and conflicting judgments, as well as to conserve judicial resources. *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985). This discretionary rule "gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993). There appears to be little guidance in the Eighth Circuit as to what, exactly, constitutes "parallel litigation." However, in applying the rule, the potential transferor court should look to three threshold factors: (1) the chronology of the two actions, (2) the similarity of the parties, and (3) the similarity of the issues. *Kinney v. Dole Packaged Foods, LLC*, 2014 WL 6859734, at *2 (W.D. Ark. Oct. 23, 2014) (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)).

In the alternative, if the Court is not persuaded to apply the first-to-file rule, it could transfer under the general statute governing changes of venue, 28 U.S.C. § 1404(a).

According to that statute, a district court may transfer a case to another jurisdiction if doing so would best serve the interests of justice. Factors to consider in the Section 1404(a) analysis include "the convenience of the parties, the convenience of the witnesses, the interests of justice, and any other relevant factors when comparing alternative venues." *Terra Int'l v. Miss. Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997).

### B. Motion to Remand

In the case at bar, Defendants DARP and Hendren ask the Court to remand the claims against them to Arkansas state court, not because CAFA jurisdiction is not properly vested in this Court, but because the nature of the case is such that one or more exceptions to CAFA jurisdiction may be present to weigh in favor of remand. For their parts, Plaintiffs now oppose remanding the DARP/Hendren case to state court, since they are persuaded that the minimum amount in controversy under CAFA has been met.[5] Plaintiffs also prefer that the DARP/Hendren claims remain in this Court if the CAAIR/Simmons claims will be transferred to the Northern District of Oklahoma.[6]

"Once CAFA's initial jurisdictional requirements have been established by the party seeking removal, . . . the burden shifts to the party seeking remand to establish that one of CAFA's express jurisdictional exceptions applies." *Westerfeld v. Indep. Processing,*

---

[5] Counsel for Plaintiffs explicitly agreed during the January 16 motion hearing that "based on the information that Simmons produced after [Plaintiffs] filed the motion to remand, it appears that the amount in controversy is met."

[6] In fact, counsel for Plaintiffs stated during the January 16 motion hearing: "[W]e obviously want the entire case to stay together in one court; but assuming that the Court severs and transfers part of it, we would want the second piece to stay in federal court, where it is now."

*LLC*, 621 F.3d 819, 822 (8th Cir. 2010). This means that the Court must resolve all doubts about the applicability of a CAFA exception *against* the party seeking remand, as that party bears the burden of establishing that the exception applies. *Id.* at 823.

The three exceptions that Hendren asks the Court to consider are:

(1) the "local controversy" exception, 28 U.S.C. § 1332(d)(4)(A), which requires in relevant part that "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed";

(2) the "home state controversy" exception, 28 U.S.C. § 1332(d)(4)(B), which requires in relevant part that "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed"; and

(3) the "discretionary provision" to CAFA, 28 U.S.C. § 1332(d)(3), which allows a court, "in the interests of justice and looking at the totality of the circumstances, [to] decline to exercise jurisdiction . . . over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed."

### III. DISCUSSION

#### A. Motion to Transfer

The Court has considered Simmons' arguments concerning transfer and finds that the first-to-file rule does not provide an adequate basis for transfer, for a few reasons. To begin with, the first-filed case, *Copeland*, contained only federal and Oklahoma causes of action at the time it was filed. By contrast, the case at bar contained no federal claims at all, and instead contained only Arkansas claims. Second, the *Copeland* plaintiffs sued only Simmons and CAAIR, while the Plaintiffs in the instant case sued Simmons, CAAIR, Hendren, and DARP. Finally, by the time an AMWA class was first contemplated in the *Copeland* matter, the case at bar had already been filed in state court and removed to this

Court. For all of these reasons, the Court does not find that the first-to-file rule applies here, due to the chronology of the two actions, the lack of similarity of the parties, and the lack of similarity of the issues at the time *Copeland* was first filed in the Northern District of Oklahoma.

Even though the first-to-file rule does not provide a suitable justification for transfer, the Court finds, nevertheless, that the interests of justice weigh in favor of transferring the separate CAAIR/Simmons claims to the Northern District of Oklahoma. Now that the *Copeland* case against CAAIR/Simmons contains at least the same causes of action as the instant case—plus more—the Court is satisfied that the two cases are sufficiently similar to weigh in favor of transfer. Considering the requirements of the transfer statute at 28 U.S.C. § 1404(a), the Court notes that the primary events or omissions giving rise to the CAAIR/Simmons claims in the instant case took place in Oklahoma, where CAAIR residents—including Mr. Fochtman and Mr. O'Neal—both lived and worked. The convenience of the parties and witnesses appears to be a neutral factor in the transfer analysis, since traveling to Tulsa, as opposed to Fayetteville, for Court is not likely to be demonstrably more burdensome for Plaintiffs, who reside in Northwest Arkansas. Further, CAAIR's and Simmons' witnesses work and/or reside in Oklahoma. Most importantly, the interests of justice weigh in favor of a single tribunal adjudicating the claims against CAAIR and Simmons, and it is likely that Mr. Fochtman and Mr. O'Neal could be added as plaintiffs to the *Copeland* action, or that the two cases could, at the very least, be consolidated for discovery and pretrial matters. It follows that the Court's interest in avoiding duplicative litigation, unnecessary expense, and inconsistent results ultimately weighs in favor of transferring the CAAIR/Simmons case to the Northern District of

Oklahoma.

To effect this transfer, the Court will order that Mr. Fochtman and Mr. O'Neal file a new complaint in this case, listing only their claims against CAAIR and Simmons. At the same time, Mr. Fochtman will be ordered to file a separate amended complaint, under a new case number to be assigned by the Clerk, listing only his claims against DARP and Hendren. Once the amended complaints are filed, the Court will order that the instant case, involving only claims against CAAIR and Simmons, be transferred to the Northern District of Oklahoma for potential consolidation with the pending *Copeland* matter. The amended complaint, the instant Memorandum Opinion and Order, and the unresolved Motion to Quash (Doc. 70), filed by non-party Daugherty & Daugherty Investments, L.L.C., will all be transferred to Oklahoma.

### B. Motion to Remand

Both DARP and Hendren have asked the Court to remand the claims against them to the Circuit Court for Benton County, Arkansas. The basis for their request for remand is their contention that an exception to CAFA jurisdiction weighs in favor of allowing the state court to resolve the case. As previously explained, DARP/Hendren bear the burden of proving that one of CAFA's express jurisdictional exceptions applies, and therefore, the Court must resolve any doubts about the propriety of remand against them. *See Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822-23 (8th Cir. 2010).

All three express exceptions to CAFA jurisdiction that have been raised—the "local controversy" exception, the "home state controversy" exception, and the "discretionary provision"—require the Court to determine whether citizens of Arkansas, the "home state,"

compose a certain percentage of the proposed class. The "local controversy" exception, for example, requires that *greater than* two-thirds of the class members be Arkansas citizens. The "home state controversy" exception requires that *at least* two-thirds of the members of the class be Arkansas citizens. And finally, the "discretionary provision" requires that *greater than* one-third of the class members be Arkansas citizens. The problem facing the Court is there is no evidence in the record concerning the citizenship of the proposed class members, with the exception of Mr. Fochtman.[7] Hendren and DARP suspect that most of the class members would be Arkansas citizens, but they offer no proof to support that hunch. The class, as it is currently defined, is composed of "individuals who were, are, or will be DARP participants from October 20, 2014 until the present who worked in the State of Arkansas during their time at DARP." (Doc. 8, p. 15). However, the class members' temporary residence at DARP does not make them citizens of Arkansas. As the Eighth Circuit explained in *Hargett v. Revclaims, LLC*, "[c]itizenship requires permanence," while "[r]esidency is a more fluid concept." 854 F.3d 962, 965 (8th Cir. 2017) (internal quotation and citation omitted). "One could, for example, be a resident of multiple states. But one may be a citizen of just one state." *Id.* (internal citation omitted).

Although Mr. Fochtman is a citizen of Arkansas, the Court is unable to extrapolate from a single example that one-third, two-thirds, or any number of his fellow class members share his citizenship. As the Court harbors doubt as to the citizenship of the class members, it cannot make a finding that a CAFA exception applies, and DARP/Hendren's

---

[7] Further, the Court asked counsel for Hendren during the January 16 motion hearing whether his client would like to take discovery on the issue of class member citizenship before the Court ruled on these issues, and counsel explicitly declined.

joint request for remand is denied.

## IV. CONCLUSION

For the reasons explained herein, **IT IS ORDERED** that Defendant Hendren Plastics, Inc.'s Motion to Sever and Remand (Doc. 20) and Defendant DARP, Inc.'s Motion to Sever and Dismiss, or in the Alternative, to Sever and Remand (Doc. 40), are **GRANTED IN PART AND DENIED IN PART**, in that Plaintiffs' claims against Defendants CAAIR and Simmons are hereby **SEVERED** from the claims against Defendants DARP and Hendren, as described in this Opinion and Order; and the Court declines to remand the DARP/Hendren claims to state court.

**IT IS FURTHER ORDERED** that Defendant Simmons Foods, Inc.'s Motion to Dismiss or Transfer Venue (Doc. 52) is **GRANTED**, and the case will be transferred to the Northern District of Oklahoma, for possible consolidation with *Copeland et. al v. C.A.A.I.R. et al.*, 17-CV-00564-TCK-JFJ.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Remand (Doc. 54) is **MOOT**, as Plaintiffs agreed in open Court that the requirements for CAFA jurisdiction had been met.

**IT IS FURTHER ORDERED** that Defendant CAAIR, Inc.'s Motion to Sever Claims (Doc. 78) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs file an amended complaint in the instant matter **within ten days** that sets forth only their individual and class claims against Defendants CAAIR, Inc. and Simmons Foods, Inc. Upon receipt of the amended complaint, the Clerk of Court is **DIRECTED** to immediately transfer this case, including the

amended complaint, the instant Memorandum Opinion and Order, and the unresolved Motion to Quash (Doc. 70), along with Plaintiffs' response (Doc. 89), to the Northern District of Oklahoma. The transfer order should note this case's similarity to *Copeland et. al v. C.A.A.I.R. et al.*, 17-CV-00564-TCK-JFJ, which is currently pending in the Northern District of Oklahoma.

**IT IS FURTHER ORDERED** that Plaintiff Mark Fochtman prepare an amended complaint **within ten days** that sets forth only his individual and class claims against Defendants DARP, Inc. and Hendren Plastics, Inc. Upon receipt of the amended complaint, the Clerk of Court is **DIRECTED** to file it in this Division, using a new case number, and to style the case as *Mark Fochtman, individually, and on behalf of all others similarly situated v. DARP, Inc. and Hendren Plastics, Inc.* The Clerk is further **DIRECTED** to assign the new case to the undersigned, and to refrain from collecting a filing fee from Mr. Fochtman to open the case. The Clerk should include in the docket of this new case the amended complaint, the instant Memorandum Opinion and Order, the unresolved Motion to Quash (Doc. 72), and Plaintiffs' response (Doc. 89). The Court intends to issue a final scheduling order in the new case, as well as set a hearing date on the Motion to Quash (Doc. 72).

**IT IS SO ORDERED** on this 27th day of February, 2018.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE